Michelle R. Press, SBN 163637
Michelle.Press@wilsonelser.com
**WILSON, ELSER, MOSKOWITZ,**
**EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone:(213) 443-5100
Facsimile: (213) 443-5101

Attorneys for Plaintiff
STATE NATIONAL INSURANCE CO., INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE NATIONAL INSURANCE CO., INC., | Case No:  2:25-CV-001358 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS PAID IN INDEMNITY AND DEFENSE RELATED TO UNCOVERED CLAIMS** |
| v. | |
| 6317 FLORA AVE LLC, a California Limited Liability Company; POSITIVE INVESTMENTS, INC., a California Corporation; CYNTHIA VALENCIA | |
| Defendants. | |

COMES NOW Plaintiff State National Insurance Company, Inc.

("Plaintiff") and brings this complaint against defendants 6317 Flora Ave, LLC,

Positive Investments, Inc., Cynthia Valencia (collectively "Insured Defendants")

as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1), as it is a dispute between citizens of different states and the amount in controversy exceeds the sum of $75,000.

2.      Plaintiff is informed and believes, and on that basis alleges, that venue is proper pursuant to 28 U.S.C. section 1391(a)(2) because the events giving rise to the action occurred in this District.

3.      The underlying action out of which this insurance coverage dispute arises concerns a lawsuit filed in Los Angeles, California.

## DIVERSITY OF CITIZENSHIP

4.      At all relevant times herein, Plaintiff was and currently is a corporation duly organized and existing under the laws of the State of Texas with its principal place of business in Bedford, Texas. As such, plaintiff is a citizen of the State of Texas.  Plaintiff is authorized to conduct business throughout the State of California as an insurer and conducts business in the Central District of California.

5.      Plaintiff is informed and believes, and on that information and belief alleges that defendant 6317 Flora Ave, LLC ("6317 Flora") is a California limited liability company with its principal place of business in Arcadia, California.

6.      Plaintiff is informed and believes, and on that information and belief alleges that defendant Positive Investments, Inc. ("Positive Investments") is a

2

corporation formed under the laws of the State of California with its principal

place of business in Arcadia, California.

7.    Plaintiff is informed and believes, and on that information and belief

alleges that defendant Cynthia Valencia is an individual residing in Bell, CA.

## **INTRODUCTION**

8.    Plaintiff has been affording a defense to Insured Defendants in an

underlying action entitled Juan Casillas Romero, et al. v. 6317 Flora Ave, LLC, et

al., Los Angeles Superior Court Case No. 22STCV00186 ("the underlying

action"). (Attached as Exhibit 1 is a true and correct copy of the operative Fourth

Amended Complaint in the underlying action.)

9.    Plaintiff seeks a declaration from this Court that it has no obligation

to indemnify Insured Defendants in the underlying action for damages that are not

covered under the policy, and for reimbursement of amounts Plaintiff paid to

settle non-covered claims in the underlying action.

10.    Plaintiff also seeks reimbursement of defense fees and costs

expended on behalf of Insured Defendants to defend against non-covered claims.

## **THE PARTIES**

11.    Plaintiff is informed and believes and thereon alleges that from

November 2019 to the present, 6317 Flora and Positive Investments owned and/or

managed the properties at 6317, 6325, and 6333 Flora Avenue, Bell, CA 90201

("the Flora Buildings") and 6316, 6320, 6324, and 6329 Fishburn Avenue, Bell

3

CA 90201 ("Fishburn Buildings"). The Flora Buildings and the Fishburn Buildings are collectively referred to as "the properties."

## FACTUAL BACKGROUND

### The Insurance Policies

12.     Plaintiff issued an insurance policy including commercial general liability ("CGL") coverage to 6317 Flora Ave, LLC, designated as Policy No. QJT-0SN005296-00, effective from February 21, 2020 to February 21, 2021 ("the 2020 Policy"). The 2020 Policy insures 6317 Flora Ave, LLC as a limited liability company. The 2020 Policy lists the properties located at 6317-6333 Flora Avenue, Bell Gardens, CA 90201 as premises location number one on the Property Location Schedule. The 2020 Policy does not list the Fishburn Buildings as insured locations on the 2020 Policy. (Attached as Exhibit 2 is a true and correct copy of the 2020 Policy, which is exemplary of the terms and conditions of the 2021 Policy.)

13.     The 2020 policy was renewed as Policy No QJT-0SN005296-01, effective from February 21, 2021 to February 21, 2022 (the "2021 Policy"). The 2021 Policy lists 6317-6333 Flora Ave., Bell Gardens CA as well as 6316, 6320, 6324, 6328 and 6332 Fishburn Ave., Bell Gardens CA as premises location number one. The 2020 Policy and the 2021 Policy are hereinafter referred to collectively as "the policies."

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

302520834v.1

## The Insurance Policy Terms

14.    The policies contain limits of $1 million for Each Occurrence and $1 million for Personal and Advertising Injury, subject to a $2 million General Aggregate Limit (including Products-Completed Operations).

15.    CGL coverage is provided in the policies pursuant to Form CG 00 01 04 13. The policies contain the following pertinent provisions:

**SECTION I-COVERAGES**

**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies….

                  * * *

   b. This insurance applies to "bodily injury" and "property damage" only if:

     (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

     (2) The "bodily injury" or "property damage" occurs during the policy period; and

     (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II —Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage"

occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1.of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II —Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily    injury"    or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

* * *

**COVERAGE B- PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies….

6

\* \* \*

    b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

\* \* \*

**2. Exclusions**

This insurance does not apply to:

\* \* \*

**f. Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

\* \* \*

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

\* \* \*

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

\* \* \*

**SECTION V- DEFINITIONS**

\* \* \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

302520834v.1

14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

* * *

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

<strong>SCHEDULE</strong>

| |
|---|
| **Premises**: Applicable to locations and operations specifically listed within this policy. |
| **Project:** |

(If no entry appears above, information required to

complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1.  The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2.  The project shown in the Schedule.

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FUNGI OR BACTERIA EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The Policy contains the following "Fungi or Bacteria Exclusion:"

A. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

2. Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product

9

contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C. The following definition is added to the Definitions

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS
EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

302520834v.1

Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ABSOLUTE LEAD EXCLUSION**

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\* \* \*

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" for past, present or future claims arising in whole or in part, either directly or indirectly, out of the suspected, actual or alleged:

a. Manufacture of;
b. Distribution of;
c. Transportation of;
d. Sale of;
e. Resale of;
f. Re-branding of;
g. Installation of;
h. Repair of;
i. Removal of;
j. Encapsulation of;
k. Abatement of;
l. Replacement of;
m. Carried on clothing;
n. Handling of;
o. Storage of;
p. Ingestion of;
q. Absorption of;
r. Physical exposure to; or
s. Testing for

lead paint or other products containing lead whether or not the lead is or was at any time airborne as a particle,

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS
EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever.

In addition this exclusion applies to:

(1) The costs of clean up or removal of lead or products and materials containing lead;

(2) The cost of such actions as may be necessary to monitor, assess and evaluate the release or threat of release of lead or products and material containing lead:

(3) The cost of disposal of lead substances or the taking of such other action that may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

(4) The cost of compliance with any law or regulation regarding lead.

The company does not have any obligation to defend, adjust, investigate or pay any cost for investigation, defense, adjustment, or attorney fees which are excluded under the terms of this endorsement.

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY.**
**PLEASE READ IT CAREFULLY**
**ABSOLUTE ASBESTOS EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY**
**COVERAGE FORM**

\* \* \*

The following exclusion is added to paragraph 2. Exclusions of Section I – Coverages, Coverage A Bodily Injury and Property Damage Liability and paragraph 2., Exclusions of Coverage B Personal and Advertising Injury Liability of the Commercial General Liability Coverage Form or to paragraph 2. Exclusions of Section I – Coverages, Products/ Completed Operations

Coverage Form or to paragraph 2. Exclusions of Section I – Coverages, Bodily Injury and Property Damage of the Owners and Contractors Protective Liability Coverage Form or to paragraph 2. Exclusions of Section I - Coverages, Coverage A Bodily Injury and Property Damage Liability of the Railroad Protective Liability Coverage Form:

This insurance does not apply to:

**Asbestos Exclusion:**

(1) Any "bodily injury", "property damage" or "personal and advertising injury" arising out of or caused by the actual, alleged or threatened exposure at any time to an "asbestos" hazard; or

(2) Any loss, cost or expense arising out of:

    (a) Any claim or "suit";

    (b) Any request, demand or order to test for, monitor, clean up, remove, dispose of, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos" hazard; or

    (c) Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, disposing of, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos" hazard.

The following definition is added to **Section V – Definitions:**

"Asbestos" means the mineral in any form whether or not the asbestos was at any time:

(1) Airborne as a fiber, particle or dust;

(2) Contained in or, formed a part of a product, structure or other real or personal property:

(3) Carried on clothing, materials, goods, products, or structures;

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

302520834v.1

(4) Inhaled or ingested; or

(5) Transmitted by any other means.

All other terms and conditions remain the same.

\* \* \*

## The Underlying Action

16.     On January 3, 2022, the plaintiffs in the underlying action filed their original complaint against Insured Defendants. On November 15, 2023, the plaintiffs in the underlying action filed a fourth amended complaint asserting the following causes of action: (1) Negligence; (2)  Breach of Implied Warranty of Habitability; (3)  Breach of the Covenant of Quiet Enjoyment; (4) Nuisance; and (5) Premises Liability; (6) Intentional Infliction of Emotion Distress; (7) Violation of Civil Code Section 1942.4; (8) Constructive Eviction and Willful Interruption of Services; (9) Retaliation; (10) Harassment; (11) Violation of Cal. Bus. & Prof. Code Section 17200, et seq.; and (12) Violation of Los Angeles County Code Section 8.52.130 et seq. See Exhibit 1.

17.     The fourth amended underlying complaint alleges plaintiffs in the underlying action were tenants in the at the properties, and that Insured Defendants were owners and/or property managers of the property.

18.     The plaintiffs in the underlying action allege the property was uninhabitable during their tenancies due to cockroach and rodent infestations; inoperable windows; inoperable and/or malfunctioning household appliances; deteriorated and worn walls and ceilings; faulty and leaking plumbing; inadequate

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS
EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

302520834v.1

weatherproofing; dampness and/or suspected mold in rooms; unsanitary and unsafe common areas; and lack of hot water and lack of heating. (Ex. 1, ¶ 62.)

19.    The plaintiffs in the underlying action allege Insured Defendants had actual and constructive knowledge of the substandard housing conditions due to the underlying plaintiffs ' complaints and multiple citations over the years from the Los Angeles Department of Health ("Health Department") for unsanitary and unsafe conditions.  (Ex. 1, ¶¶ 62-67.)

20.    The underlying complaint alleges that the Health Department issued Violations with respect to the property on various dates beginning in 2015, and that the cited violations were not abated within 35 days. (Ex. 1, ¶ 61-67.)

**Defense of the Underlying Action**

21.    Insured Defendants tendered defense of the underlying action to State National, and State National agreed to provide a defense pursuant to full and complete written reservations of rights.

22.    State National incurred legal fees and costs to defend Insured Defendants in the underlying action for claims that are not potentially covered under the policies.

23.    State National transmitted correspondence dated November 13, 2024 advising Insured Defendants that State National reserved the right to allege that Insured Defendants were aware of the condition of the property at the time they purchased it and insured it with State National, but they did not disclose the

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS
EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS
302520834v.1

known issues, which could result in a lack of coverage due to misrepresentations during the application process or even rescission of the policies, rendering them void *ab initio*.  State National reserved all rights in that regard.

24.     In State National's correspondence dated November 13, 2024, State National pointed out that Kinsale Insurance Company issued Policy No. 01001800000-0 to 6317 Flora Ave LLC, effective from February 21, 2022 to February 21, 2023. During the term of the Kinsale policy, the property was cited by the Los Angeles County Department of Public Health and the City of Bell numerous times, including for cockroaches, bedbugs, fleas, termites; mold;  water damage; trash overflow; broken furnace. Kinsale disclaimed coverage for the underlying action pursuant to various exclusions in the policy, including exclusions for infestation; water related bodily injury and property damage; eviction and failure to maintain; and pathogen and related hazards. State National advised that since the Kinsale policy disclaimed coverage, Insured Defendants are responsible for any damages that occurred during that term. State National provided a list of Notices of Violation that occurred during the Kinsale policy term, advising that the Notices of Violation are more significant during that time period than during the State National policy terms.

25.     The State National correspondence advised that noncovered damages included, but were not limited to an award against Insured Defendants for plaintiff's attorneys' fees and costs, for which there is no coverage under the

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS
EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

State National policies. Moreover, the Notices of Violation trigger plaintiffs' attorneys' fees in this matter as a "cost taxed against the insured" under the statute. State National advised that if the underlying action were to proceed to trial, it is highly likely that plaintiffs would recover their attorneys' fees and costs as "costs taxed against the insured," and that the recoverable attorneys' fees and costs for a 56-plaintiff case could easily be excess of $1 million.

26.     State National reiterated that the vast majority of damages the underlying plaintiffs alleged were not covered under the State National  policies.

27.     State National's correspondence advised that the settlement amounts being discussed in the underlying action, which include covered and noncovered damages, were reasonable, and if the case were to go to trial, the jury's verdict would be significantly higher.

28.     State National's correspondence advised that, in accordance with the California Supreme Court's decision in *Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489, 493, if State National could not secure adequate contribution from Insured Defendants toward settlement, State National intended to settle the underlying action and seek reimbursement from Insured Defendants for payment of all noncovered claims, as well as defense fees and costs to defend noncovered claims.

29.     State National's correspondence advised that, if Insured Defendants disagreed that the settlement being contemplated was reasonable and/or if they

17

preferred to continue to litigate the underlying action, Insured Defendants had the right to withdraw the tender and assume their own defense without State National's further involvement in either defense or indemnity. State National asked Insured Defendants to let its counsel know immediately if they preferred to assume their own defense and litigate the underlying action. Insured Defendants did not withdraw the tenders or make any effort to contribute to settlement of the underlying action.

30.    State National contributed $1,337,500 toward settlement of the underlying action, which included significant amounts paid for noncovered claims.

## FIRST CAUSE OF ACTION

## DECLARATORY RELIEF AGAINST ALL DEFENDANTS

### (No Duty to Indemnify Insured Defendants for Mold Damages)

31.    Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

32.    The underlying plaintiffs alleged, among other things, damages because of exposure to or the existence of mold at the property ("mold damages").

33.    The policies do not afford coverage for the mold damages pursuant to the Fungi or Bacteria Exclusion, which provides that there is no coverage for "bodily injury" or "property damage" which would not have occurred or "personal injury" which would not have taken place, in whole or in part, but for the actual,

18

alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

34.    Plaintiff contends it has no duty to indemnify Insured Defendants in the underlying action for mold damages under the policies.

35.    Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is coverage under the policies for mold damages in the underlying action, and that Plaintiff has a duty to indemnify Insured Defendants under the policies.

36.    An actual dispute and controversy exists between Plaintiff and Insured Defendants as to coverage under the policies for mold damages in the underlying action, and a judicial determination is necessary to resolve this dispute.

## SECOND CAUSE OF ACTION

## FOR REIMBURSEMENT AGAINST ALL DEFENDANTS

### (Reimbursement for Amounts Paid in Settlement for Mold Damages)

37.    Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

38.    The settlement State National paid included damages for mold.

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS
EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

302520834v.1

39.     The policies do not afford coverage for the mold damages pursuant to the Fungi or Bacteria Exclusion.

40.     Plaintiff is entitled to reimbursement of the amount it paid to indemnify Insured Defendants for mold damages under the policies.

## THIRD CAUSE OF ACTION

## DECLARATORY RELIEF AGAINST ALL DEFENDANTS

### (No Duty to Indemnify Insured Defendants for Lead Damages)

41.     Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

42.     The underlying plaintiffs allege, among other things, damages arising in whole or in part out of exposure to lead-based paint ("lead damages").

43.     The policies do not afford indemnity coverage for lead damages pursuant to the Absolute Lead Exclusion, which provides there is no coverage for "bodily injury" or "property damage" or "personal and advertising injury" arising in whole or in part, either directly or indirectly, out of the suspected, actual or alleged exposure to lead paint or other products containing lead.

44.     Plaintiff contends it has no duty to indemnify Insured Defendants in the underlying action under the policies for lead damages at the property.

45.     Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is coverage under the policies for lead damages in

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS
EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS
302520834v.1

the underlying action, and that Plaintiff has a duty to indemnify Insured

Defendants under the policies.

46.     An actual dispute and controversy exists between Plaintiff and

Insured Defendants as to coverage under the policies for lead damages in the

underlying action, and a judicial determination is necessary to resolve this dispute.

## FOURTH CAUSE OF ACTION

## FOR REIMBURSEMENT AGAINST ALL DEFENDANTS

**(Reimbursement for Amounts Paid in Settlement for Lead Damages)**

47.     Plaintiff refers to and incorporates herein by reference each and every

allegation set forth above as if set forth here in full.

48.     The settlement State National paid included damages for lead.

49.     The policies do not afford coverage for the lead damages.

50.     Plaintiff is entitled to reimbursement of the amount it paid to

indemnify Insured Defendants for lead damages under the policies.

## FIFTH CAUSE OF ACTION

## DECLARATORY RELIEF AGAINST ALL DEFENDANTS

**(No Duty to Indemnify Insured Defendants for**
**Violation of B&P Code § 17200, *et seq*.)**

51.     Plaintiff refers to and incorporates herein by reference each and every

allegation set forth above as if set forth here in full.

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS
EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

52.    The underlying plaintiffs allege violation of Business & Professions Code section 17200 et seq. by Insured Defendants in the underlying action, and allege remedies thereunder including statutory penalties, statutory damages designed to deter, disgorgement damages and other remedies imposed by law.

53.    The policies do not afford indemnity coverage for penalties, statutory damages designed to deter, disgorgement damages and other remedies imposed by law, including those imposed by Business & Professions Code section 17200, et seq., as the policies only afford coverage for "bodily injury," "property damage" or damages resulting from enumerated offenses of "personal and advertising injury."

54.    Plaintiff contends it has no duty to indemnify Insured Defendants in the underlying action for penalties, statutory damages designed to deter, disgorgement damages and other remedies imposed by law, including those imposed by Business & Professions Code section 17200, et seq.

55.    Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is coverage under the policies for penalties, statutory damages designed to deter, disgorgement damages and other remedies imposed by law, including those imposed by Business & Professions Code section 17200, et seq. under the policies.

302520834v.1

56.     An actual dispute and controversy exists between Plaintiff and Insured Defendants as to coverage under the policies for these damages in the underlying action, and a judicial determination is necessary to resolve this dispute.

## SIXTH CAUSE OF ACTION

## FOR REIMBURSEMENT AGAINST ALL DEFENDANTS

### (Reimbursement for Amounts Paid in Settlement for Lead Damages)

57.     Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

58.     The settlement State National paid included damages for Violation of B&P Code § 17200, et seq.

59.     The policies do not afford coverage for damages for Violation of B&P Code § 17200, et seq.

60.     Plaintiff is entitled to reimbursement of the amount it paid to indemnify Insured Defendants for damages for Violation of B&P Code § 17200, et seq.

## SEVENTH CAUSE OF ACTION

## DECLARATORY RELIEF AGAINST ALL DEFENDANTS

### (No Duty to Indemnify Insured Defendants for Plaintiffs' Attorneys' Fees and Costs)

61.     Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

302520834v.1

62.     The underlying plaintiffs allege entitlement to their attorneys' fees and costs in the underlying complaint pursuant to Civil Code section 1942.4(b)(2). The settlement State National paid included amounts for the underlying plaintiffs attorneys' fees and costs.

63.     The policies do not afford coverage for attorneys' fees or attorneys' expenses taxed against the insured pursuant to SUPPLEMENTARY PAYMENTS – COVERAGE A AND B, section 1.e.

64.     Plaintiff contends it has no duty to indemnify Insured Defendants in the underlying action for the underlying plaintiffs' attorneys' fees or attorneys' expenses taxed against the insured.

65.     Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is coverage under the policies for the underlying plaintiffs' attorneys' fees or attorneys' expenses taxed against the insured.

66.     Plaintiff seeks a declaration from this Court that there is no coverage in the underlying action for the underlying plaintiffs' attorneys' fees or attorneys' expenses taxed against the insured.

## **EIGHTH CAUSE OF ACTION FOR REIMBURSEMENT**

### **(Reimbursement for Amounts Paid in Settlement for Plaintiffs' Attorneys' Fees and Costs)**

67.     Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS
EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

302520834v.1

68.     The settlement State National paid included damages for Plaintiffs' attorneys' fees and costs taxed against Insured Defendants.

69.     The policies do not afford coverage for damages for Plaintiffs' attorneys' fees and costs.

70.     Plaintiff is entitled to reimbursement of the amount it paid to indemnify Insured Defendants for damages for Plaintiffs' attorneys' fees and costs.

## NINTH CAUSE OF ACTION FOR REIMBURSEMENT

### (Amounts Paid in Settlement for Damages that Occurred after the State National Policies Expired)

71.     Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

72.     Plaintiff insured 6317 Flora from February 21, 2020 to February 21, 2022. Property managers Positive Investments and Cynthia Valenica are insureds under those policies. Plaintiff paid $1,337,500 to settle claims on behalf of Insured Defendants, including a significant amount for damages that occurred after February 21, 2022, for which Insured Defendants are responsible.

73.     Plaintiff contends that damages that occurred after the expiration of the 2021 Policy on February 21, 2022 are not covered under the policies.

74.     Plaintiff is entitled to reimbursement for amounts it paid in settlement for damages that occurred after the expiration of the 2021 Policy on February 21, 2022.

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS
EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

302520834v.1

## TENTH CAUSE OF ACTION FOR REIMBURSEMENT

### (Reimbursement of Uncovered Defense Fees
### and Costs against Insured Defendants)

75.     Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

76.     Plaintiff defended Insured Defendants in the underlying action under a reservation of rights, including the right to seek reimbursement of attorneys' fees and costs expended to defend Insured Defendants for claims not covered under the policies.

77.     Plaintiff incurred fees and costs to defend Insured Defendants against claims that are not potentially covered under the policies.

78.     Plaintiff is entitled to reimbursement for amounts it expended to defend Insured Defendants from uncovered claims in the underlying action, with interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each of the defendants as follows:

1.     For a judicial declaration that Plaintiff has no duty to indemnify Insured Defendants for mold damages under the Policy with respect to the underlying action as set forth in the first cause of action;

26

2.      For reimbursement of the amount that Plaintiff paid in settlement for mold damages as set forth in the second cause of action;

3.      For a judicial declaration that Plaintiff has no duty to indemnify Insured Defendants for lead damages under the Policy with respect to the underlying action as set forth in the third cause of action;

4.      For reimbursement of the amount that Plaintiff paid in settlement for lead damages as set forth in the fourth cause of action;

5.      For a judicial declaration that Plaintiff has no duty to indemnify Insured Defendants under the policies for penalties, statutory damages designed to deter, disgorgement damages and other remedies imposed by law, including those imposed by Business & Professions Code section 17200, *et seq*. as set forth in the fifth cause of action;

6.      For reimbursement of the amount that Plaintiff paid in settlement for penalties, statutory damages designed to deter, disgorgement damages and other remedies imposed by law, including those imposed by Business & Professions Code section 17200, *et seq*. as set forth in the sixth cause of action;

7.      For a judicial declaration that Plaintiff has no duty to indemnify Insured Defendants under the policies for Plaintiffs' attorneys' fees and costs as set seventh in the seventh cause of action;

8.      For reimbursement of the amount that Plaintiff paid in settlement for Plaintiffs' attorneys' fees and costs as set forth in the eighth cause of action;

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS
EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

9.     For reimbursement of the amount Plaintiff paid in settlement for damages that occurred after the State National policies expired;

10.    For reimbursement of the amounts Plaintiff paid to defend noncovered claims as set forth in the tenth cause of action;

11.    For costs of suit herein.

12.    For prejudgment interest on amounts awarded herein.

13.    For such other and further relief as the Court deems just and proper.


Dated: February 18, 2025                    WILSON, ELSER, MOSKOWITZ,
                                            EDELMAN & DICKER LLP

                                            */s/ Michelle Press*
                                    By:_____
                                            Michelle Press
                                            Attorneys for Plaintiff State National
                                            Insurance Co., Inc.

COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS
EXPENDED TO DEFEND AND INDEMNIFY UNCOVERED CLAIMS

302520834v.1

# EXHIBIT 1

Electronically Received 11/15/2023 10:21 AM

1  KENNETH R. CHIATE (SBN 39554)
2  kenchiate@quinnemanuel.com
   **QUINN EMANUEL URQUHART & SULLIVAN, LLP**
3  865 S. Figueroa St., 10th Floor
   Los Angeles, CA  90017
4  Telephone: (213)443-3000
   Facsimile: (213)443-3100
5
6  NOAH GRYNBERG (SBN 296080)
   Noah.grynberg@gmail.com
7  **LAW OFFICE OF NOAH GRYNBERG**
   11301 W. Olympic Blvd., Ste. 121-555
8  Los Angeles, CA  90064
   Telephone: (310)866-7527
9
10 DAVID CAMPBELL SMITH (SBN 130618)
   dsmith@innercitylaw.org
11 TAE HWAN LEE (SBN 339056)
   tlee@innercitylaw.org
12 **INNER CITY LAW CENTER**
   1309 E. Seventh Street
13 Los Angeles, CA 90021
   Telephone: (213) 891-2880
14 Facsimile: (213) 891-2888
15 Attorneys for Plaintiffs
16
17

**FILED**
Superior Court of California
County of Los Angeles
**11/15/2023**
David W. Slayton, Executive Officer / Clerk of Court
By: _____ Deputy
M. Navarro

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| JUAN CASILLAS ROMERO, an individual; IMELDA MENDOZA, an individual; JUAN CASILLAS MENDOZA, an individual; MANUEL CASILLAS, an individual; ANDREA CASILLAS, an individual; CASTULO BENITEZ GARCIA, an individual; OFELIA ROJAS, an individual; MARIA DE LOS ANGELES, an individual; OSVALDO BENITEZ, an individual; FERMIN DUARTE, an individual; SUSANA GRAY DUARTE, an individual; IKER SEMEY YUMAN DUARTE, by and through his guardian *ad litem* SUSANA GRAY DUARTE; JOSE LUIS SANCHEZ, an individual; ROBERTO DAMIAN FIGUEROA, an individual; CECILIA SALMERON MARIANO, an individual; MICHELLE SALMERON, by and through her guardian *ad litem* CECILIA SALMERON MARIANO; | CASE NO.: 22STCV00186<br><br>Assigned to: Judge Daniel S. Murphy<br>Dept.: 32<br>UNLIMITED JURISDICTION<br><br>**FOURTH AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR:**<br><br>1.  NEGLIGENCE<br>2.  BREACH OF IMPLIED WARRANTY OF HABITABILITY;<br>3.  BREACH OF THE COVENANT OF QUIET ENJOYMENT;<br>4.  NUISANCE;<br>5.  PREMISES LIABILITY;<br>6.  INTENTIONAL INFLICTION OF |

1

BRYAN SALMERON, by and through his guardian *ad litem* CECILIA SALMERON MARIANO; SEBASTIAN SALMERON, by and through his guardian *ad litem* CECILIA SALMERON MARIANO; VANESSA SALMERON, by and through her guardian *ad litem* CECILIA SALMERON MARIANO; SARAHI SALMERON, by and through her guardian *ad litem* CECILIA SALMERON MARIANO; ISABELLA SALMERON, by and through her guardian *ad litem* CECILIA SALMERON MARIANO; AALIYAH SALMERON by and through her guardian *ad litem* CECILIA SALMERON MARIANO; MARTHA OLIVIA MEZA, an individual; JOSE DE JESUS GARCIA, an individual; LUIS FERNANDO GARCIA, an individual; XAVIER GARCIA, by and through his guardian *ad litem* MARTHA OLIVIA MEZA; MIGUEL ANGEL GARCIA, an individual; LIZETTE GARCIA, an individual; VINCE GARCIA, by and through his guardian *ad litem* LIZETTE GARCIA; ANDREA VERENICE GARCIA, an individual; JOSE MEZA RAMOS, an individual; YESENIA REYES, an individual; NEYDI ROMERO, an individual; JENIPHER PEREZ, an individual; ALISSON ELIAS, by and through her guardian *ad litem* YESENIA REYES; DAMIAN ELIAS, by and through his guardian *ad litem* YESENIA REYES; MARIA BENITEZ, an individual; ADEN SANCHEZ, by and through guardian *ad litem* MARIA BENITEZ; ALIYAH SANCHEZ, by and through guardian *ad litem* MARIA BENITEZ; ALAN SANCHEZ, by and through his guardian *ad litem* MARIA BENITEZ; ADELYN SANCHEZ, by and through guardian *ad litem* MARIA BENITEZ; ANTHONY SANCHEZ, by and through his guardian *ad litem* MARIA BENITEZ; MERCEDES CERVERA, an individual; ALEJANDRA DESIDERIO, an individual; MIA DESIDERIO, by and through guardian *ad litem* MERCEDES CERVERA; FERNANDA DESIDERIO, by and through his guardian *ad litem* MERCEDES CERVERA; DAVID DESIDERIO, by and through guardian *ad litem* MERCEDES CERVERA; OLIVER HUERTA, by and through guardian *ad litem*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

EMOTIONAL DISTRESS;
7. VIOLATION OF CIVIL CODE SECTION 1942.4;
8. CONSTRUCTIVE EVICTION AND WILLFUL INTERRUPTION OF SERVICES;
9. RETALIATION;
10. HARASSMENT;
11. VIOLATION OF CAL. BUS. & PROF. CODE 17200 *et seq.*
12. VIOLATION OF LOS ANGELES COUNTY CODE § 8.52.130 et seq.

**DEMAND FOR JURY TRIAL**

1  MERCEDES CERVERA; MIRTALA PEREZ, )
   an individual; HILDAM GONZALEZ, an )
2  individual; NAYELI BENITEZ is an individual; )
   BERNARDO HERNANDEZ, an individual; )
3  DEVIN HERNANDEZ, by and through his )
   guardian *ad litem* NAYELI BENITEZ; )
4  JAYLENE HERNANDEZ, by and through )
   guardian *ad litem* NAYELI BENITEZ; )
5  DAMIAN HERNANDEZ, by and through )
   guardian *ad litem* NAYELI BENITEZ; )
6  NATHAN HERNANDEZ, by and through )
7  guardian *ad litem* NAYELI BENITEZ; )
                                        )
8                  Plaintiffs,          )
                                        )
9                          vs.          )
                                        )
10 6317 FLORA AVE, LLC, a California Limited )
   Liability       Company;      POSITIVE )
11 INVESTMENTS,      INC.,     a    California )
   Corporation;; CHARLES B. ROSELLI, an )
12 individual;    MASHCOLE     PROPERTY )
   MANAGEMENT        INC.,    a    California )
13 Corporation;     REYNALDO      TOBIAS, )
   individually and in his capacity as a Trustee of )
14 the 2002 Tobias Family Trust dated July 25, )
15 2002; ISOLINA ELIA TOBIAS, individually )
   and in her capacity as a Trustee of the 2002 )
16 Tobias Family Trust dated July 25, 2002; )
   CYNTHIA VALENCIA, an individual; BAKS )
17 INVESTMENTS, LLC, a California limited )
18 liability company; MICHAEL BAKHSHI, an )
   individual; AMA FLORA, LLC, a California )
19 limited    liability   company   (DOE   1); )
   GOODLAND HOLDING, LLC, a California )
20 limited liability company (DOE 2); and DOES 3 )
21 to 100, INCLUSIVE, )
                                        )
22                 Defendants.          )
                                        )
23 _____ )

24      The above-captioned Plaintiffs, and each of them, allege upon personal knowledge with respect to

25 themselves and their own acts, and upon information and belief as to all other matters, as follows:

26                          **INTRODUCTORY ALLEGATIONS**

27      1.      Through this action, 61 Plaintiffs – including many young children – seek injunctive relief

28

and damages for the slum housing conditions that they have been forced to endure due to Defendants' persistent neglect of and failure to adequately maintain their rental units. Plaintiffs ("Plaintiffs" collectively refers to the individuals identified herein) are mostly impoverished, monolingual Spanish-speaking tenants living in dilapidated apartments at 6317, 6325, 6329, and 6333 Flora Avenue, Bell, CA 90201 and 6316, 6320, 6324, and 6328 Fishburn Avenue, Bell, CA 90201, (Assessor's Parcel Number 6317-025-006) (the "Property").

2.     For many years, Defendants ("Defendants" collectively refers to the individuals and entities identified herein) refused to perform basic upkeep of the Property and make necessary repairs. Defendants' dereliction of their legal duties as owners and property managers has caused unsafe and unhealthy living conditions for Plaintiffs. Some of the most pervasive conditions endangering Plaintiffs include: defective plumbing causing feces to leak into their homes; lack of hot water for days to weeks at a time; severe, long-term insect and rodent infestations; rampant mold; lack of heat in the winter; and moisture-soaked, crumbling ceilings and walls.

3.     The uninhabitable conditions at the Property have robbed Plaintiffs of their quiet enjoyment of, and sense of security in, their own homes. Defendants have mostly ignored Plaintiffs' pleas for repairs and remediation of the deplorable conditions. Defendants also routinely flout orders from government agencies to correct violations of housing-related laws. Consequently, Plaintiffs and their children have been exposed to omnipresent health and safety hazards, which have caused them to endure extreme stress from living day-to-day in uninhabitable conditions. Plaintiffs also suffer from physical injuries and illness such as insect bites, nosebleeds, rashes, and respiratory issues. Children have expressed feeling safer at school than in their own homes.

4.     The Property is a multi-family residence located in the City of Bell and consists of 10 four-unit buildings constructed in or about 1956.

5.     At all relevant times herein, each Defendant owned, operated, managed, and/or was responsible for maintaining the Property. Defendants have had actual and constructive knowledge that the Property has not been, and is not, habitable. The Property has been repeatedly cited by the City of Bell and the Los Angeles County Department of Public Health for municipal and health and safety code violations, with orders to repair the premises.

6.      Notwithstanding Defendants' knowledge of the deplorable living conditions, and despite having the opportunity, the means, and the legal obligation to correct these conditions, each Defendant failed and refused to take the necessary measures to make the Property habitable and safe. Indeed, rather than allocating resources necessary to maintain the Property in a habitable condition, Defendants chose to maximize their profits at the expense of prodigious harm to Plaintiffs and their children.

7.      This action seeks damages to compensate Plaintiffs for the substantial harm they have suffered and continue to suffer. This action is also necessary to force Defendants to fix the uninhabitable conditions at the Property, to do so in a manner that does not create additional harm to Plaintiffs' health and safety, and to provide safe and decent housing as required by law. In light of the egregious nature of Defendants' behavior, which can only be described as willful, oppressive, and malicious, Plaintiffs also seek punitive damages.

8.      Plaintiffs also seek injunctive relief to require the current owners and managers to heed applicable governmental orders and bring the Property into compliance with California housing laws, so that Plaintiffs can finally live in safe, healthy homes.

## **THE PARTIES**

### **Plaintiffs and Their Tenancies at the Building**

#### **6333 Flora Avenue, Unit B**

9.      Plaintiff Juan Casillas Romero is an individual who has resided in 6333 Flora Avenue, Unit B from approximately December 2013 to present pursuant to a valid rental agreement.

10.     Plaintiff Imelda Mendoza is an individual who has resided in 6333 Flora Avenue, Unit B from approximately August 2012 to present pursuant to a valid rental agreement.

11.     Plaintiff Juan Casillas Mendoza is an individual who has resided in 6333 Flora Avenue, Unit B from approximately August 2012 to present pursuant to a valid rental agreement.

12.     Plaintiff Manuel Casillas is an individual who has resided in 6333 Flora Avenue, Unit B from approximately August 2012 to present pursuant to a valid rental agreement.

13.     Plaintiff Andrea Casillas is an individual who has resided in 6333 Flora Avenue, Unit B from approximately August 2012 to present pursuant to a valid rental agreement.

#### **6317 Flora Avenue, Unit C**

14.     Plaintiff Castulo Benitez Garcia is an individual who has resided in 6317 Flora Avenue, Unit C from approximately 2002 to present pursuant to a valid rental agreement.

15.     Plaintiff Ofelia Rojas is an individual who has resided in 6317 Flora Avenue, Unit C from approximately 2002 to present pursuant to a valid rental agreement.

16.     Plaintiff Maria de Los Angeles is an individual who has resided in 6317 Flora Avenue, Unit C from approximately 2002 to present pursuant to a valid rental agreement.

17.     Plaintiff Osvaldo Benitez is an individual who has resided in 6317 Flora Avenue, Unit C from approximately April 2002 to present pursuant to a valid rental agreement.

18.     Maria Benitez is an individual who has resided in 6317 Flora Avenue, Unit C from approximately 2002 to present pursuant to a valid rental agreement.

19.     Aden Sanchez is a minor and is participating in this action by and through guardian *ad litem* Maria Benitez. Plaintiff Aden Sanchez has resided in 6317 Flora Avenue, Unit C from birth in June 2012 to present pursuant to a valid rental agreement.

20.     Aliyah Sanchez is a minor and is participating in this action by and through guardian *ad litem* Maria Benitez. Plaintiff Aliyah Sanchez has resided in 6317 Flora Avenue, Unit C from birth in June 2016 to present pursuant to a valid rental agreement.

21.     Alan Sanchez is a minor and is participating in this action by and through his guardian *ad litem* Maria Benitez. Plaintiff Alan Sanchez has resided in 6317 Flora Avenue, Unit C from birth in March 2018 to present pursuant to a valid rental agreement.

22.     Adelyn Sanchez is a minor and is participating in this action by and through guardian *ad litem* Maria Benitez. Plaintiff Adelyn Sanchez has resided in 6317 Flora Avenue, Unit C from birth in February 2021 to present pursuant to a valid rental agreement.

23.     Anthony Sanchez is a minor and is participating in this action by and through his guardian *ad litem* Maria Benitez. Plaintiff Anthony Sanchez has resided in 6317 Flora Avenue, Unit C from birth in December 2022 to present pursuant to a valid rental agreement.

**6325 Flora Avenue, Unit C**

24.     Jose Luis Sanchez is an individual who has resided in 6325 Flora Avenue, Unit C, from approximately December 2005 to present pursuant to a valid rental agreement.

6

**6320 Fishburn Avenue, Unit C**

25.    Plaintiff Roberto Damian Figueroa is an individual who has resided in 6320 Fishburn Avenue, Unit C from approximately December 2015 to present pursuant to a valid rental agreement.

26.    Plaintiff Cecilia Salmeron Mariano is an individual who has resided in 6320 Fishburn Avenue, Unit C from approximately December 2015 to present pursuant to a valid rental agreement.

27.    Plaintiff Michelle Salmeron is a minor and is participating in this action by and through her guardian *ad litem* Cecilia Salmeron Mariano. Plaintiff Michelle Salmeron has resided in 6320 Fishburn Avenue, Unit C from approximately December 2015 to present pursuant to a valid rental agreement.

28.    Plaintiff Bryan Salmeron is a minor and is participating in this action by and through his guardian *ad litem* Cecilia Salmeron Mariano. Plaintiff Bryan Salmeron has resided in 6320 Fishburn Avenue, Unit C at the Property from approximately December 2015 to present pursuant to a valid rental agreement.

29.    Plaintiff Sebastian Salmeron is a minor and is participating in this action by and through his guardian *ad litem* Cecilia Salmeron Mariano. Plaintiff Sebastian Salmeron has resided in 6320 Fishburn Avenue, Unit C from approximately December 2015 to present pursuant to a valid rental agreement.

30.    Plaintiff Vanessa Salmeron is a minor and is participating in this action by and through her guardian *ad litem* Cecilia Salmeron Mariano. Plaintiff Vanessa Salmeron has resided in 6320 Fishburn Avenue, Unit C from birth in January 2016 to present pursuant to a valid rental agreement.

31.    Plaintiff Sarahi Salmeron is a minor and is participating in this action by and through her guardian *ad litem* Cecilia Salmeron Mariano. Plaintiff Sarahi Salmeron has resided in 6320 Fishburn Avenue, Unit C from birth in October 2017 to present pursuant to a valid rental agreement.

32.    Isabella Salmeron is a minor and is participating in this action by and through her guardian *ad litem* Cecilia Salmeron Mariano. Plaintiff Isabella Salmeron has resided in 6320 Fishburn Avenue, Unit C from birth in January 2021 to present pursuant to a valid rental agreement.

33.    Aaliyah Salmeron is a minor and is participating in this action by and through her guardian *ad litem* Cecilia Salmeron Mariano. Plaintiff Aaliyah Salmeron has resided in 6320 Fishburn Avenue, Unit C from birth in April 2022 to present pursuant to a valid rental agreement

**6324 Fishburn Avenue, Unit C**

34.  Plaintiff Martha Olivia Meza is an individual who has resided in 6324 Fishburn Avenue, Unit C from approximately May 2010 to present pursuant to a valid rental agreement.

35.  Plaintiff Jose de Jesus Garcia is an individual who has resided in 6324 Fishburn Avenue, Unit C from approximately May 2010 to present pursuant to a valid rental agreement.

36.  Plaintiff Luis Fernando Garcia is an individual who has resided in 6324 Fishburn Avenue, Unit C from approximately May 2010 to present pursuant to a valid rental agreement.

37.  Plaintiff Xavier Garcia is a minor and is participating in this action by and through his guardian *ad litem* Martha Olivia Meza. Plaintiff Xavier Garcia has resided in 6324 Fishburn Avenue, Unit C from birth in August 2012 to present pursuant to a valid rental agreement.

38.  Plaintiff Miguel Angel Garcia is an individual who has resided in 6324 Fishburn Avenue, Unit C from approximately May 2010 to approximately January 2023 pursuant to a valid rental agreement.

39.  Plaintiff Lizette Garcia is an individual who has resided in 6324 Fishburn Avenue, Unit C from approximately September 2017 to approximately January 2023 pursuant to a valid rental agreement.

40.  Plaintiff Vince Garcia is a minor and is participating in this action by and through his guardian *ad litem* Lizette Garcia. Plaintiff Vince Garcia has resided in 6324 Fishburn Avenue, Unit C from birth in April 2018 to approximately January 2023 pursuant to a valid rental agreement.

41.  Plaintiff Andrea Verenice Garcia is an individual who has resided in 6324 Fishburn Avenue, Unit C from approximately May 2010 to present pursuant to a valid rental agreement.

42.  Plaintiff Jose Meza Ramos is an individual who has resided in 6324 Fishburn Avenue, Unit C from approximately 2013 to present pursuant to a valid rental agreement.

**6329 Flora Avenue, Unit D**

43.  Plaintiff Yesenia Reyes is an individual who has resided in 6329 Flora Avenue, Unit D from approximately November 2008 to present pursuant to a valid rental agreement.

44.  Plaintiff Neydi Romero is an individual who has resided in 6329 Flora Avenue, Unit D from approximately November 2008 to present pursuant to a valid rental agreement.

45.  Plaintiff Jenipher Perez is an individual who has resided in 6329 Flora Avenue, Unit D from approximately November 2008 to present pursuant to a valid rental agreement.

46.    Plaintiff Danna Elias is an individual who has resided in 6329 Flora Avenue, Unit D from approximately November 2008 to present pursuant to a valid rental agreement.

47.    Plaintiff Alisson Elias is a minor and is participating in this action by and through her guardian *ad litem* Yesenia Reyes. Plaintiff Alisson Elias has resided in 6329 Flora Avenue, Unit D from birth in October 2008 to present pursuant to a valid rental agreement.

48.    Plaintiff Damian Elias is a minor and is participating in this action by and through his guardian *ad litem* Yesenia Reyes. Plaintiff Damian Elias has resided in 6329 Flora Avenue, Unit D from birth in January 2013 to present pursuant to a valid rental agreement.

**6333 Flora Avenue, Unit C**

49.    Mercedes Cervera is an individual who has resided in 6333 Flora Avenue, Unit C from approximately September 2014 to present pursuant to a valid rental agreement.

50.    Alejandra Desiderio is an individual who has resided in 6333 Flora Avenue, Unit C from approximately September 2014 to present pursuant to a valid rental agreement.

51.    Mia Desiderio is a minor and is participating in this action by and through guardian *ad litem* Mercedes Cervera. Plaintiff Mia Desiderio has resided in 6333 Flora Avenue, Unit C from approximately September 2014 to present pursuant to a valid rental agreement.

52.    Fernanda Desiderio is a minor and is participating in this action by and through his guardian *ad litem* Mercedes Cervera. Plaintiff Fernanda Desiderio has resided in 6333 Flora Avenue, Unit C from approximately September 2014 to present pursuant to a valid rental agreement.

53.    David Desiderio is a minor and is participating in this action by and through guardian *ad litem* Mercedes Cervera. Plaintiff David Desiderio has resided in 6333 Flora Avenue, Unit C from approximately September 2014 to present pursuant to a valid rental agreement.

54.    Oliver Huerta is a minor and is participating in this action by and through guardian *ad litem* Mercedes Cervera. Plaintiff Oliver Huerta has resided in 6333 Flora Avenue, Unit C from birth in March 2019 to present pursuant to a valid rental agreement.

**6316 Fishburn Avenue, Unit B**

55.    Alfonso Salgado is an individual who has resided in 6316 Fishburn Avenue, Unit B from approximately May 2010 to present pursuant to a valid rental agreement.

56.    Maria Christina Ponse Loza is an individual who has resided in 6316 Fishburn Avenue, Unit B from approximately May 2010 to present pursuant to a valid rental agreement.

57.    Daniel Salgado is an individual who has resided in 6316 Fishburn Avenue, Unit B from approximately May 2010 to present pursuant to a valid rental agreement.

58.    Itzel Salgado is a minor and is participating in this action by and through guardian *ad litem* Maria Christina Ponse Loza. Plaintiff Itzel Salgado has resided in 6333 Flora Avenue, Unit C from May 2010 to present pursuant to a valid rental agreement.

**6320 Fishburn Avenue, Unit B**

59.    Mirtala Perez is an individual who has resided in 6320 Fishburn Avenue, Unit B from approximately November 2019 to present pursuant to a valid rental agreement.

60.    Hildam Gonzalez is an individual who has resided in 6320 Fishburn Avenue, Unit B from approximately November 2019 to present pursuant to a valid rental agreement.

**6328 Fishburn Avenue, Unit A**

61.    Nayeli Benitez is an individual who has resided in 6328 Fishburn Avenue, Unit A from approximately May 2015 to present pursuant to a valid rental agreement.

62.    Bernardo Hernandez is an individual who has resided in 6328 Fishburn Avenue, Unit A from approximately May 2015 to present pursuant to a valid rental agreement.

63.    Devin Hernandez is a minor and is participating in this action by and through his guardian *ad litem* Nayeli Benitez. Plaintiff Devin Hernandez has resided in 6328 Fishburn Avenue, Unit A from May 2015 to present pursuant to a valid rental agreement.

64.    Jaylen Hernandez is a minor and is participating in this action by and through guardian *ad litem* Nayeli Benitez. Plaintiff Jaylen Hernandez has resided in 6328 Fishburn Avenue, Unit A from birth in February 2018 to present pursuant to a valid rental agreement.

65.    Damian Hernandez is a minor and is participating in this action by and through guardian *ad litem* Nayeli Benitez. Plaintiff Damian Hernandez has resided in 6328 Fishburn Avenue, Unit A from birth in August 2020 to present pursuant to a valid rental agreement.

66.    Nathan Hernandez is a minor and is participating in this action by and through guardian *ad litem* Nayeli Benitez. Plaintiff Nathan Hernandez has resided in 6328 Fishburn Avenue, Unit A from birth

in September 2022 to present pursuant to a valid rental agreement.

**6328 Fishburn Avenue, Unit C**

67.    Plaintiff Fermin Duarte is an individual who has resided in 6328 Fishburn Avenue, Unit C from approximately October 2021 to present pursuant to a valid rental agreement. Plaintiff Fermin Duarte resided in 6317 Flora Avenue, Unit C from approximately May 2010 to approximately October 2021 pursuant to a valid rental agreement.

68.    Plaintiff Susana Gray Duarte is an individual who has resided in 6328 Fishburn Avenue, Unit C from approximately October 2021 to present pursuant to a valid rental agreement. Plaintiff Susana Gray Duarte resided in 6317 Flora Avenue, Unit C from approximately May 2010 to approximately October 2021 pursuant to a valid rental agreement.

69.    Plaintiff Iker Semey Yuman Duarte is a minor and is participating in this action by and through his guardian *ad litem* Susana Gray Duarte. Plaintiff Iker Semey Yuman Duarte has resided in 6328 Fishburn Avenue, Unit C from approximately October 2021 to present pursuant to a valid rental agreement. Plaintiff Iker Semey Yuman Duarte resided in 6317 Flora Avenue, Unit C from his birth in May 2018 to approximately October 2021 pursuant to a valid rental agreement.

**Defendants and Their Respective Interests in the Property**

70.    On information and belief, Defendant Baks Investments, LLC ("Defendant Baks Investments") is a California limited liability company licensed to do business and doing business in California since January 27, 2015. Plaintiffs allege that Defendant Baks Investments holds title to the Property and/or has had an ownership interest in in or around February 2023. Plaintiffs allege, on information and belief, that Defendant Baks Investments has and continues to be an owner and/or manager of the Property, excises real or apparent authority regarding it, and was therefore responsible for maintaining the Property in a lawful and habitable condition, but failed and/or refused to do so.

71.    On information and belief, Defendant Michael Bakhshi ("Defendant Bakhshi") is an individual and a citizen of the State of California. Plaintiff allege that Defendant Bakhshi is the Chief Executive Officer of Baks Investments, LLC and has had an ownership interest in the Property from in or around February 2023. Plaintiffs allege, on information and belief, that at all relevant times mentioned herein, Defendant Bakhshi has and continues to be an owner and/or manager of the Property, has held

himself as the owner of the Property and as the landlord of the Property, has exercised real or apparent authority regarding the Property, and is therefore responsible for maintaining the Property in a lawful and habitable condition, but has failed and/or refused to do so

72.    On information and belief, Defendant 6317 Flora Ave, LLC ("Defendant Flora Ave") is a California limited liability company licensed to do business and doing business in California since December 4, 2019. Plaintiffs allege that Defendant Flora Ave held title to the Property and/or had an ownership interest since in or around November 2019 until in or around February 2023. Plaintiffs allege, on information and belief, that Defendant Flora Ave was an owner and/or manager of the Property, exercised real or apparent authority regarding it, and was therefore responsible for maintaining the Property in a lawful and habitable condition, but failed and/or refused to do so.

73.    On information and belief, Defendant Positive Investments, Inc. ("Defendant Positive Investments") is a California corporation licensed to do business and doing business in California since January 8, 1986. Plaintiffs allege that Defendant Positive Investments held title to the Property and/or had an ownership interest since in or around November 2019 until in or around February 2023. Plaintiffs allege, on information and belief, that Defendant Positive Investments was an owner and/or manager of the Property, exercised real or apparent authority regarding it, and was therefore responsible for maintaining the Property in a lawful and habitable condition, but failed and/or refused to do so.

74.    On information and belief, Defendant Charles B. Roselli ("Defendant Roselli") is an individual and a citizen of the State of California. Plaintiff allege that Defendant Roselli held title to the Property and had an ownership interest from in or around September 2017 to in or around November 2019. Plaintiffs allege, on information and belief, that at all relevant times mentioned herein, Defendant Roselli was an owner and/or manager of the Property, held himself as the owner of the Property and as the landlord of the Property, exercised real or apparent authority regarding the Property, and was therefore responsible for maintaining the Property in a lawful and habitable condition, but failed and/or refused to do so.

75.    On information and belief, Defendant Mashcole Property Management, Inc. ("Defendant Mashcole") is a California corporation licensed to do business and doing business in California since March 2, 2005. Plaintiffs allege, on information and belief, that from 2017 to 2019, Defendant Mashcole

managed the Property, exercised real or apparent authority regarding the Property, and was therefore responsible for maintaining the Property in a lawful and habitable condition, but failed and/or refused to do so.

76.     On information and belief, Defendant Reynaldo Tobias is an individual and a citizen of the state of California. Plaintiffs allege that Defendant Reynaldo Tobias held title to the Property and had an ownership interest from in or around July 2000 to in or around September 2017. Plaintiffs allege, on information and belief, that at all relevant times mentioned herein, Defendant Reynaldo Tobias was an owner and/or manager of the Property, held himself as the owner of the Property and as the landlord of the Property, exercised real or apparent authority regarding the Property, and was therefore responsible for maintaining the Property in a lawful and habitable condition, but failed and/or refused to do so.

77.     On information and belief, Defendant Isolina Elia Tobias ("Defendant Isolina Tobias") is an individual and a citizen of the state of California. Plaintiffs allege that Defendant Isolina Tobias held title to the Property and had an ownership interest from in or around July 2000 to in or around September 2017. Plaintiffs allege, on information and belief, that all relevant times mentioned herein, Defendant Isolina Tobias was an owner and/or manager of the Property, held herself as the owner of the Property and as the landlord of the Property, exercised real or apparent authority regarding the Property, and was therefore responsible for maintaining the Property in a lawful and habitable condition, but failed and/or refused to do so.

78.     On information and belief, Defendant Reynaldo Tobias and Defendant Isolina Tobias (collectively, "Tobias Defendants") transferred their interests in the Property in or around July 2002 to the 2002 Tobias Family Trust dated July 25, 2002. Plaintiffs allege that Defendants Tobias, as trustees, held title to the Property and had an ownership interest from in or around July 2002 to in or around September 2017. Plaintiffs allege, on information and belief, that at all relevant times mentioned herein, Defendants Tobias were owners and/or managers of the Property, held themselves as the owners of the Property and as the landlords of the Property, exercised real or apparent authority regarding the Property, and were therefore responsible for maintaining the Property in a lawful and habitable condition, but failed and/or refused to do so.

79.     On information and belief, Defendant Cinthia Valencia ("Defendant Valencia") is an

individual and a citizen of the State of California. Plaintiffs allege that Defendant Valencia, as an agent and/or employee of the other Defendants, managed the Property for approximately 20 years, exercised real or apparent authority regarding the Property, and therefore was responsible for maintaining the Property in a lawful and habitable condition, but has failed and/or refused to do so.

80.    On information and belief, Plaintiffs allege that Defendants, and each of them, were owners, persons, or entities actually or apparently responsible for the management and maintenance of the Property during Plaintiffs' tenancies. Defendants asserted authority over the management, maintenance, and operation of the Property, and were responsible for maintaining the Property in a habitable condition.

81.    Wherever reference is made in this Complaint to the "Owner Defendants," it shall be deemed to mean individuals and entities identified as "owners" and/or holding "title" to the Property in the preceding paragraphs of this Complaint. The Owner Defendants include Tobias Defendants, Defendants Roselli, Positive Investments, Flora Ave, Baks Investments, and Bakhshi, as well as Does 1-100.

82.    Wherever reference is made in this Complaint to the "Management Defendants," it shall be deemed to mean individuals and entities identified as "managers" and/or "management" in the preceding paragraphs of this Complaint. The Management Defendants include Tobias Defendants, Defendants Valencia, Mashcole, and Positive Investments, as well as Does 1-100.

83.    Wherever reference is made in this Complaint to any act or failure to act by Defendant or Defendants, such allegations and references shall also be deemed to mean acts and failures to act of each Defendant, whether acting individually or joint and severally.

84.    Wherever reference is made to individuals who are not named as Defendants in this Complaint, but who are or were employees, agents, associates, joint venturers, managers, directors, board members, partners, trustees or beneficiaries of Defendants and/or Defendants' companies or organizations, Plaintiffs assert that the conduct of such individuals at all relevant times was on behalf of Defendants and was within the course and scope of their employment or agency.

85.    Plaintiffs are ignorant of the true names and capacities of Defendants sued as DOES 1 through 100, inclusive, and therefore sue these Defendants by such fictitious names and capacities. Plaintiffs are informed and believe, and thereupon allege, that each Defendant fictitiously named as a

14

1  DOE is legally responsible, negligently or in some other actionable manner, for the acts and failures to act

2  as alleged herein, and thereby proximately and legally caused the injuries and damages to Plaintiffs as

3  alleged. Plaintiffs will seek leave of court to amend this complaint to allege such names and/or capacities

4  of such fictitiously named Defendants as soon as they are ascertained.

5      86.    During the relevant period of time, each of the Defendants and DOES was the agent,

6  employee, and representative of every other Defendant and DOE, and in doing the things herein alleged,

7  was acting within the course and scope of such agency, service, and representation, and directed, aided

8  and abetted, authorized, or ratified each and every act and conduct herein alleged. Each and every

9  Defendant is the alter ego of the other Defendants or entities herein.

**VENUE**

11     87.    Venue is proper in Los Angeles County because it is the County in which the Property is

12  located and where a substantial part of the events giving rise to the claims for relief occurred.

**FACTUAL ALLEGATIONS**

14     88.    At all times mentioned herein, Defendants were subject to common law and statutory duties

15  that required Defendants to provide Plaintiffs with a residential unit and common area that complied with

16  all habitability requirements imposed by state, county, and local law, including but not limited to, Civil

17  Code section 1941.1 and Health and Safety Code section 17920.3. Notwithstanding these non-waivable

18  and non-delegable duties, Defendants have breached their common law and statutory duties of care by

19  failing to repair and maintain the Property. Defendants' gross failure to maintain the habitability of the

20  Property has threatened the health and safety of Plaintiffs, their children, and the larger community.

21     89.    On information and belief, each Defendant either owned, operated, managed, and/or was

22  responsible for maintaining the Property while the uninhabitable and hazardous conditions described

23  herein existed. On information and belief, Defendants and their officers, directors, and managing agents

24  directly, or through their agents, observed and were aware of these uninhabitable and hazardous

25  conditions. Yet, they negligently and/or intentionally refused to take corrective action and ratified their

26  employees' and agents' failure to take corrective action.

27     90.    For years, Defendants neglected to properly maintain the Property by, among other things,

28  failing to adequately perform routine and regular maintenance on the Property. Consequently, Defendants

1  have allowed the Property to fall into a state of decrepitude, leading to major systemic problems that

2  endanger Plaintiffs' health and safety.

3      91.    Since at least 2015, the City of Bell and the Los Angeles Department of Public Health have

4  issued numerous notices to Defendants for violations of housing and health and safety laws at the Property.

5      92.    Between February 2015 and late 2017, during which time, based on information and belief,

6  Tobias Defendants owned and managed the Property, the City of Bell issued Notices of Violation to

7  Defendants for, among other things, the following conditions at the Property: (1) deteriorated exterior

8  fascia boards; and (2) damaged, deteriorated, and/or dilapidated window screens and/or glass. Based on

9  information and belief, Defendant Valencia also managed the Property between February 2015 and late

10  2017.

11      93.    Between late 2017 and late 2019, during which time, based on information and belief,

12  Defendant Roselli owned and Defendants Mashcole and Valencia managed the Property, the City of Bell

13  issued Notices of Violations to Defendants for, among other things, the following conditions at the

14  Property: (1) peeling paint; and (2) gross lack of maintenance detrimental to the public health and safety

15  for overflowing trash bins.

16      94.    Since late 2019, during which time, based on information and belief, Defendant Flora Ave

17  has owned and Defendants Positive Investments and Valencia have managed the Property, the City of

18  Bell issued Notices of Violations to Defendants for, among other things, the following conditions at the

19  Property: (1) hole in bathroom wall; (2) mold in bathroom; (3) leaking kitchen sink trap; (4) mold around

20  kitchen sink trap; (5) damage under kitchen sink; and (6) clogged washing machine P-trap or sewer pipe.

21      95.    On or about November 7, 2018, at which time, based on information and belief, Defendant

22  Roselli owned and Defendants Mashcole and Valencia managed the Property, after the Los Angeles

23  Department of Public Health ("DPH") inspected the Property, DPH issued violation notices to Defendants

24  for, among other things:

25      (a)    6320 Fishburn Avenue: (1) cockroaches; (2) bed bugs; (3) peeling paint; and (4) mold;

26      (b)    6333 Flora Avenue: (1) damaged outlets; (2) broken light; (3) inoperable toilet; (4)

27          deteriorated bathtub caulking; (5) holes in walls; and (6) leaking sink;

28      (c)    6329 Flora Avenue: (1) cockroaches; (2) rat/mice infestation; (3) deteriorated bathtub

caulking; (4) damaged floor tiles; (5) moisture-damaged ceiling; (6) mold; and (7) lack of window screens;

(d)    6325 Flora Avenue: (1) cockroaches; (2) mice; (3) inoperable heating unit; (4) disintegrated flooring; and (5) damaged bathroom door; and

(e)    6317 Flora Avenue: (1) moisture-damaged wall; (2) water leaks; (3) peeling/damaged paint; (4) hole in wall; and (5) suspected mold on walls and ceiling.

96.    Also, on or about November 7, 2018, DPH issued an Official Inspection Report for the common areas of the Property for, among other things: (1) cockroaches; (2) missing foundation crawl space vent screens; (3) peeling damaged exterior paint; and (4) dislodged stairway handrails and support posts.

97.    On or about November 13, 2018 and February 6, 2019, at which time, based on information and belief, Defendant Roselli owned and Defendants Mashcole and Valencia managed the Property, DPH issued violation notices to Defendants regarding 6320 Fishburn Avenue for: (1) inoperable, red-tagged heater unit; (2) splintered door; (3) hole and cracks in wall/ceiling; (4) broken and deteriorated windows; (5) inoperable garbage disposal; (6) peeling paint; and (7) missing outlet covers.

98.    On or about March 18, 2019, at which time, based on information and belief, Defendant Roselli owned and Defendants Mashcole and Valencia managed the Property, after DPH inspected the Property, DPH issued violation notices to Defendants for, among other things: (1) overflowing trash and debris on grounds; (2) premises not maintained in sanitary manner; (3) loose stairway handrails; and (4) missing crawl space vent screens.

99.    Between April and September 2019, at which time, based on information and belief, Defendant Roselli owned and Defendants Mashcole and Valencia managed the Property, DPH issued violation notices to Defendants for, among other things:

(a)    6320 Fishburn Avenue: (1) cockroaches; (2) lack of faucet in bathtub; and (3) holes in wall;

(b)    6333 Flora Avenue: (1) cockroaches; (2) inoperable red-tagged heater unit; (3) malfunctioning faucet and knobs in bathroom sink; and (4) blistering/peeling paint; and

(c)    6325 Flora Avenue: (1) inoperable yellow-tagged heater unit; (2) defective door on water-heater cabinet; (3) damaged kitchen countertop; and (4) broken floor tiles/deteriorated grout.

100.    In addition to the foregoing violations that DPH and the City of Bell communicated to Defendants, Plaintiffs have made – and continue to make – complaints to Defendants and/or their agents about the uninhabitable conditions, which have existed since as early as 2002. However, Plaintiffs' pleas to fix the dilapidated conditions are either ignored or Defendants make shoddy repairs that only temporarily "fix" the issues.

101.    Consequently, Plaintiffs live in deplorable conditions with, *inter alia*, rampant mold, defective plumbing that causes feces to leak into their homes, lack of hot water for days to weeks at a time, crumbling walls, rotting wood fixtures, severely clogged drains, broken unsealed windows, leaking pipes and ceilings, and holes and crevices in the walls where insects and rodents invade their homes.

102.    Defendants' failure to maintain the Property has led to infestations of cockroaches, rodents, bed bugs, and other pests in Plaintiffs' homes, thereby creating nightmarish living conditions, since as early as 2002. As a result of the long-term infestations, Plaintiffs have been forced to discard countless personal items, including furniture, appliances, shoes, clothing, bedding, and food. Plaintiffs also regularly spend their own limited funds on insecticides, cleaning products, and traps to attempt to combat the infestations.

103.    Over the years, Plaintiffs have suffered various injuries and illnesses from the deplorable living conditions, including, but not limited to, insect bites, rashes, hives, allergies, respiratory problems, nosebleeds, and headaches. In addition, the Property's conditions have caused Plaintiffs to suffer undue stress, fear, worry, inability to sleep, lack of appetite, humiliation, and sadness. Plaintiffs who are parents feel frustrated and powerless because they are unable to protect their children from the unsafe and unhealthy conditions. Children are frequently bitten by insects infesting their homes and beds.

104.    To add insult to injury, Defendants and/or their agents have threatened and harassed Plaintiffs. Defendant Valencia, who was an onsite manager at the Property for approximately 20 years, threatened to evict some Plaintiffs in order to force them to comply with arbitrary rules and polices. For example, Defendant Valencia threatened to issue an eviction notice if Plaintiffs did not move plants and other personal items from outside of their units, although the items had been allowed without issue for years.

105.    Throughout her tenure as an agent for the Owner Defendants, Defendant Valencia

intimidated Plaintiffs who request repairs for the deplorable conditions at the Property. Frequently, Defendant Valencia responded to Plaintiffs' repair requests by blaming them or their children for the conditions and/or telling Plaintiffs to make repairs themselves. Defendant Valencia's consistent pattern of refusing to properly address Plaintiffs' requests for repairs discouraged them from reporting additional unsafe and unhealthy conditions.

106.    In addition, Defendants have not provided lease agreements and other documents impacting Plaintiffs' tenancies in Spanish, despite knowing that Plaintiffs are mostly monolingual Spanish speakers. In fact, Defendant Valencia took advantage of some Plaintiffs' inability to read English by either intentionally misrepresenting and/or failing to fully disclose essential terms of documents related to Plaintiffs' tenancies at the Property.

107.    On or around March 8, 2023, Defendants Baks Investments and Bakhshi initiated unsolicited contacts with Plaintiffs. During these communications, Frank Jimenez, an agent of Defendants Baks Investments and Bakhshi, advised Plaintiffs that the Defendants intend to demolish or substantially remodel the Property, which would require all tenants to vacate the premises in the next two months. Jimenez made "cash for keys" offers to Plaintiffs while intimidating them by stating that Defendant Baks Investments is "made of attorneys who know what they are doing." In the meantime, Defendants Baks Investments and Bakhshi failed to inform Plaintiffs and other tenants at the Property how to pay rent, causing fear of impending eviction among the tenants.

108.    On or around March 20, 2023, Defendants Baks Investments and Bakhshi caused the removal of trash bins at the Property. Based on information and belief, Defendants Baks Investments and Bakhshi contacted the City of Bell and informed the relevant agency that the trash bins will no longer be necessary because the Property will soon be vacated. Contrary to Defendants Baks Investments and Bakhshi's representation to the City of Bell, Plaintiffs and other tenants at the Property had not accepted the Defendants' cash-for-keys offers.

109.    On or around March 20, 202023, Defendants Baks Investments and Bakhshi's agent, Frank Jimenez, threatened Plaintiffs and other tenants at the Property that if they do not vacate the premises by the end of the month, Defendants Baks Investments and Bakhshi will begin issuing notices to vacate or filing unlawful detainers.

110.    On at least one occasion, Frank Jimenez brought an individual whom he introduced as a notary public to record his conversations with Plaintiffs about the "cash for keys" offers. Without disclosing the purpose or securing Plaintiffs' consent, the purported notary public recorded such conversations in Plaintiffs' presence.

## FIRST CAUSE OF ACTION

### (Negligence)

**(Plaintiffs Osvaldo Benitez, Michelle Salmeron, Bryan Salmeron, Sebastian Salmeron, Vanessa Salmeron, Luis Fernando Garcia, Xavier Garcia, Jenipher Perez, Danna Elias, Alisson Elias, Damian Elias, Aden Sanchez, Aliyah Sanchez, Alejandra Desiderio, Mia Desiderio, Fernanda Desiderio, David Desiderio, Daniel Salgado, Itzel Salgado, and Devin Hernandez Against Defendants Reynaldo Tobias and Isolina Tobias;**

**All Plaintiffs Against Defendants 6317 Flora Ave, LLC; Positive Investments, Inc.; Charles B. Roselli; Mashcole Property Management, Inc.; Cinthia Valencia; Baks Investments; and Michael Bakhshi)**

111.    Plaintiffs re-allege and incorporate by reference every allegation of the Complaint as if fully set forth in this paragraph.

112.    During their residence at the Property, each Plaintiff was in a landlord-tenant relationship with Defendants, paying rent and occupying the premises, pursuant to a valid rental agreement. Further, during all times relevant, the Management Defendants were the agents of the owners as set forth above, and also had actual and/or constructive control of the Property, including having an "onsite" manager. The Management Defendants had the day-to-day contractual, legal, and other duty and responsibility to monitor all conditions at the Property and to comply with their legal and contractual obligations.

113.    As lessors of residential buildings for the occupation of human beings, Defendants and/or their agents owed a duty to Plaintiffs under Civil Code section 1941 to maintain the Property in a condition fit for human occupation, and to repair all subsequent dilapidations that render it untenable. Defendants also owed a duty of care to Plaintiffs to ensure that Plaintiffs were not exposed to foreseeable harm.

114.    At all times relevant herein, Defendants were aware of their obligation to maintain the Property in a habitable condition having been notified by Plaintiffs, DPH, and the City of Bell that the

1   Property was out of compliance with applicable housing and health and safety codes.

2        115.   Defendants have breached this duty by negligently failing to maintain the Property in a

3   condition fit for human occupancy and by failing to repair all subsequent conditions, including, but not

4   limited to: electrical issues, substantial plumbing failures, leaking, pest infestations, and other

5   untenantable conditions. Defendants failed and continue to fail to comply with their obligations to

6   Plaintiffs to maintain their rental homes in proper and habitable repair. Further, Defendants failed and

7   continue to fail to properly supervise, manage, and/or communicate with their own agents, employees,

8   independent contractors, vendors, and others and continue to allow, encourage, and/or permit such persons

9   to negligently conduct themselves in violation of Defendants' duty to Plaintiffs.

10       116.   As to the Owner Defendants, such Defendants, among other things to be developed during

11   discovery in this matter, negligently failed in the following non-exclusive ways to comply with California

12   law as to the safe and proper ownership of residential units/tenancies: failed and refused to supervise the

13   work at the Property; failed to hire and supervise contractors, workers, and vendors to make effective and

14   permanent repairs; refused to do repairs and make the Property safe and habitable so that they would not

15   have to spend their own money for such repairs and therefore, could increase their monthly and annual

16   profits from owning the Property; negligently or otherwise ignored or retaliated against Plaintiffs that

17   requested repairs or otherwise complained about uninhabitable conditions; accused Plaintiffs of causing

18   all of the habitability issues at the Property; ignored and refused to properly remedy the rampant pest

19   infestations; and otherwise negligently and/or intentionally failed to comply with their duty to act in a

20   reasonable, non-negligent manner.

21       117.   As to the Management Defendants, such Defendants, among other things to be developed

22   during discovery of this matter, negligently failed in the following non-exclusive ways to comply with

23   California law as to the safe and proper management of residential units/tenancies: failed to properly

24   inspect the units/Property; failed to remedy the defects in a timely manner; failed to notify the Owner

25   Defendants promptly and accurately of the pervasive and systemic issues at the Property; failed to timely

26   and accurately respond to Plaintiffs' requests for repairs and complaints about the uninhabitable

27   conditions; at times, failed to properly supervise their onsite employees and permitted them to engage in

28   a pattern of retaliatory and threatening conduct toward Plaintiffs, which has continued to the present day;

threatened to evict Plaintiffs who complained; and otherwise negligently failed to act as a reasonable property management company/manager.

118.    As owners and managers of the Property, Defendants and/or their agents were in a position of authority which they consistently abused by, among other things,  knowingly failing and refusing to repair or abate dangerous conditions; blaming the Property's significant and chronic problems with plumbing, electrical, pest and rodent infestations, leaks, and other conditions on Plaintiffs; verbally abusing and disparaging Plaintiffs about the conditions; blatantly ignoring repeated government orders to comply with the building, health and safety codes, ordinances or other laws, all the while having actual knowledge that the conditions at the Property were causing sickness, illness, injury and other damages to Plaintiffs. Defendants and their agents abused their position of purveyors of low-income housing in a persistent, atrocious, and ongoing manner, by refusing to make the Property safe and habitable while demanding and collecting rent.

119.    Defendants knew or should have known that Plaintiffs were and are particularly vulnerable to the conditions at the Property because Plaintiffs are low-income tenants with limited resources—tenants for whom locating or obtaining comparably priced rental housing was very difficult or impossible. Defendants knew or should have known that Plaintiffs' interest in remaining in their affordable rental units was great and thus Plaintiffs had no choice but to remain in their uninhabitable and negligently maintained units, despite the conduct of Defendants. Defendants knew or should have known that Plaintiffs were mostly monolingual Spanish speakers who also would have difficulty accessing City and County resources and/or to make complaints to the proper authorities. Plaintiffs were also fearful of making complaints to Defendants as they feared risking retaliatory conduct such as eviction and were at significant risk of falling into homelessness.

120.    Defendants knew, or reasonably should have known, that their conduct would result in Plaintiffs suffering severe and extreme emotional distress. Defendants knew that Plaintiffs were particularly susceptible to injury through mental distress by virtue of the necessity of the commodity that Defendants purveyed: a home for Plaintiffs. Defendants knew that a habitable home is paramount to Plaintiffs' well-being and emotional health. In allowing the Property to continue in an uninhabitable state, and preventing the Property from offering respite and safety to Plaintiffs, Defendants acted with reckless

1   disregard of the probability of causing severe emotional distress.

2       121.   Defendants were aware that numerous children live at the Property and that those children

3   would have to grow up exposed to bed bugs, cockroaches, rodents, other pests, and mold. In addition, they

4   would be exposed to broken windows, holes in walls and floors, water intrusion, and lack of heat in the

5   winter. The children also have had to go without hot water for days to weeks at a time, due to the systemic

6   plumbing problems, which continue to this day.

7       122.   With their in-depth and intimate knowledge of the Property's state, Defendants' refusal to

8   abate the Property's nuisance conditions and bring it into a habitable state was indecent, outrageous, and

9   offensive to common decency.

10      123.   Defendants and each of them knew or should have known that their breach of duty and/or

11  their conduct as stated and according to proof at the time of trial would result in Plaintiffs suffering

12  extreme upset and emotional distress.

13      124.   Defendants failed to exercise their duty of due care to prevent their agents, managers,

14  and/or employees from displaying reckless disregard for the consequences of their conduct against

15  Plaintiffs. Defendants have known about the Property's dilapidated state for years and yet have failed to

16  address the Property's long-term pest infestations or otherwise maintain it.

17      125.   As a direct and proximate cause of the deplorable, uninhabitable conditions Plaintiffs

18  endured daily, as well as Defendants' conduct toward them, Plaintiffs suffered and/or continue to suffer

19  damages from illness, physical injury, mental stress, emotional distress, insomnia, fear, sleeplessness,

20  constant worry, panic, and loss of appetite, in an amount to be determined according to proof, but which

21  amount is within the jurisdictional requirements of this Court.

22      126.   As a direct and proximate result of Defendants' negligent maintenance of the premises, the

23  value of the leasehold held by each Plaintiff has been diminished. Consequently, each Plaintiff has been

24  damaged in an amount to be proven at trial.

25      127.   Defendants' failure to keep the Property fit for human occupation was a substantial factor

26  in causing Plaintiffs' physical injuries, emotional distress, and economic harm, all of which were a

27  foreseeable, direct, and proximate result of Defendants' negligence. The Defendants, and each of them,

28  are liable to compensate Plaintiffs for these injuries.

128.    Defendants' tortious breach of their duties was and has been willful, deliberate, malicious, and oppressive, amounting to despicable conduct in conscious disregard of Plaintiffs' rights that subjected Plaintiffs to cruel and unjust hardship, so as to entitle Plaintiffs to an award of punitive and exemplary damages. Plaintiffs are therefore entitled to punitive and exemplary damages against Defendants in an amount sufficient to punish them and deter them and others from engaging in similar conduct, as determined at trial.

## SECOND CAUSE OF ACTION

### (Breach of Implied Warranty of Habitability)

**(Plaintiffs Osvaldo Benitez, Michelle Salmeron, Bryan Salmeron, Sebastian Salmeron, Vanessa Salmeron, Luis Fernando Garcia, Xavier Garcia, Jenipher Perez, Danna Elias, Alisson Elias, Damian Elias, Aden Sanchez, Aliyah Sanchez, Alejandra Desiderio, Mia Desiderio, Fernanda Desiderio, David Desiderio, Daniel Salgado, Itzel Salgado, and Devin Hernandez Against Defendants Reynaldo Tobias and Isolina Tobias;**

**All Plaintiffs Against Defendants 6317 Flora Ave, LLC; Positive Investments, Inc.; Charles B. Roselli; Mashcole Property Management, Inc.; Cinthia Valencia; Baks Investments; and Michael Bakhshi)**

129.    Plaintiffs re-allege and incorporate by reference every allegation of the Complaint as if fully set forth in this paragraph.

130.    During their residence at the Property, each Plaintiff was in a landlord-tenant relationship with Defendants, paying rent and occupying the premises, pursuant to a valid lease agreement.

131.    Implied in each rental agreement in California, whether written or oral, is a warranty of habitability, which requires landlords to maintain premises in a habitable condition.

132.    By virtue of the landlord-tenant relationship and written or oral lease agreement, Defendants owe Plaintiffs a duty, as defined in appropriate health and safety codes, to maintain the premises in a habitable condition.

133.    Defendants breached this duty and the implied warranty of habitability by allowing the Property to persist in decrepitude and by failing to correct the Property's substandard conditions.

134.    At all times relevant herein, Defendants were aware of their obligation to maintain the

24

1   Property in a habitable condition. Despite being notified by Plaintiffs, DPH, and the City of Bell that the

2   Property was out of compliance with applicable housing and health and safety codes, Defendants

3   negligently failed to properly maintain it or to correct the substandard conditions to meet the minimum

4   standards set forth in applicable housing and health and safety codes.

5       135.   Having been notified by Plaintiffs, DPH, and the City of Bell that the Property was out of

6   compliance with applicable law, Defendants knew, or reasonably should have known, that Plaintiffs would

7   suffer damage as a result of the substandard conditions at the Property.

8       136.   Each Plaintiff has been damaged by Defendants' conduct in an amount equal to rents due

9   and paid by each Plaintiff during the life of each Plaintiff's tenancy, or in an amount to be proven at trial.

10  Defendants are liable to compensate Plaintiffs for these injuries.

11      137.   In addition, as a direct and proximate result of Defendants' conduct and the conditions

12  outlined above, Plaintiffs have suffered and/or continue to suffer physical injury, illness, mental stress,

13  emotional distress, loss in the value of his or her leasehold, property damage, and other economic damage

14  in an amount to be proven at trial, but whose amount is within this Court's jurisdictional requirement.

15                          **THIRD CAUSE OF ACTION**

16                    **(Breach of the Covenant of Quiet Enjoyment –**

17                    **Civil Code Sections 1927, 1940.2, and 3304)**

18  **(Plaintiffs Osvaldo Benitez, Michelle Salmeron, Bryan Salmeron, Sebastian Salmeron, Vanessa**

19  **Salmeron, Luis Fernando Garcia, Xavier Garcia, Jenipher Perez, Danna Elias, Alisson Elias,**

20  **Damian Elias, Aden Sanchez, Aliyah Sanchez, Mia Desiderio, Fernanda Desiderio, David**

21  **Desiderio, Daniel Salgado, Itzel Salgado, and Devin Hernandez Against Defendants Reynaldo**

22                          **Tobias and Isolina Tobias;**

23  **Plaintiffs Osvaldo Benitez, Iker Semey Yuman Duarte, Jose Luis Sanchez, Roberto Damian**

24  **Figueroa, Cecilia Salmeron Mariano, Michelle Salmeron, Bryan Salmeron, Sebastian Salmeron,**

25  **Vanessa Salmeron, Sarahi Salmeron, Luis Fernando Garcia, Xavier Garcia, Vince Garcia,**

26  **Yesenia Reyes, Neydi Romero, Jenipher Perez, Danna Elias, Alisson Elias, Damian Elias, Aden**

27  **Sanchez, Aliyah Sanchez, Alan Sanchez, Mercedes Cervera, Alejandra Desiderio, Mia Desiderio,**

28  **Fernanda Desiderio, David Desiderio, Oliver Huerta, Alfonso Salgado, Maria Christina Ponse**

25

**Loza, Daniel Salgado, Itzel Salgado, Mirtala Perez, Hildam Gonzalez, Devin Hernandez, and Jaylen Hernandez Against Defendants Charles B. Roselli and Mashcole Property Management, Inc.;**

**All Plaintiffs Against Defendants 6317 Flora Ave, LLC; Positive Investments, Inc.; Cinthia Valencia; Baks Investments; and Michael Bakhshi)**

138.    Plaintiffs re-allege and incorporate by reference every allegation of the complaint as if fully set forth in this paragraph.

139.    Plaintiffs have held a leasehold interest and were tenants at the Property while Defendants owned and/or managed it.

140.    California Civil Code section 1927 provides that, in a leasehold arrangement, the lessor is bound to secure the quiet possession of the property for the lessee during the term of the lease.

141.    California Civil Code section 1940.2(a)(3) prohibits landlords from using, or threatening to use, force, making willful threats, or behaving menacingly in a way that interferes with a tenant's quiet enjoyment of the premises and that would create an apprehension of harm in a reasonable person.

142.    Defendants breached their statutory and common law duty to secure the quiet possession of the Property by engaging in a pattern of unlawful, menacing, and harassing course of conduct, substantially interfering with Plaintiffs' quiet enjoyment of the leased units at the Property. This conduct consists of acts and omissions that include: Defendants' inaction to rid the property of insects and other pests that infest the Property; refusing to make repairs; telling Plaintiffs to fix the conditions with their own limited funds; threatening Plaintiffs with eviction for non-compliance with arbitrary policies; and taking actions that are consistent with the threat of eviction, such as causing the city government to remove trash bins from the Property. Such conduct would have created an apprehension of harm in a reasonable person.

143.    Defendants knew, or reasonably should have known, that Plaintiffs would suffer damage as a result of this breach. Defendants were consistently notified of the uninhabitable conditions by Plaintiffs, DPH, and the City of Bell.

144.    As a direct and proximate result of Defendants' breach of the covenant of quiet enjoyment, the value of the leasehold held by Plaintiffs was diminished. Consequently, Plaintiffs were damaged in an

1 amount equal to rental payments due and paid during Plaintiffs' leasehold, or in an amount to be proven

2 at trial.

3     145.    In addition, as a direct and proximate result of Defendants' conduct and the conditions

4 outlined above, Plaintiffs have suffered damages related to illness, physical injury, mental stress,

5 emotional distress, loss in the value of their leasehold, and property damage, in an amount to be

6 determined according to proof, but whose amount is within this Court's jurisdictional requirement.

7     146.    Unless Defendants are restrained by order of this Court, it will be necessary for Plaintiffs

8 to commence many successive actions against Defendants to secure compensation for damages sustained,

9 thus requiring a multiplicity of suits, and Plaintiffs will be daily threatened by the above-referenced

10 conditions.

11    147.    Unless Defendants are enjoined from continuing their course of conduct, Plaintiffs will

12 suffer irreparable injury in that Plaintiffs will be deprived of the comfortable enjoyment of their home,

13 and their health will be irreparably harmed, as detailed above.

14    148.    Plaintiffs have no plain, speedy, or adequate remedy at law, and injunctive relief is

15 expressly authorized by sections 526 and 731 of the California Code of Civil Procedure.

16    149.    Additionally, Plaintiffs are entitled to statutory damages of $2,000 for each violation

17 pursuant to California Civil Code section 1940.2(b).

18    150.    Defendants' tortious breach of their duties has been willful, malicious, and oppressive,

19 amounting to despicable conduct in conscious disregard of Plaintiffs' rights that subjected Plaintiffs to

20 cruel and unjust hardship, so as to entitle Plaintiffs to an award of punitive and exemplary damages.

21 Plaintiffs are entitled to punitive and exemplary damages against Defendants, and each of them, in an

22 amount sufficient to punish them and deter them and others from engaging in similar conduct, as

23 determined at trial to the extent allowed by law.

24    151.    Plaintiffs are entitled to recover reasonable attorneys' fees incurred in bringing and

25 litigating this matter and costs of the suit herein.

26
## **FOURTH CAUSE OF ACTION**

27
### **(Nuisance)**

28 **(Plaintiffs Osvaldo Benitez, Michelle Salmeron, Bryan Salmeron, Sebastian Salmeron, Vanessa**

**Salmeron, Luis Fernando Garcia, Xavier Garcia, Jeniper Perez, Danna Elias, Alisson Elias, Damian Elias, Aden Sanchez, Aliyah Sanchez, Alejandra Desiderio, Mia Desiderio, Fernanda Desiderio, David Desiderio, Daniel Salgado, Itzel Salgado, and Devin Hernandez Against Defendants Reynaldo Tobias and Isolina Tobias;**

**All Plaintiffs Against Defendants 6317 Flora Ave, LLC; Positive Investments, Inc.; Charles B. Roselli; Mashcole Property Management, Inc.; Cinthia Valencia; Baks Investments; and Michael Bakhshi)**

152.    Plaintiffs re-allege and incorporate by reference every allegation of the Complaint as if fully set forth in this paragraph.

153.    Plaintiffs have held a leasehold interest and were tenants at the Property while Defendants owned and/or managed it.

154.    The conditions of the Building as described herein constitute a nuisance within, but not limited to, the meaning of Civil Code section 3479 *et seq.* in that these defective conditions are injurious to the health and safety of each Plaintiff, and substantially interfere with each Plaintiff's comfortable enjoyment of life at the Property.

155.    Despite being required by law to abate the nuisance, Defendants failed and continue to fail to correct conditions rendering the Property a nuisance.

156.    Defendants knew, or reasonably should have known, that Plaintiffs would be injured as a result of their failures to abate the nuisance conditions.

157.    Defendants' failure to abate the nuisance was the result of policies and practices that prevented the allocation of resources necessary to maintain the Property in habitable condition, solely in an effort to maximize profits at Plaintiffs' expense.

158.    As a direct and proximate result of Defendants' failure to abate the nuisance, the value of the leasehold held by Plaintiffs was diminished. Consequently, Plaintiffs were damaged in an amount equal to the rental payments due and paid during Plaintiffs' leasehold, or in an amount to be proven at trial.

159.    As a direct and proximate result of Defendants' failure to abate the nuisance, each Plaintiff has suffered and/or continues to suffer physical injury, illness, mental stress, emotional distress, shame,

feelings of anxiety, sadness, helplessness, frustration, discomfort, annoyance, fear, and property damage, in an amount to be determined according to proof, but which amount is within the jurisdictional requirements of this Court.

160.    Unless Defendants, and each of them, are restrained by order of this Court, it will be necessary for Plaintiffs to commence many successive actions against Defendants to secure compensation for damages sustained, thus requiring a multiplicity of suits, while Plaintiffs continue to be threatened on a daily basis by the above-referenced conditions.

161.    Defendants are liable to compensate Plaintiffs for these injuries.

162.    Unless Defendants are enjoined from continuing their course of conduct, Plaintiffs will suffer irreparable injury in that Plaintiffs will continue to be deprived of comfortable enjoyment of their leasehold and property, and their health and safety will be irreparably harmed.

163.    Plaintiffs have no plain, speedy, or adequate remedy at law, and injunctive relief is expressly authorized by sections 526 and 731 of the California Code of Civil Procedure.

164.    Defendants' failure to abate the nuisance has been willful, malicious, and oppressive, amounting to despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights, so as to entitle Plaintiffs to an award of punitive and exemplary damages. Plaintiffs are entitled to punitive and exemplary damages against Defendants in an amount sufficient to punish them and deter them and others from engaging in similar conduct, as determined at trial.

165.    Plaintiffs are also entitled to recover their reasonable attorneys' fees incurred in bringing and litigating this matter and costs of the suit herein.

## FIFTH CAUSE OF ACTION

### (Premise Liability)

**(Plaintiffs Osvaldo Benitez, Michelle Salmeron, Bryan Salmeron, Sebastian Salmeron, Vanessa Salmeron, Luis Fernando Garcia, Xavier Garcia, Jenipher Perez, Danna Elias, Alisson Elias, Damian Elias, Aden Sanchez, Aliyah Sanchez, Alejandra Desiderio, Mia Desiderio, Fernanda Desiderio, David Desiderio, Daniel Salgado, Itzel Salgado, and Devin Hernandez Against Defendants Reynaldo Tobias and Isolina Tobias;**

**All Plaintiffs Against Defendants 6317 Flora Ave, LLC; Positive Investments, Inc.; Charles B.**

29

1   Roselli; Mashcole Property Management, Inc.; Cinthia Valencia; Baks Investments; and Michael
2   Bakhshi)

3       166.    Plaintiffs re-allege and incorporate by reference every allegation of the Complaint as if
4   fully set forth in this paragraph.

5       167.    During their residence at the Property, each Plaintiff was in a landlord-tenant relationship
6   with Defendants, paying rent and occupying the premises, pursuant to a valid lease agreement.

7       168.    At all times relevant to this cause of action, Defendants and their agents owned, leased,
8   occupied, managed, or otherwise controlled the Property.

9       169.    As landowners and managers of the Property, Defendants owed a duty of care under
10  common law and California Civil Code section 1714 to exercise due care in the management of the
11  Property so as to avoid foreseeable injury to others, and a greater degree of care with respect to the minor
12  Plaintiffs because of their lack of capacity to appreciate risks and avoid danger. This duty required
13  Defendants to comply with all building, fire, health, and safety codes, ordinances, regulations, and other
14  laws applying to the maintenance and operation of residential rental housing.

15      170.    Defendants have breached their common law and statutory duties of care by failing to
16  correct substandard conditions and failing to use ordinary care in managing the Property.

17      171.    Defendants knew, or reasonably should have known, that Plaintiffs would be injured as a
18  result of their breach of the common law and statutory duties of due care.

19      172.    As a direct and proximate result of Defendants' negligent maintenance of the premises, the
20  value of the leasehold held by each Plaintiff has been diminished. Consequently, each Plaintiff has been
21  damaged in an amount to be proven at trial.

22      173.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered and/or continue
23  to suffer illness, physical injury, mental stress, severe emotional distress, feelings of anxiety, sadness,
24  anger, fearfulness, worry, disgust, helplessness, frustration, and shame, in an amount to be determined
25  according to proof, but which amount is within the jurisdictional requirements of this Court. Defendants
26  are liable to compensate Plaintiffs for these injuries.

27      174.    Unless Defendants are restrained by order of this Court, it will be necessary for Plaintiffs
28  to commence many successive actions against Defendants to secure compensation for damages sustained,

1  thus requiring a multiplicity of suits, while Plaintiffs continue to be threatened daily by the above-

2  referenced conditions.

3      175.    Unless Defendants are enjoined from continuing their course of conduct, Plaintiffs will

4  suffer irreparable injury in that Plaintiffs will continue to be deprived of comfortable enjoyment of their

5  leasehold and Property, and their health and safety will be irreparably harmed.

6      176.    Plaintiffs have no plain, speedy, or adequate remedy at law, and injunctive relief is

7  expressly authorized by sections 526 and 731 of the California Code of Civil Procedure.

8      177.    Defendants' tortious breach of the duty of care has been willful, malicious, and oppressive,

9  amounting to despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious

10  disregard of their rights, so as to entitle Plaintiffs to an award of punitive and exemplary damages.

11  Plaintiffs are entitled to punitive and exemplary damages against Defendants in an amount sufficient to

12  punish them and deter them and others from engaging in similar conduct. Plaintiffs are also entitled to

13  recover their reasonable attorneys' fees incurred in bringing and litigating this matter and costs of the suit.

14      178.    Plaintiffs are also entitled to recover their reasonable attorneys' fees incurred in bringing

15  and litigating this matter and costs of the suit.

16                      **SIXTH CAUSE OF ACTION**

17                  **(Intentional Infliction of Emotional Distress)**

18  **(Plaintiffs Osvaldo Benitez, Michelle Salmeron, Bryan Salmeron, Sebastian Salmeron, Vanessa**

19      **Salmeron, Luis Fernando Garcia, Xavier Garcia, Jenipher Perez, Danna Elias, Alisson Elias,**

20      **Damian Elias, Aden Sanchez, Aliyah Sanchez, Alejandra Desiderio, Mia Desiderio, Fernanda**

21      **Desiderio, David Desiderio, Daniel Salgado, Itzel Salgado, and Devin Hernandez Against**

22      **Defendants Reynaldo Tobias; Isolina Tobias; Charles B. Roselli; and Mashcole Property**

23                          **Management, Inc.;**

24      **All Plaintiffs Against Defendants 6317 Flora Ave, LLC; Positive Investments, Inc.; Cinthia**

25                  **Valencia; Baks Investments; and Michael Bakhshi)**

26      179.    Plaintiffs re-allege and incorporate by reference every allegation of the Complaint as if

27  fully set forth in this paragraph.

28      180.    During their residence in the Property, each Plaintiff was in a landlord-tenant relationship

                          31

with Defendants, paying rent and occupying the premises, pursuant to a valid lease agreement.

181.     The conduct of Defendants and/or their agents and employees was outrageous in the extreme. As landlords and managers of the Property, Defendants and/or their agents and employees were in a position of authority. They abused their authority by, among other things: knowingly failing and refusing to abate a dangerous and unhealthy nuisance; maintaining the Property in an unsafe and unhealthy condition; threatening to evict some Plaintiffs for arbitrary matters; and ignoring government orders to comply with building, health, and safety codes, ordinances, and other applicable laws, all the while knowing that the conditions in the Property were causing sickness, injury, and emotional distress to Plaintiffs. Defendants and their agents abused their position as purveyors of low-income housing in an atrocious manner by refusing to make the Property safe and habitable, all the while demanding and collecting full rent

182.     Defendants knew that Plaintiffs were particularly vulnerable because they are low-income tenants with limited resources for whom locating comparably-priced rental housing is nearly impossible in Los Angeles. Defendants knew that Plaintiffs' circumstances would cause them to continue their tenancies at the Property despite its uninhabitable state and were at significant risk of falling into homelessness if forced to move. Moreover, Defendants also knew that most adult Plaintiffs are monolingual Spanish speakers who would have difficulty accessing city and county resources to make the Property's conditions known to the proper authorities.

183.     Defendants were aware that many children lived at the Property and that those children would have to grow up exposed to bed bugs, cockroaches, mold, and rodents. They knew the children would play on floors littered with cockroach eggs and carcasses, and whose sleep would be hampered by cockroaches and bedbugs crawling on them at night. With their in-depth and intimate knowledge of the Property's state, Defendants' refusal to abate the Property's nuisance conditions and bring it into a habitable state was indecent, outrageous, and offensive to common decency.

184.     While acting in this outrageous manner, Defendants knew, or reasonably should have known, that their conduct would result in Plaintiffs suffering severe and extreme emotional distress. Defendants knew that Plaintiffs were particularly susceptible to injury through mental distress by virtue of the necessity of the commodity that Defendants purveyed: a home for Plaintiffs. Defendants knew that

a habitable home is paramount to Plaintiffs' well-being and emotional health. In allowing the Property to continue in an uninhabitable state, and preventing the Property from offering respite and safety to Plaintiffs, Defendants acted with reckless disregard of the probability of causing severe emotional distress.

185.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered and/or continue to suffer illness, physical injury, mental stress, severe emotional distress, feelings of anxiety, sadness, anger, fearfulness, worry, disgust, helplessness, frustration, and shame, in an amount to be determined according to proof, but which amount is within the jurisdictional requirements of this Court.

186.    By the aforesaid acts and omissions of Defendants and their agents, Plaintiffs have been directly and legally caused to suffer damages as alleged herein. Defendants are liable to compensate Plaintiffs for these damages.

187.    Further, in failing to correct the defects within a reasonable time, or at all, despite Plaintiffs' numerous requests that they do so as alleged in this Complaint, Defendants' conduct was malicious and oppressive. Defendants acted in willful and conscious disregard of Plaintiffs' rights and subjected Plaintiffs to cruel and unjust hardship. Plaintiffs are therefore entitled to recover punitive and exemplary damages against Defendants.

## SEVENTH CAUSE OF ACTION

### (Violation of Civil Code Section 1942.4)

**(Plaintiffs Osvaldo Benitez, Michelle Salmeron, Bryan Salmeron, Sebastian Salmeron, Vanessa Salmeron, Luis Fernando Garcia, Xavier Garcia, Jenipher Perez, Danna Elias, Alisson Elias, Damian Elias, Aden Sanchez, Aliyah Sanchez, Alejandra Desiderio, Mia Desiderio, Fernanda Desiderio, David Desiderio, Daniel Salgado, Itzel Salgado, and Devin Hernandez Against Defendants Reynaldo Tobias and Isolina Tobias;**

**All Plaintiffs Against Defendants 6317 Flora Ave, LLC; Positive Investments, Inc.; Charles B. Roselli; Mashcole Property Management, Inc.; Cinthia Valencia; Baks Investments; and Michael Bakhshi)**

188.    Plaintiffs re-allege and incorporate by reference every allegation of the Complaint as if fully set forth in this paragraph.

189.    During their residence in the Property, each Plaintiff was in a landlord-tenant relationship

33

with Defendants, paying rent and occupying the premises, pursuant to a valid lease agreement.

190.    Civil Code section 1942.4 prohibits a landlord from demanding and collecting rent if: (1) the dwelling substantially lacks any of the standard characteristics necessary for habitation in a dwelling delineated in Civil Code section 1941.1 or violates Health and Safety Code section 17920.3; (2) a public officer or employee responsible for the enforcement of any housing law has notified the landlord or its agent in writing of the obligation to repair the substandard conditions; (3) the conditions have not been abated 35 days after the date of the service of the notice from the public employee; and (4) the conditions were not caused by an act or omission of the tenant.

191.    The Property substantially lacks, and at all times relevant to this action substantially lacked, the following standard characteristics, without limitation, necessary for habitation in a dwelling as delineated in Civil Code section 1941.1: effective waterproofing and weather protection of roof and exterior walls; plumbing and electrical equipment maintained in good working order; building kept in every part clean, sanitary, and free from all accumulations of debris, filth, rubbish, rodents and vermin; and walls and floors maintained in good repair..

192.    Similarly, the Property substantially lacks, and at all times relevant to this action substantially lacked, the standard characteristics necessary for habitation in a dwelling as delineated in Health and Safety Code section 17920.3. The Property has, or has had for significant periods of time, inadequate sanitation; inadequate heating; inadequate plumbing facilities; lack of hot running water; inadequate ventilation; dampness; infestations of insects, vermin, or rodents; walls and ceilings with deteriorated, crumbling, or loose plaster; and other characteristics.

193.    Public employees responsible for enforcing housing and health laws in the City of Bell and the Los Angeles County inspected the Property on multiple occasions. They notified Defendants in writing of their duty to correct the substandard conditions at the Property.

194.    The substandard conditions existed and were not abated 35 days beyond the date of service of the notices of citations. Defendants did not have good cause for their delay in correcting the cited violations.

195.    The substandard conditions stated in the citations were not caused by any act or omission of Plaintiffs. Defendants, therefore, are in violation of Civil Code section 1942.4.

196.     As a direct and proximate result of Defendants' conduct and the conditions outlined above, each Plaintiff has suffered and/or continues to suffer physical injury, illness, mental stress, emotional distress, shame, feelings of anxiety, sadness, helplessness, frustration, discomfort, annoyance, fear, loss in the value of his or her leasehold, property damage, and other economic damage in an amount to be determined according to proof, but which amount is within the jurisdictional requirements of this Court.

197.     Additionally, Plaintiffs have been damaged by Defendants' conduct in an amount at least equal to rents due and paid by Plaintiffs during the life of each Plaintiff's tenancy, or in an amount to be proven at trial.

198.     Plaintiffs are entitled to actual damages sustained and to special statutory damages of not less than $100.00 each, and not more than $5,000.00 each, as determined at trial.

199.     Plaintiffs are also entitled to costs and attorneys' fees in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

**(Constructive Eviction and Willful Interruption of Services)**

**(Plaintiffs Osvaldo Benitez, Michelle Salmeron, Bryan Salmeron, Sebastian Salmeron, Vanessa Salmeron, Luis Fernando Garcia, Xavier Garcia, Jenipher Perez, Danna Elias, Alisson Elias, Damian Elias, Aden Sanchez, Aliyah Sanchez, Alejandra Desiderio, Mia Desiderio, Fernanda Desiderio, David Desiderio, Daniel Salgado, Itzel Salgado, and Devin Hernandez Against Defendants Reynaldo Tobias and Isolina Tobias;**

**All Plaintiffs Against Defendants 6317 Flora Ave, LLC; Positive Investments, Inc.; Charles B. Roselli; Mashcole Property Management, Inc.; Cinthia Valencia; Baks Investments; and Michael Bakhshi)**

200.     Plaintiffs re-allege and incorporate by reference every allegation of the Complaint as if fully set forth in this paragraph.

201.     Defendants were and are the owners and landlords of the Property and/or the agents of the owners and landlords of the Property acting with authority to manage and control the Property. Plaintiffs were and are in landlord-tenant relationships with Defendants pursuant to valid rental agreements.

202.     California Civil Code section 789.3 prohibits a landlord from willfully causing, directly or

35

1  indirectly, the interruption or termination of any utility service furnished a tenant, including but not limited

2  to water, heat, light, electricity, gas, telephone, elevator, or refrigeration, whether or not the utility service

3  is under the control of the landlord, with the intent to terminate the occupancy.

4       203.   Defendants have, at all times relevant to this action, willfully caused the interruption of

5  utility services furnished to Plaintiffs, including, but not limited to, heat, water, and trash utility services.

6       204.   As a direct and proximate result of these Defendants' conduct and the conditions outlined

7  above, each Plaintiff has suffered and/or continues to suffer illness, physical injury, mental stress,

8  emotional distress, loss in the value of the leasehold, property damage, and other economic damage in an

9  amount to be determined according to proof, but whose amount is within this Court's jurisdictional

10  requirement.

11       205.   Each Plaintiff is entitled to actual damages sustained and to special damages of not less

12  than $250.00 per violation and not more than $100.00 for each day of each violation.

13       206.   Each Plaintiff is also entitled to reasonable attorney's fees and costs.

14       207.   Plaintiffs are also entitled to injunctive relief to prevent continuing or further interruptions

15  of the basic utility services identified in Civil Code section 789.3.

16  **NINTH CAUSE OF ACTION**

17  **(Retaliation – Violation of California Civil Code Section 1942.5)**

18  **(Plaintiffs Osvaldo Benitez, Michelle Salmeron, Bryan Salmeron, Sebastian Salmeron, Vanessa**

19  **Salmeron, Luis Fernando Garcia, Xavier Garcia, Jenipher Perez, Danna Elias, Alisson Elias,**

20  **Damian Elias, Aden Sanchez, Aliyah Sanchez, Alejandra Desiderio, Mia Desiderio, Fernanda**

21  **Desiderio, David Desiderio, Daniel Salgado, Itzel Salgado, and Devin Hernandez Against**

22  **Defendants Reynaldo Tobias and Isolina Tobias;**

23  **All Plaintiffs Against Defendants 6317 Flora Ave, LLC; Positive Investments, Inc.; Charles B.**

24  **Roselli; Mashcole Property Management, Inc.; Cinthia Valencia; Baks Investments; and Michael**

25  **Bakhshi)**

26       208.   Plaintiffs re-allege and incorporate by reference every allegation of the Complaint as if

27  fully set forth in this paragraph.

28       209.   Defendants were the owners and landlords of the Property acting with authority to manage

and control the Property and/or the agents of the owners and landlords of the Property acting with authority to manage and control the Property. Plaintiffs were and are in landlord-tenant relationships with Defendant owners pursuant to valid rental agreements. Plaintiffs have held leasehold interests and have been tenants at the Property at all relevant times while Defendants have owned and managed it.

210.    Plaintiffs are informed and believe that Defendants, and each of them, violated Civil Code section 1942.5(a) by retaliating within 180 days of various events, including but not limited to, Plaintiffs' complaints to DPH and City of Bell, and Plaintiffs' multiple requests for repairs and return of lost or diminished services made by Plaintiffs to Defendants.

211.    Defendants retaliated against Plaintiffs by eliminating or reducing services at the Property, refusing to remedy conditions that rendered Plaintiffs' units uninhabitable, and attempting to constructively evict Plaintiffs.

212.    As a direct and proximate result of Defendants' retaliatory conduct, each Plaintiff has suffered and/or continues to suffer illness, mental stress, emotional distress, shame, feelings of anxiety, sadness, helplessness, frustration, discomfort, annoyance, fear, and property damage, in an amount to be determined according to proof at trial.

213.    Each Plaintiff is entitled to actual damages, punitive damages in an amount of not less than $100, but no more than $2,000 for each retaliatory act where Defendants been guilty of fraud, oppression, or malice with respect to that act, and reasonable attorney's fees.

## TENTH CAUSE OF ACTION

### (Harassment)

**(Plaintiffs Osvaldo Benitez, Michelle Salmeron, Bryan Salmeron, Sebastian Salmeron, Vanessa Salmeron, Luis Fernando Garcia, Xavier Garcia, Jenipher Perez, Danna Elias, Alisson Elias, Damian Elias, Aden Sanchez, Aliyah Sanchez, Alejandra Desiderio, Mia Desiderio, Fernanda Desiderio, David Desiderio, Daniel Salgado, Itzel Salgado, and Devin Hernandez Against Defendants Reynaldo Tobias and Isolina Tobias;**

**All Plaintiffs Against Defendants 6317 Flora Ave, LLC; Positive Investments, Inc.; Charles B. Roselli; Mashcole Property Management, Inc.; Cinthia Valencia; Baks Investments; and Michael Bakhshi)**

37

214.    Plaintiffs re-allege and incorporate by reference every allegation of the Complaint as if fully set forth in this paragraph.

215.    California Civil Code section 1940.2(a)(3) prohibits landlords from using or threatening to use force, making willful threats, or engaging in menacing conduct that interferes with the tenant's quiet enjoyment of the premises and that would create an apprehension of harm in a reasonable person, for the purpose of influencing a tenant to vacate a dwelling.

216.    Defendants used, or threatened to use, force, willful threats, or menacing conduct that interfered with Plaintiffs' quiet enjoyment of the premises. Defendants and/or their agents forced Plaintiffs to agree to transferring their rights to a parking space with threats of eviction and a visit by a man named "Miguel."

217.    After realizing that their unsolicited "cash for keys" offers failed, Defendants misrepresented to the City of Bell that there will no longer be any tenants at the Property, which caused the authorities to remove trash bins from the Property. By so abusing the government entity's authority, Defendants caused fear of impending eviction among Plaintiffs.

218.    Defendants' actions would create an apprehension of harm in a reasonable person.

219.    As a result of Defendants' conduct, each Plaintiff has suffered and/or continues to suffer substantial damages, including illness, physical injury, mental stress, emotional distress, loss in the value of their leasehold, and property damage in an amount to be determined according to proof at trial.

220.    By the aforesaid acts and omissions of Defendants, and each of them, Plaintiffs have been directly and legally caused to suffer damages as alleged herein. Defendants, and each of them, are liable to compensate Plaintiffs for these damages.

221.    Defendants' harassing and threatening acts were willful, malicious, and oppressive, amounting to despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of their rights. Plaintiffs are entitled to punitive and exemplary damages against Defendants, and each of them, in an amount sufficient to punish them and deter them and others from engaging in similar conduct, as to be determined at trial.

## ELEVENTH CAUSE OF ACTION

### (Violation of Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq*)

**(Plaintiffs Osvaldo Benitez, Michelle Salmeron, Bryan Salmeron, Sebastian Salmeron, Vanessa Salmeron, Luis Fernando Garcia, Xavier Garcia, Jenipher Perez, Danna Elias, Alisson Elias, Damian Elias, Aden Sanchez, Aliyah Sanchez, Alejandra Desiderio, Mia Desiderio, Fernanda Desiderio, David Desiderio, Daniel Salgado, Itzel Salgado, and Devin Hernandez Against Defendants Reynaldo Tobias and Isolina Tobias;**

**All Plaintiffs Against Defendants 6317 Flora Ave, LLC; Positive Investments, Inc.; Charles B. Roselli; Mashcole Property Management, Inc.; Cinthia Valencia; Baks Investments; and Michael Bakhshi)**

222.    Plaintiffs re-allege and incorporate by reference every allegation of the Complaint as if fully set forth in this paragraph.

223.    The uninhabitable conditions at the Property arise from Defendants' failure to maintain and repair the Property as required by numerous state and municipal health, safety, and housing codes. Hence, Defendants' conduct has violated the health, safety, and housing codes as set forth herein.

224.    By committing the acts alleged herein, Defendants have engaged in unfair and unlawful conduct prohibited under Business and Professions Code section 17200 *et seq.*

225.    Each Plaintiff has suffered and/or continues to suffer irreparable harm due to Defendants' continuing violations of the aforementioned statutes. Each Plaintiff has been injured in fact and has suffered a loss of money and/or property as a result of Defendants' conduct, including, but not limited to: a decrease in the value of their leaseholds; overpayment of rent due to diminished value of the leaseholds; expenditures of money to purchase insecticides, poisons, and traps to combat vermin infestations; and other damages in an amount to be determined at trial, but which amount is within the jurisdictional requirements of this Court.

226.    Unless Defendants are restrained from doing so, Defendants will continue to engage in said unlawful and unfair business practices.

227.    Continuing commissions and omissions by Defendants of the acts and omissions alleged will irreparably harm Plaintiffs, for which harm they have no plain, speedy, or adequate remedy at law.

228.    An action for injunctive relief and restitution against all Defendants is specifically authorized by Business and Professions Code section 17203.Defendants' unfair and illegal profit from

charging rent from Plaintiffs; decreasing the value of Plaintiffs' leasehold interest in the Property; and saving resources from being spent on pest prevention by forcing Plaintiffs to purchase insecticides, poisons, and traps, among other examples, violate Business and Professions Code section 17200 *et seq.*, and affect the public interest. Defendants' conduct in letting the Property fall into disrepair while continuing to profit off Plaintiffs has created blight in the community. Pursuant to California Code of Civil Procedure section 1021.5, Plaintiffs are thereby entitled to reasonable attorneys' fees, in an amount to be determined after trial.

229.    As a direct and proximate result of the aforementioned acts and omissions, Defendants have been unjustly enriched at the expense of Plaintiffs, and Plaintiffs are entitled to restitution and the disgorgement of all earnings, profits, compensations, benefits, and other ill-gotten gains obtained by Defendants as a result of their conduct in violation of Business and Professions Code section 17200 *et seq.*, in an amount to be proven at trial.

## TWELFTH CAUSE OF ACTION

### (Violation of Los Angeles County Code § 8.52.130 *et seq.* – Anti-Harassment)

### (All Plaintiffs Except Plaintiffs Miguel Angel Garcia, Lizette Garcia, and Vince Garcia Against Defendants Baks Investments and Michael Bakhshi)

230.    Plaintiffs re-allege and incorporate by reference every allegation of the Complaint as if fully set forth in this paragraph.

231.    Defendants Baks Investments and Bakhshi are the owners and landlords of the Property acting with authority to manage and control the Property and/or the agents of the owners and landlords of the Property acting with authority to manage and control the Property. Plaintiffs were and are in landlord-tenant relationships with Defendants Baks Investments and Bakhshi pursuant to valid rental agreements. Plaintiffs have held leasehold interests and have been tenants at the Property at all relevant times while Defendants Baks Investments and Bakhshi have owned and managed it.

232.    Defendants Baks Investments and Bakhshi are a "landlord" as that term is defined in section 8.52.030 of the Los Angeles County Code ("LACC"), as each of them are, as alleged in this Complaint, an owner, lessor and/or person entitled to offer a dwelling unit for rent and/or receive rent for the use and occupancy of a dwelling unit, and/or are the agent or representative of an owner, lessor, and/or

1  person entitled to offer units for rent at the Property and/or receive rent for the possession and use of

2  dwelling units at the Property.

3    233.    The anti-harassment provisions of LACC § 8.52.130 prohibit a landlord and a landlord's

4  agent/representative from numerous acts of harassment, including but not limited to: interfering with a

5  tenant's right to quiet use and enjoyment of a dwelling unit as that right is defined by law, failing to

6  perform repairs or maintenance, failing to exercise due diligence in completing repairs or maintenance,

7  and committing repeated acts or omissions of such significance as to substantially interfere with or disturb

8  the comfort, repose, peace, or quiet of a lawful tenant in a dwelling unit, among other prohibitions.

9    234.    Defendants Baks Investments and Bakhshi and their agents have harassed Plaintiffs by,

10  among other such acts, failing to perform necessary repairs and undertake maintenance at the Property;

11  initiating excessive unsolicited contacts with Plaintiffs and threatening them; and intimidating Plaintiffs

12  with threats of eviction.

13    235.    As a result of Defendants Baks Investments and Bakhshi's conduct, each Plaintiff has

14  suffered and/or continues to suffer illness, physical injury, mental stress, emotional distress, loss in the

15  value of his/her leasehold, overpayment of rent due to diminished value of his/her leasehold, and property

16  damage, in an amount to be determined according to proof at trial.

17    236.    As a direct and proximate result of Defendants Baks Investments and Bakhshi's conduct,

18  Plaintiffs are entitled to injunctive relief, actual damages, and a civil penalty of no less than $2,000 and

19  no more than $5,000 per violation. Reasonable attorney's fees and costs may also be awarded at the

20  discretion of the Court.

21    **PRAYER FOR RELIEF**

22    WHEREFORE, Plaintiffs pray for the following relief:

23    **On the First Cause of Action for Negligence**

24    1.    For general and special damages in an amount to be determined at trial, according to proof;

25    2.    Special damages for physical injuries, emotional distress, and property damage and loss

26  attributable to Defendants' negligence, including rental payments due and paid during each Plaintiff's

27  leasehold, or in an amount to be proven at trial; and

28    3.    For punitive damages in an amount to be proven at trial.

41

**On Second Cause of Action for Breach of Implied Warranty of Habitability**

1.    For general and special damages in an amount to be determined at trial, according to proof; and

2.    Special damages in an amount equal to rental payments due and paid during each Plaintiff's leasehold, or in an amount to be proven at trial.

**On the Third Cause of Action for Breach of Implied Covenant of Quiet Enjoyment**

1.    For general and special damages in an amount to be determined at trial, according to proof;

2.    Temporary, preliminary, and permanent injunctive relief restraining and enjoining Defendants, their managers, agents, officers, employees, and all other persons acting on their behalf and at their direction, from violating any and all applicable codes, ordinances, regulations, and laws;

3.    An order requiring Defendants to correct all existing violations and uninhabitable conditions within 60 days;

4.    An order enjoining the transfer the ownership of the Property, unless the owner or possessor takes the Property subject to any and all orders the Court may make with regard to the Property;

5.    Statutory damages of $2,000.00 for each violation pursuant to Civil Code section 1940.2(b);

6.    For punitive damages in an amount to be proven at trial; and

7.    Reasonable attorneys' fees and costs, pursuant to Civil Code section 3304.

**On the Fourth Cause of Action for Nuisance**

1.    For general and special damages in an amount to be determined at trial, according to proof

2.    Special damages for physical injuries, emotional distress, and property damage and loss, including rental payments due and paid during each Plaintiff's leasehold, or in an amount to be proven at trial;

3.    Temporary, preliminary, and permanent injunctive relief, requiring Defendants to abate any and all nuisances at the Property, as defined in Civil Code section 1941.1, which significantly or materially affect the health or safety of the occupants of the Property and which are uncorrected; and

4.    For punitive damages in an amount to be proven at trial.

**On the Fifth Cause of Action for Premises Liability**

42

1.    For general and special damages in an amount to be determined at trial, according to proof;

2.    Special damages for physical injuries, emotional distress, and property damage and loss, including for rental payments due and paid during each Plaintiff's leasehold, or in an amount to be proven at trial; and

3.    For punitive damages in an amount to be proven at trial.

**On the Sixth Cause of Action for Intentional Infliction of Emotional Distress**

1.    For general and special damages in an amount to be determined at trial, according to proof; and

2.    For punitive damages in an amount to be proven at trial.

**On the Seventh Cause of Action for Violation of Civil Code section 1942.4**

1.    For actual damages according to Civil Code section 1942.4(b)(1);

2.    Retroactive rent abatement in an amount equal to rents due and paid by each Plaintiff during the life of each Plaintiff's tenancy, according to proof;

3.    Special damages, according to Civil Code section 1942.4(b)(1), in an amount of at least $100, but no more than $5,000 per Plaintiff; and

4.    Reasonable attorneys' fees and costs, pursuant to Civil Code section 1942.4(b)(2).

**On the Eighth Cause of Action for Constructive Eviction and Willful Interruption of Services**

1.    For actual damages, according to Civil Code section 789.3(c)(1), in an amount to be determined at trial;

2.    Special damages in an amount to be determined at trial, but not less than $250 for each violation, pursuant to Civil Code section 789.3(c)(2);

3.    Reasonable attorneys' fees and costs, pursuant to Civil Code section 789(c)(3); and

4.    For punitive damages in an amount to be proven at trial.

**On the Ninth Cause of Action for Retaliation**

1.    For general and special damages in an amount to be determined at trial, according to proof;

2.    Punitive damages in an amount of not less than $100 nor more than $2,000 for each retaliatory act where the lessor or agent has been guilty of fraud, oppression, or malice with respect to that act per Civil Code 1942.5(h).; and

3.      Reasonable attorneys' fees and costs, pursuant to Civil Code section 1942.5(h).

**On the Tenth Cause of Action for Harassment**

1.      For general and special damages in an amount to be determined at trial, according to proof;

2.      Civil penalty of not more than $2,000 for each violation pursuant to Civil Code section 1940.2; and

3.      For punitive damages in an amount to be proven at trial.

**On the Eleventh Cause of Action for Violation of the Unfair Competition Law**

1.      In accordance with Business and Professions Code section 17203, for restitution and the disgorgement of all earnings, profits, compensation, benefits, and other ill-gotten gains obtained by Defendants in an amount to be determined at trial, according to proof; and

2.      Temporary, preliminary, and permanent injunctive relief, requiring Defendants be enjoined from continuing their course of conduct and correct all existing code violations and uninhabitable conditions, pursuant to Business and Profession Code section 17203; and

3.      Reasonable attorneys' fees, pursuant to California Code of Civil Procedure section 1021.5, in an amount to be determined after trial.

**On the Twelfth Cause of Action for Violation of LACC § 8.52.130 *et seq.***

1.      For general and special damages, including rental payments due and paid during each Plaintiff's leasehold, in an amount to be determined at trial according to proof;

2.      Temporary, preliminary, and permanent injunctive relief restraining and enjoining Defendants, their managers, agents, officers, employees, and all other such persons acting on their behalf and at their direction, from violating any and all applicable codes, ordinances, regulations, and laws;

3.      Civil penalty of no less than $2,000 and no more than $5,000 for each violation, pursuant to LACC § 8.52.130.C.; and

4.      Reasonable attorneys' fees and costs, at the discretion of the Court.

**On All Causes of Action**

1.      For pre-judgment and post-judgment interest, pursuant to Civil Code sections 3288, 3289 and 3291; and

2.      For reasonable attorney's fees, where allowed by law; and

44

3.  For costs of suit; and

4.  For such other relief as the Court may deem proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs demand a jury trial on all causes of action triable by jury.

DATED: November 15, 2023

Respectfully submitted,
INNER CITY LAW CENTER

By: _____

David Campbell Smith
Deborah B. Hoetger
Attorneys for Plaintiffs

FOURTH AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

DAVID CAMPBELL SMITH (SBN 130618)
dsmith@innercitylaw.org
TAE HWAN LEE (SBN 339056)
tlee@innercitylaw.org
**INNER CITY LAW CENTER**
1309 E. Seventh Street
Los Angeles, CA 90021
Telephone: (213) 891-2880
Facsimile: (213) 891-2888

KENNETH R. CHIATE (SBN 39554)
kenchiate@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 S. Figueroa Street, Floor 10
Los Angeles, CA 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

NOAH L. GRYNBERG (SBN 296080)
noah.grynberg@gmail.com
**LAW OFFICE OF NOAH GRYNBERG**
11301 W. Olympic Boulevard, Suite 121-555
Los Angeles, CA 90064
Telephone: (310) 866-7527

Attorneys for Plaintiffs

**SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF LOS ANGELES**

| | |
|---|---|
| JUAN CASILLAS ROMERO, *et al.*, | CASE NO.: 22STCV00186 |
| Plaintiffs, | **PROOF OF SERVICE** |
| v. | Judge: Hon. Daniel S. Murphey |
| 6317 FLORA AVE, LLC, a California Limited Liability Company, *et al.*, | Dept.: 32 |
| Defendants. | |

PROOF OF SERVICE

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

I, the undersigned, hereby declare as follows:

4

5

I am a resident of the State of California, County of Los Angeles, am over the age of eighteen (18) years, and am not a party to the within action. I am employed by Inner City Law Center and my business address is 1309 E. Seventh Street, Los Angeles, California 90021.

6

On 11/30/2023, I served the following documents described:

7

**FOURTH AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

8

9

on the interested parties in this action as follows:

10

11

[ **X** ] **BY ELECTRONIC MAIL:**  On this date, I personally transmitted the foregoing document(s) via my electronic service address (tlee@innercitylaw.org) to the e-mail address(es) of the person(s) on the attached service list pursuant to CRC Emergency Rule 12 Procedures.

12

13

**SEE ATTACHED SERVICE LIST**

14

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. This declaration was executed on the date of 11/30/2023, at Los Angeles, California.

15

16

17

_____

18

Tae Hwan Lee, Declarant

19

20

21

22

23

24

25

26

27

28

# SERVICE LIST

### *Juan Casillas Romero, et al. v. 6317 Flora Ave, LLC, et al.*
### Los Angeles Superior Court Case No. 22STCV00186

| | |
|---|---|
| Lane Webb, Esq.<br>Shanna Van Wagner, Esq.<br>**LYNBERG & WATKINS**<br>1150 S. Olive St., Fl. 18<br>Los Angeles, CA  90015-3989<br>Telephone: (213)624-8700<br>Facsimile: (213)892-2763 | *Attorney for Defendant:*<br><br>***6317 Flora Ave., LLC***<br>***Positive Investments, Inc.***<br>***Cinthia Valencia***<br><br><br>lwebb@lynberg.com<br>svanwagner@lynberg.com<br>mmazzarella@lynberg.com<br>cbarguiarena@lynberg.com<br>jsteiger@lynberg.com<br>astarr@lynberg.com<br>vjackson@lynberg.com |
| Eric R. Hagle<br>Patrick McCormick<br>**LEWIS BRISBOIS**<br>650 Town Center Drive, Suite 1400<br>Costa Mesa, CA  92626 | *Attorney for Defendant:*<br><br>***Reynaldo Tobias,*** *Trustee of the 2002 Tobias Family Trust dated July 25, 2002*<br>***Isolina Tobias,*** *Trustee of the 2002 Tobias Family Trust dated July 25, 2002*<br><br>Eric.Hagle@lewisbrisbois.com<br>Patrick.McCormick@lewisbrisbois.com<br>rosie.martinez@lewisbrisbois.com<br>jane.donovan@lewisbrisbois.com |
| Douglas L. Day<br><br>**LAW OFFICES OF SCOTT C STRATMAN**<br>P.O.Box 258829<br>Oklahoma City, OK 73125-8829<br><br>Business address:<br>31 N. 2nd St. #200,<br>San Jose, CA 95113<br><br>Telephone: (310)795-0403 | *Attorney for Defendants:*<br><br>***Mashcole Property Management, Inc.***<br>***Charles Roselli***<br><br>la.legal@farmersinsurance.com<br>douglas.day@farmersinsurance.com<br>samantha.allennewman@farmersinsurance.com |

# EXHIBIT 2

IL 09 99 PHN (01 20)

**THIS POLICYHOLDER NOTICE IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS POLICYHOLDER NOTICE DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUMFOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT)

## POLICYHOLDER NOTICE

The premium has been calculated for the entire annual policy period.  If the federal Program terminates, we will recalculate the premium and charge additional premium. If the federal Program is extended with changes in the backstop, we will recalculate the premium and charge additional premium or refund excess premium, if applicable.  The additional or return premium may be waived if such amount falls within the waiver of additional or return premium, if any, on file for the insurer in this state.

This Policyholder Notice (and corresponding form IL 09 99) are not applicable in FL or NY.

IL 09 99 PHN (01 20)



February 21, 2020

Verifiable Holdings DBA Unified Risk & Insurance Brokers, LLC
901 Via Piemonte; Suite 205
Ontario, CA  91764-

Insured:  6317 Flora Ave, LLC
Policy #: QJT-SN005296-00
Policy Term: 2/21/2020-2/21/2021

Dear Aaron,

We are pleased to provide you with the policy(s) for the above mentioned insured.  We have reviewed the policy(s) and all appears to be in accordance with your binding order.  We strongly suggest that you review the policy(s) for accuracy.

 Please be sure to make our office aware of any necessary changes or corrections needed and if deemed appropriate, requested changes will be handled by endorsement.

We would like to take this opportunity to thank you for allowing us to be your market of choice.  Please do not hesitate to contact our office if you have any questions or if we can be of further assistance to you.

We appreciate the opportunity to serve you and your clients.

Best regards,

Laura Mazzarone

44 Headquarters Plaza, 4th Floor, North Tower
Morristown, NJ  07960
P: 973.435.9556  F: 973.890.1188
www.core-programs.com

**HOW TO REPORT A CLAIM:**

All claims for the Core Commercial Real Estate Program with coverage provided by State National Insurance Company and United Specialty Insurance Company should be reported to North American Risk Services (NARS) as soon after the loss as possible while information is fresh.  Claims may be reported by any of the following options 24 hours a day, 7 days a week to the attention of the New Loss Unit.

- Telephone:          (800) 315-6090
- Facsimile:          (866) 261-8507
- Internet:           http://narisk.com/partnerEtools.php
- Electronic Mail:    reportaclaim@narisk.com
- Regular Mail:       North American Risk Services
                      P. O. Box 166002
                      Altamonte Springs, FL 32716-6002

In order to ensure proper assistance, it is important to include the policy number as well as name of the insured and to provide as much information about the loss details and involved parties as possible.  An adjuster will be assigned and after the reviewing the information provided will make personal contact so remember to include contact information such as your name, home and email addresses and alternate telephone numbers. A claim acknowledgement will be transmitted identifying the claim number and assigned claims examiner.

POLICY NUMBER:  QJT-SN005296-00

IL DS 00 0908

# COMMON POLICY DECLARATIONS

| State National Insurance Co., Inc.<br>P.O Box 24622<br>Fort Worth, TX 76124 | Verifiable Holdings DBA Unified Risk & Insurance<br>901 Via Piemonte<br>Suite 205<br>Ontario, CA 91764 |
|---|---|

NAMED INSURED: 6317 Flora Ave, LLC

MAILING ADDRESS: 610 N Santa Anita Avenue

Arcadia, CA 91006

POLICY PERIOD:  FROM  02/21/2020        TO  02/21/2021        AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

BUSINESS DESCRIPTION | Apartments/Buildings/Garden/Hotels/Time-Sharing without Mercantile-Over 30 units

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | PREMIUM |
|---|---|
| CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART | $ |
| COMMERCIAL AUTOMOBILE COVERAGE PART | $ |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ 4,378.00 |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ |
| COMMERCIAL LIABILITY UMBRELLA | $ |
| COMMERCIAL PROPERTY COVERAGE PART | $ 8,463.00 |
| CRIME AND FIDELITY COVERAGE PART | $ |
| EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART | $ |
| EQUIPMENT BREAKDOWN COVERAGE PART | $ |
| FARM COVERAGE PART | $ |
| LIQUOR LIABILITY COVERAGE PART | $ |
| MEDICAL PROFESSIONAL LIABILITY COVERAGE PART | $ |
| POLLUTION LIABILITY COVERAGE PART | $ |
| TOTAL PREMIUM: | $ 12,841.00 |
| POLICY TOTAL: | $ 12,841.00 |

Premium shown is payable:  $        12,841.00  at inception.  $        12,841.00

© ISO Properties, Inc., 2007

**FORMS APPLICABLE TO ALL COVERAGE PARTS (SHOW NUMBERS):**

See Attached Form Schedule.

| Countersigned:   02/21/2020 | By: |
|---|---|
| (Date) | (Authorized Representative) |

**NOTE**

OFFICERS' FACSIMILE SIGNATURES MAY BE INSERTED HERE, ON THE POLICY COVER OR ELSE
WHERE AT THE COMPANY'S OPTION.

Secretary                                President

POLICY NUMBER:QJT-SN005296-00

IL 09 99 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM FOR CERTIFIED ACTS OF TERRORISM COVERAGE (PURSUANT TO TERRORISM RISK INSURANCE ACT)

**SCHEDULE**

| |
|---|
| **SCHEDULE – PART I** |
| **Terrorism Premium (Certified Acts)** |
| **(A) Premium through end of year 12/31/**  $ Refer to IL 09 99 PHN for calculation |
| **(B) Estimated Premium beyond the date specified above** $ Refer to IL 09 99 PHN for calculation <br> (Refer to Paragraph **D.** in this endorsement.) |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| $ 1075.0000 |
| "Applies to all coverages under this policy applicable to Terrorism" |
| **Additional information, if any, concerning the terrorism premium:** |
| **SCHEDULE – PART II** |
| **Federal share of terrorism losses** 80% **% Year:** 2020 <br> _ ____ <br> (Refer to Paragraph **B.** in this endorsement.) |
| **Federal share of terrorism losses** ____ **% Year: 20** ____ <br> (Refer to Paragraph **B.** in this endorsement.) |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

 © Insurance Services Office, Inc., 2015

## A. Disclosure Of Premium

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

## B. Disclosure Of Federal Participation In Payment Of Terrorism Losses

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

## C. Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

## D. Possibility Of Additional Or Return Premium

The premium for certified acts of terrorism coverage is calculated based in part on the federal participation in payment of terrorism losses as set forth in the Terrorism Risk Insurance Act. The federal program established by the Act is scheduled to terminate at the end of the year specified in Part **I** of the Schedule of this endorsement, unless extended by the federal government. If the federal program terminates or if the level or terms of federal participation change, the estimated premium shown in **(B)** in Part **I** of the Schedule may not be appropriate.

If this policy contains a Conditional Exclusion, continuation of coverage for certified acts of terrorism, or termination of such coverage, will be determined upon disposition of the federal program, subject to the terms and conditions of the Conditional Exclusion. If this policy does not contain a Conditional Exclusion, coverage for certified acts of terrorism will continue. In either case, when disposition of the federal program is determined, we will recalculate the premium shown in **(B)** in Part **I** of the Schedule and will charge additional premium or refund excess premium, if indicated.

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

# RACE, NATIONAL ORIGIN & GENDER FORM

**COMMUNITY SERVICE STATEMENT**
**State National Insurance Company**

\# _____ Policyholder Number (for New Business Only)

This information is requested by the State of California in order to monitor the insurer's compliance with the law. All new policyholders are requested to voluntarily provide the following information.

***No such information shall be used for purposes of underwriting or rating any policyholder.***

Policyholder's Name and Address (to be provided in order to refer back to the policy)
Note: use additional forms if needed.

_____

_____

_____

<u>Policy Type</u>

| | | | |
|---|---|---|---|
| Fire Personal | ____ | Fire Commercial | ____ |
| Homeowners | ____ | Commercial Multi-Peril | ____ |
| Private Passenger Auto-Liability | ____ | | |

- *If policyholder does not wish to provide the Department of Insurance with this information, please check here.* ____

Check the Race or National Origin as it applies to the policyholder(s). For the purpose of completing this form, the policyholder is defined as: an individual, spouse, domestic partner, or business partner(s) named on the policy.

| | POLICYHOLDER | | | CO-POLICYHOLDER | | |
|---|---|---|---|---|---|---|
| | Male | Female | Business | Male | Female | Business |
| African-American | ____ | ____ | ____ | ____ | ____ | ____ |
| American Indian or Alaskan Native | ____ | ____ | ____ | ____ | ____ | ____ |
| Asian/Pacific Islander | ____ | ____ | ____ | ____ | ____ | ____ |
| Latino | ____ | ____ | ____ | ____ | ____ | ____ |
| White | ____ | ____ | ____ | ____ | ____ | ____ |
| Other | ____ | ____ | ____ | ____ | ____ | ____ |

Edition: 2019

# SCHEDULE OF FORMS

Named Insured:    6317 Flora Ave, LLC

Policy Number:    QJT-SN005296-00

| Form Name | Form No. | Edition Date |
|---|---|---|
| Common Policy Declarations | IL DS 00 | 0908 |
| DISCLOSURE OF PREMIUM AND ESTIMATED PREMIUM 2020 | IL0999 | 0115 |
| Race, National Origin & Gender Form | 2019 Community Service Statement | 2019 |
| Core - Schedule of Forms | Form Sched | 0113 |
| Common Policy Conditions | IL 0017 | 1198 |
| Nuclear Energy Liability Exclusion | IL 0021 | 0908 |
| Exclusion of Certain Computer Related Losses | IL 0935 | 0702 |
| U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders | IL P001 | 0104 |
| Schedule of Mortgage Holder | PF-MORT | 01 97 |
| CA Changes – Cancellation & Nonrenewal | IL 0270 | 0912 |
| California Changes | IL 0104 | 0907 |
| California Changes – Actual Cash Value | IL 0102 | 0505 |
| Cap on Losses From Certified Acts of Terrorism | IL 09 52 | 0115 |
| Policy Holder Privacy Statement ( SNIC) | Policy Holder Privacy - SNIC | 1214 |
| Commercial Property Coverage Part Declarations | CP DS 00 | 1000 |
| Commercial Property Coverage Part Supplemental Declarations | CP DS 01 | 1000 |
| Location Schedule | CP  Location Sch | 1011 |
| Commercial Property Conditions | CP 0090 | 0788 |
| Building and Personal Property Coverage Form | CP 00 10 | 1012 |
| Business Income (And Extra Expense) Coverage Form | CP 0030 | 1012 |
| Loss Payable Provisions | CP 1218 | 1012 |
| Building Ordinance or Law Coverage | CP 0405 | 0402 |
| Property Broadening Form - Coverage Form A | CORPRP 008 | 1014 |
| Cause of Loss - Special Form | CP 10 30 | 1012 |
| Equipment Breakdown Coverage | CORPRP EB 001 | |
| Exclusion of Loss Due to Virus or Bacteria | CP0140 | 0706 |
| Commercial General Liability Declarations | CG DS 01 | 1001 |
| Commercial General Liability Coverage Form | CG0001 | 0413 |
| Hired Non Owned Auto Coverage | CORCGL004 | 1014 |
| Limitation of Coverage to Designated Premises | CG 2144 | 0798 |
| Conformity With Statute Endorsement | CORCGL 003 | 1014 |
| Fungi or Bacteria Exclusion | CG 2167 | 1204 |
| Total Pollution Exclusion – Heating and Hostile Fire Exception | CG 2165 | 1204 |
| Exclusion - Access or Disclosure of Confidential Information and Data Related Liability With Limited Bodily Injury Exception | CG2106 | 0514 |
| Absolute Asbestos Exclusion | CORCGL001 | 1014 |

Form Sched 0113

# SCHEDULE OF FORMS

Named Insured:    6317 Flora Ave, LLC

Policy Number:    QJT-SN005296-00

| Form Name | Form No. | Edition Date |
|---|---|---|
| Absolute Lead Exclusion | CORCGL 002 | 1014 |
| Additional Insured- Managers or Lessors of Premises | CG 20 11 | 0413 |
| Additional Insured- Mortgagee, Assignee or Receiver | CG 20 18 | 0413 |
| Cap on Losses From Certified Acts of Terrorism | CG 2170 | 0108 |
| Employment Related Practices Exclusion | CG 2147 | 1207 |
| California Changes | CG 3234 | 0105 |

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

 © ISO Properties, Inc., 2007 ☐

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

    © ISO Properties, Inc., 2007    **IL 00 21 09 08**    ☐

IL 09 35 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

   **1.** The failure, malfunction or inadequacy of:

   **a.** Any of the following, whether belonging to any insured or to others:

   **(1)** Computer hardware, including micro-processors;

   **(2)** Computer application software;

   **(3)** Computer operating systems and related software;

   **(4)** Computer networks;

   **(5)** Microprocessors (computer chips) not part of any computer system; or

   **(6)** Any other computerized or electronic equipment or components; or

   **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

   due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

   **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

   **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

   **2.** Under the Commercial Property Coverage Part:

   **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

   **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

   we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")
# ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

Policy Number
**QJT-SN005296-00**

## SCHEDULE OF MORTGAGE HOLDER(S)

## STATE NATIONAL INSURANCE CO., INC.

Named Insured: 6317 FLORA AVE, LLC

Effective Date: 02/21/2020
12:01 A. M., Standard Time

Agent Name:    Verifiable Holdings DBA Unified Risk & Insurance
Brokers, LLC

Loan Number:

| Loc. No. | Bldg. No. | Mortgage Holder Name and Address |
|---|---|---|
| 001 | 001 | FEDERAL HOME LOAN MORTGAGE CORPORATION ON BEHALF OF CITIBANK, N.A. FOR THE MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-SB48 C/O CBRE LOAN SERVICES, INC<br><br>929 GESSNER, SUITE 1700 HOUSTON, TX 77024 |

**PF-MORT**

IL 02 70 09 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

**a.** 10 days before the effective date of cancellation if we cancel for:

**(1)** Nonpayment of premium; or

**(2)** Discovery of fraud by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

**a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

**(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

**(2)** Discovery of fraud or material misrepresentation by:

**(a)** Any insured or his or her representative in obtaining this insurance; or

**(b)** You or your representative in pursuing a claim under this policy.

**(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

          © Insurance Services Office, Inc., 2012

**(4)** Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

**(5)** Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

**(6)** A determination by the Commissioner of Insurance that the:

**(a)** Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

**(b)** Continuation of the policy coverage would:

**(i)** Place us in violation of California law or the laws of the state where we are domiciled; or

**(ii)** Threaten our solvency.

**(7)** A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

**b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

**(1)** Accepted an offer of earthquake coverage; or

**(2)** Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

**C.** The following is added and supersedes any provisions to the contrary:

**Nonrenewal**

**1.** Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice, stating the reason for nonrenewal, to the first Named Insured shown in the Declarations, and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

**2. Residential Property**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below.

**b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

**(1)** The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

**(2)** The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

**(3)** We have:

**(a)** Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

**(b)** Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

**c.** We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority, that included an earthquake policy premium surcharge.

**d.** We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction **(d.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

**(1)** Commercial Property Coverage Part – Causes Of Loss – Special Form; or

**(2)** Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

**3.** We are not required to send notice of nonrenewal in the following situations:

**a.** If the transfer or renewal of a policy, without any changes in terms, conditions or rates, is between us and a member of our insurance group.

© Insurance Services Office, Inc., 2012

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.,** to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

IL 01 04 09 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART – FARM PROPERTY – OTHER FARM PROVISIONS FORM – ADDITIONAL
COVERAGES, CONDITIONS, DEFINITIONS
FARM COVERAGE PART – LIVESTOCK COVERAGE FORM
FARM COVERAGE PART – MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following with respect to loss ("loss") or damage caused by fire:

We do not provide coverage to the insured ("insured") who, whether before or after a loss ("loss"), has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** That insured's ("insured's") interest in the Covered Property; or

**4.** A claim under this Coverage Part or Coverage Form.

**C.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following with respect to loss ("loss") or damage caused by a Covered Cause of Loss other than fire:

This Coverage Part is void if any insured ("insured"), whether before or after a loss ("loss"), has committed fraud or intentionally concealed or misrepresented any material fact or circumstance concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** An insured's ("insured's") interest in the Covered Property; or

**4.** A claim under this Coverage Part or Coverage Form.

**D.** Except as provided in **E.,** the **Appraisal** Condition is replaced by the following:

If we and you disagree on the value of the property or the amount of loss ("loss"), either may make written request for an appraisal of the loss ("loss"). If the request is accepted, each party will select a competent and impartial appraiser. Each party shall notify the other of the appraiser selected within 20 days of the request. The two appraisers will select an umpire. If they cannot agree within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss ("loss"). If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**E.** The Appraisal Condition in:

**1.** Business Income (And Extra Expense) Coverage Form **CP 00 30;** and

**2.** Business Income (Without Extra Expense) Coverage Form **CP 00 32;**

© ISO Properties, Inc., 2006

is replaced by the following:

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written request for an appraisal of the loss. If the request is accepted, each party will select a competent and impartial appraiser. Each party shall notify the other of the appraiser selected within 20 days of the request. The two appraisers will select an umpire. If they cannot agree within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

© ISO Properties, Inc., 2006
**IL 01 04 09 07**   ☐

IL 01 02 05 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – ACTUAL CASH VALUE

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

With respect to an "open policy", the following are added to any provision which uses the term actual cash value:

**A.** In the event of a total loss to a building or structure, actual cash value is calculated as the lesser of the following:

   **1.** The Limit of Insurance applicable to that building or structure; or

   **2.** The fair market value of the building or structure.

**B.** In the event of a partial loss to a building or structure, actual cash value is calculated as the lesser of the following:

   **1.** The amount it would cost to repair, rebuild or replace the property less a fair and reasonable deduction for physical depreciation of the components of the building or structure that are normally subject to repair or replacement during its useful life. Physical depreciation is based upon the condition of the property at the time of the loss; or

   **2.** The Limit of Insurance applicable to the property.

**C.** In the event of a partial or total loss to Covered Property other than a building or structure, actual cash value is calculated as the lesser of the following:

   **1.** The amount it would cost to repair or replace the property less a fair and reasonable deduction for physical depreciation, based on the condition of the property at the time of loss; or

   **2.** The Limit of Insurance applicable to the property.

**D.** An "open policy" is a policy under which the value of Covered Property is not fixed at policy inception, but is determined at the time of loss in accordance with policy provisions on valuation. The term "open policy" does not apply to Covered Property that is subject to an Agreed Value clause or similar clause that establishes an agreed value prior to loss, unless such clause has expired.

© ISO Properties, Inc., 2005

IL 09 52 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A. Cap On Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

 © Insurance Services Office, Inc., 2015

**State National Insurance Company, Inc.**

**Policy Holder Privacy Statement**

As a policyholder of State National Insurance Company, Inc., you may remember that you purchased your State National Insurance Company, Inc. policy from an insurance agent.  Please understand that the agent from whom you purchased your State National Insurance Company, Inc. policy is not affiliated with State National Insurance Company, Inc., but rather is a separate legal entity.  In the process of purchasing your State National Insurance Company, Inc. policy, you may have provided your insurance agent with various information, including nonpublic personal information about yourself.  You did not provide any such information directly to State National Insurance Company, Inc., but on occasion we may receive such information from your insurance agent.  This statement is intended to explain and disclose State National Insurance Company, Inc.'s policies and practices regarding the collection, disclosure and protection of such information.

State National Insurance Company, Inc. will provide customers like yourself with a copy of our privacy policy at the beginning of our relationship and annually thereafter, unless and until our relationship ends.  As our products and services continue to evolve, it may be necessary to review and revise our privacy policies, in which case we will provide you with an updated privacy notice.

I.      <u>Financial Information Collected.</u>

During the ordinary course of our business, State National Insurance Company, Inc. may – as explained above – collect information about you from the following sources:

- Information the insurance agent receives from you on applications or other forms;
- Information about your transactions (including claims) with us, our affiliates and others; and
- Information we receive from other agents, brokers, administrators, insurance support agencies, legal counsel, consumer reporting agencies and government reporting agencies.

II.      <u>Financial Information Disclosed.</u>

We do not disclose any information about our customers or former customers to anyone, except as permitted by law to service your business.

III.      <u>Parties To Whom Information is Disclosed.</u>

We do not disclose any information about our customers or former customers to anyone, except as permitted by law to service your business.

IV.      <u>Confidentiality and Security of Information.</u>

We restrict access to information about you to those employees who need to know that information to provide products or services to you.  We maintain physical, electronic, and procedural safeguards to guard your information.

V.      <u>Access to and Correction of Your Information.</u>

You may write to us if you have any questions about the information that we may have in our records about you. We will respond within 30 business days from the date such request is received to your inquiry.  If you wish, you may review this information in person or receive a copy at a reasonable charge.  You can notify us in writing if you believe any information should be corrected, amended, or deleted and we will review your request.  We will either make the requested change or explain why we did not do so.  If we do not make the requested change, you may submit a short written statement identifying the disputed information, which will be included in all future disclosures of your information.

We value your business.  This statement is for your information.  No response is necessary.

# COMMERCIAL PROPERTY COVERAGE PART
# DECLARATIONS PAGE

**POLICY NO.** QJT-SN005296-00          **EFFECTIVE DATE** 02/21/2020          ☑ **"X" If Supplemental**
                                                                              **Declarations Is Attached**

**NAME INSURED** 6317 Flora Ave, LLC

## DESCRIPTION OF PREMISES

| Prem. No. | Bldg. No. | Location, Construction And Occupancy |
|---|---|---|
| 1 | 1 | 6317-6333 Flora Avenue Bell Gardens CA, 90201 - Frame (Occupancy: 0313) |

## COVERAGES PROVIDED

**Insurance At The Described Premises Applies Only For Coverages For A Limit Of Insurance Is Shown**

| Prem. No. | Bldg. No. | Coverage | Limit Of Insurance | Covered Causes Of Loss | Coinsurance* | Rates |
|---|---|---|---|---|---|---|
| 1 | 1 | Building | $5,440,000 | Special | 100 | Included |
| 1 | 1 | Ordinance | $1,088,000 | Special | | Included |

**\*If Extra Expense Coverage, Limits On Loss**

## OPTIONAL COVERAGES

**Applicable Only When Entries Are Made In The Schedule Below**

| Prem. No. | Bldg. No. | Agreed Value | | | Replacement Cost (X) | | |
|---|---|---|---|---|---|---|---|
| | | Expiration | Coverage | Amount | Building | Pers. Prop. | Including "Stock" |
| 1 | 1 | 02/21/2021 | Building | 5440000 | X | | |
| 1 | 1 | 02/21/2021 | Contents | 20000 | | X | |

| Inflation Guard (%) Bldg. | Guard (%) Pers. Prop. | *Monthly Limit Of Indemnity (Fraction) | Maximum Period Of Indemnity (X) | *Extended Period Of Indemnity (Days) |
|---|---|---|---|---|

**\*Applies to Business Income Only**

## MORTGAGEHOLDERS

| Prem. No. | Bldg. No. | Mortgageholder Name And Mailing Address |
|---|---|---|
| 1 | 1 | Federal Home Loan Mortgage Corporation on behalf of  Citibank, N.A. for the Multifamily Mortgage Pass-Through  Certificates, Series 2018-SB48  c/o CBRE Loan Services, Inc  929 Gessner, Suite 1700 Houston TX 77024 |

## DEDUCTIBLE

$10,000          **Exceptions:**

**Premium shown is payable at inception:**    $8,463.00

## FORMS APPLICABLE

**To All**              See attached Forms Schedule
**To Specific**

| Prem. No. | Bldg. No. | Coverages | Form Number |
|---|---|---|---|

COMMERCIAL PROPERTY
CP DS 01 1000

# COMMERCIAL PROPERTY COVERAGE PART
# SUPPLEMENTAL DECLARATIONS

**POLICY NO.** QJT-SN005296-00                    **COMPANY**  State National Insurance Co., Inc.

## DESCRIPTION OF PREMISES

| Prem. No. | Bldg. No. | Location, Construction And Occupancy |
|---|---|---|

## COVERAGES PROVIDED

| Prem. No. | Bldg. No. | Coverage | Limit Of Insurance | Covered Causes Of Loss | Coinsurance* | Rates |
|---|---|---|---|---|---|---|
| 1 | 1 | Contents | $20,000 | Special | 100 | Included |
| 1 | 1 | BI w/EE | $755,400 | Special | | Included |

**\*If Extra Expense Coverage, Limits On Loss Payment**

| OPTIONAL COVERAGES | | Applicable Only When Entries Are Made In The Schedule Below | | | | | |
|---|---|---|---|---|---|---|---|
| Prem. No. | Bldg. No. | Agreed Value | | | Replacement Cost (X) | | |
| | | Expiration | Coverage | Amount | Building | Pers. Prop. | Including "Stock" |
| 1 | 1 | 02/21/2021 | Business Income | 755400 | | | |

| Inflation Bldg. | Guard (%) Pers. Prop. | *Monthly Limit Of Indemnity (Fraction) | Maximum Period Of Indemnity (X) | *Extended Period Of Indemnity (Days) |
|---|---|---|---|---|

**\*Applies to Business Income Only**

## MORTGAGEHOLDERS

| Prem. No. | Bldg. No. | Mortgageholder Name And Mailing Address |
|---|---|---|

## PROPERTY LOCATION SCHEDULE

Named Insured:                6317 Flora Ave, LLC
Policy Effective Date:        02/21/2020
Policy Expiration Date:       02/21/2021
             This endorsement effective:  12:01 AM  02/21/2020    forms a part of

Policy No:      QJT-SN005296-00

| Loc. # | Bldg. # | Location Address | Wind/Hail | Coverage | Values | Covered Cause of Loss | Co-Ins. | Valuation |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 6317-6333 Flora Avenue | Included | Building | $5,440,000 | Special | AA | RC |
| | | Bell Gardens, CA 90201 | | Personal Property | $20,000 | Special | AA | RC |
| | | Description: | | Business Income | $755,400 | Special | AA | |
| | | Apartments/Buildings/Garden/ | | Building Ordinance Combined B & C | $1,088,000 | | | |
| | | Hotels/Time-Sharing without | | | | | | |
| | | Mercantile-Over 30 units | | | | | | |
| | | Construction: Frame | | | | | | |
| | | Protection: N/A | | | | | | |

CP  Location Sch 1011

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

**1.** We cover loss or damage commencing:

    **a.** During the policy period shown in the Declarations; and

    **b.** Within the coverage territory.

**2.** The coverage territory is:

    **a.** The United States of America (including its territories and possessions);

    **b.** Puerto Rico; and

    **c.** Canada.

 Copyright, ISO Commercial Risk Services, Inc., 1983, 1987 ☐

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

   **a.** Someone insured by this insurance;

   **b.** A business firm:

      **(1)** Owned or controlled by you; or

      **(2)** That owns or controls you; or

   **c.** Your tenant.

This will not restrict your insurance.

    Copyright, ISO Commercial Risk Services, Inc.,  1983, 1987    **CP 00 90 07 88**    ☐

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

 © Insurance Services Office, Inc., 2011

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2. Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

   **(1)** The lowest basement floor; or

   **(2)** The surface of the ground, if there is no basement;

**h.** Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, **n.,** does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

**o.** The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

**p.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

   **(1)** Are licensed for use on public roads; or

   **(2)** Are operated principally away from the described premises.

   This paragraph does not apply to:

   **(a)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 – $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |

($10,000 is 20% of $50,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $ 500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 – $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced at the same or another premises; and

**(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

© Insurance Services Office, Inc., 2011

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

    © Insurance Services Office, Inc., 2011

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

 © Insurance Services Office, Inc., 2011

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

**(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

**(3)** Coverage under this Extension:

**(a)** Will end 90 days after the business personal property has been placed in the storage unit;

**(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

**(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

**(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

 © Insurance Services Office, Inc., 2011

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

**1.** Fire Department Service Charge;

**2.** Pollutant Clean-up And Removal;

**3.** Increased Cost Of Construction; and

**4.** Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | |
|---|---|
| Deductible: | $    250 |
| Limit of Insurance – Building 1: | $  60,000 |
| Limit of Insurance – Building 2: | $  80,000 |
| Loss to Building 1: | $  60,100 |
| Loss to Building 2: | $  90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

$ 60,100
−     250
$ 59,850 Loss Payable – Building 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | |
|---|---|
| Loss to Building 1: | $  70,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss to Building 2: | $  90,000 |
| (Exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Building 1: | $  60,000 |
| (Limit of Insurance) | |
| Loss Payable – Building 2: | $  80,000 |
| (Limit of Insurance) | |
| Total amount of loss payable: | $ 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

    © Insurance Services Office, Inc., 2011

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 100,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

Step **(1):** $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $100,000 ÷ $200,000 = .50

Step **(3):** $40,000 x .50 = $20,000

Step **(4):** $20,000 – $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The value of the property is: | $ 250,000 |
|---|---|---|
| | The Coinsurance percentage for it is: | 80% |
| | The Limit of Insurance for it is: | $ 200,000 |
| | The Deductible is: | $ 250 |
| | The amount of loss is: | $ 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

When:    The value of the property is:

Building at Location 1:                  $  75,000

Building at Location 2:                  $ 100,000

Personal Property
at Location 2:                           $  75,000

                                         $ 250,000

The Coinsurance percentage
for it is:                                    90%

The Limit of Insurance for
Buildings and Personal Property
at Locations 1 and 2 is:                 $ 180,000

The Deductible is:                       $   1,000

The amount of loss is:

Building at Location 2:                  $  30,000

Personal Property
at Location 2:                           $  20,000

                                         $  50,000

Step **(1):**  $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step **(2):**  $180,000 ÷ $225,000 = .80

Step **(3):**  $50,000 x .80 = $40,000

Step **(4):**  $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

    **2. Mortgageholders**

      **a.** The term mortgageholder includes trustee.

      **b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

      **c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

      **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

        **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

      All of the terms of this Coverage Part will then apply directly to the mortgageholder.

      **e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

        **(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

        **(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

      At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

      **f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

        **(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

        **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

      **g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

    **1. Agreed Value**

      **a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

**(1)** On or after the effective date of this Optional Coverage; and

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

**a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

**b.** The amount of increase will be:

**(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

**(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

**(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

| If: | The applicable Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The annual percentage increase is: | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is: | 146 |
| | The amount of increase is: $100,000 x .08 x 146 ÷ 365 = | $ 3,200 |

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

**(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

**(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

**(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011

**COMMERCIAL PROPERTY**
**CP 00 30 10 12**

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

 © Insurance Services Office, Inc., 2011

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

© Insurance Services Office, Inc., 2011

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

    **(a)** Used in the construction, alterations or additions; or

    **(b)** Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

    **(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

    **(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

    **(b)** Ends on the earlier of:

        **(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

        **(ii)** 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

© Insurance Services Office, Inc., 2011

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

   **(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

   **(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

   **(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

   **(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

   **a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

   **b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

   **c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

      **(1)** This policy expires;

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

1. Alterations And New Buildings;

2. Civil Authority;

3. Extra Expense; or

4. Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Appraisal

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 2. Duties In The Event Of Loss

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

  **a.** The amount of Business Income loss will be determined based on:

   **(1)** The Net Income of the business before the direct physical loss or damage occurred;

   **(2)** The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

   **(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

   **(4)** Other relevant sources of information, including:

      **(a)** Your financial records and accounting procedures;

      **(b)** Bills, invoices and other vouchers; and

      **(c)** Deeds, liens or contracts.

  **b.** The amount of Extra Expense will be determined based on:

   **(1)** All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

      **(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

      **(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

   **(2)** Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

  We will reduce the amount of your:

   **(1)** Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

   **(2)** Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

  **d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

  We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

  **a.** We have reached agreement with you on the amount of loss; or

  **b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

  **a.** The Net Income (Net Profit or Loss before income taxes), and

  **b.** Operating expenses, including payroll expenses,

  that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1);** and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2).**

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

   **(1)** Prepaid freight – outgoing;

   **(2)** Returns and allowances;

   **(3)** Discounts;

   **(4)** Bad debts;

   **(5)** Collection expenses;

   **(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

   **(7)** Cost of merchandise sold (including transportation charges);

   **(8)** Cost of other supplies consumed (including transportation charges);

   **(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

  **(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

  **(11)** All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

  **(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

When:    The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been:   $ 400,000

         The Coinsurance percentage is:    50%

         The Limit of Insurance is:    $ 150,000

         The amount of loss is:    $  80,000

Step **(1):** $400,000 x 50% = $200,000

         (the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

When:    The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been:   $ 400,000

         The Coinsurance percentage is:    50%

         The Limit of Insurance is:    $ 200,000

         The amount of loss is:    $  80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

   If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

   **1. Maximum Period Of Indemnity**

     **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

   **(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

   **(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

   **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

   **b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

   **(1)** The Limit of Insurance, multiplied by

   **(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | The Limit of Insurance is: | $ 120,000 |
|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |
| | ($120,000 x 1/4 = $30,000) | |
| | If, in this example, the actual amount of loss is: | |
| | Days 1–30: | $ 40,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 90,000 |
| | We will pay: | |
| | Days 1–30: | $ 30,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

   **a.** To activate this Optional Coverage:

   **(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

   **(a)** During the 12 months prior to the date of the Work Sheet; and

   **(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

   **(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

   **(a)** The Coinsurance percentage shown in the Declarations; multiplied by

   **(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

   **b.** The Additional Condition, Coinsurance, is suspended until:

   **(1)** 12 months after the effective date of this Optional Coverage; or

   **(2)** The expiration date of this policy;

   whichever occurs first.

   **c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

   **(1)** Within 12 months of the effective date of this Optional Coverage; or

   **(2)** When you request a change in your Business Income Limit of Insurance.

   **d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

   **(1)** The Business Income Limit of Insurance; divided by

   **(2)** The Agreed Value.

**Example**

| When: | The Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1):** $100,000 ÷ $200,000 = .50

Step **(2):** .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

   Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

© Insurance Services Office, Inc., 2011

## F. Definitions

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

© Insurance Services Office, Inc., 2011

CP 12 18 10 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

BUILDERS' RISK COVERAGE FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE**

| Premises Number: | | Building Number: | | Applicable Clause (Enter C.1, C.2, C.3 or C.4.): | C2 |
|---|---|---|---|---|---|
| **Description Of Property:** 6317-6333 Flora Avenue, Bell Gardens, CA 90201 | | | | | |
| **Loss Payee Name:** Federal Home Loan Mortgage Corporation on behalf of Citibank, N.A. for the Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48 c/o CBRE Loan Services, Inc | | | | | |
| **Loss Payee Address:** 929 Gessner, Suite 1700, Houston, TX 77024 | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

A. When this endorsement is attached to the Standard Property Policy CP 00 99, the term Coverage Part in this endorsement is replaced by the term Policy.

B. Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

C. The following is added to the Loss Payment Loss Condition, as indicated in the Declarations or in the Schedule:

   **1. Loss Payable Clause**

   For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

   a. Adjust losses with you; and

   b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear

   **2. Lender's Loss Payable Clause**

   a. The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   (1) Warehouse receipts;

   (2) A contract for deed;

   (3) Bills of lading;

   (4) Financing statements; or

   (5) Mortgages, deeds of trust, or security agreements.

CP 12 18 10 12

b. For Covered Property in which both you and a Loss Payee have an insurable interest:

(1) We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

(2) The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

(3) If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

(a) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(b) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(c) Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

(4) If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(a) The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

(b) The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

c. If we cancel this policy, we will give written notice to the Loss Payee at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

d. If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**3. Contract Of Sale Clause**

a. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered into a contract with for the sale of Covered Property.

b. For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

(1) Adjust losses with you; and

(2) Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

c. The following is added to the Other Insurance Condition:

For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

CP 12 18 10 12

**4. Building Owner Loss Payable Clause**

a. The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building in which you are a tenant.

b. We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

c. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

© Insurance Services Office, Inc.

POLICY NUMBER:QJT-SN005296-00           **COMMERCIAL PROPERTY**
**CP 04 05 04 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ORDINANCE OR LAW COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
STANDARD PROPERTY POLICY

**SCHEDULE\***

| Bldg. No./ Prem. No. | Cov. A | Cov. B Limit Of Insur. | Cov. C Limit Of Insur. | Cov. B and C Combined Limit Of Insur. |
|---|---|---|---|---|
| 1 / 1 / / | ☒ ☐ ☐ | | | $1,088,000 \*\* \*\* |

*\*Information required to complete the Schedule, if not shown on this endorsement, will be shown in the Declarations.*

*\*\*Do **not** enter a Combined Limit of Insurance if individual Limits of Insurance are selected for Coverages **B** and **C**, or if one of these Coverages is not applicable.*

**A.** Each Coverage – Coverage **A,** Coverage **B** and Coverage **C** – is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the building identified for that Coverage(s) in the Schedule.

**B. Application Of Coverage(s)**

The Coverage(s) provided by this endorsement apply only if both **B.1.** and **B.2.** are satisfied and are then subject to the qualifications set forth in **B.3.**

  **1.** The ordinance or law:

    **a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

    **b.** Is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

  **2.a.** The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or

    **b.** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

    **c.** But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained covered direct physical damage.

  **3.** In the situation described in **B.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A, B,** and/or **C** of this endorsement. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

© ISO Properties, Inc., 2001 ☐

(Section **H.** of this endorsement provides an example of this procedure.)

However, if the covered direct physical damage, alone, would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A, B** and/or **C** of this endorsement.

**C.** We will not pay under Coverage **A, B** or **C** of this endorsement for:

**1.** Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**2.** The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**D. Coverage**

**1. Coverage A – Coverage For Loss To The Undamaged Portion Of The Building**

With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

Coverage **A** is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage **A** does not increase the Limit of Insurance.

**2. Coverage B – Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

**3. Coverage C – Increased Cost Of Construction Coverage**

**a.** With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

**(1)** Repair or reconstruct damaged portions of that building; and/or

**(2)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:

**(1)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(2)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

**b.** When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with **3.a.** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in **3.a.:**

**(1)** The cost of excavations, grading, backfilling and filling;

**(2)** Foundation of the building;

**(3)** Pilings; and

**(4)** Underground pipes, flues and drains.

The items listed in **b.(1)** through **b.(4)** above are deleted from Property Not Covered, but only with respect to the coverage described in this Provision, **3.b.**

**E. Loss Payment**

**1.** All following loss payment Provisions, **E.2.** through **E.5.,** are subject to the apportionment procedures set forth in Section **B.3.** of this endorsement.

© ISO Properties, Inc., 2001

**2.** When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

   **a.** If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

     **(1)** The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

     **(2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

   **b.** If the Replacement Cost Coverage Option applies and the property is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:

     **(1)** The actual cash value of the building at the time of loss; or

     **(2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**3.** Unless Paragraph **E.5.** applies, loss payment under Coverage **B** – Demolition Cost Coverage will be determined as follows:

We will not pay more than the lesser of the following:

   **a.** The amount you actually spend to demolish and clear the site of the described premises; or

   **b.** The applicable Limit of Insurance shown for Coverage **B** in the Schedule above.

**4.** Unless Paragraph **E.5.** applies, loss payment under Coverage **C** – Increased Cost of Construction Coverage will be determined as follows:

   **a.** We will not pay under Coverage **C**:

     **(1)** Until the property is actually repaired or replaced, at the same or another premises; and

     **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

   **b.** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

     **(1)** The increased cost of construction at the same premises; or

     **(2)** The applicable Limit of Insurance shown for Coverage **C** in the Schedule above.

   **c.** If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

     **(1)** The increased cost of construction at the new premises; or

     **(2)** The applicable Limit of Insurance shown for Coverage **C** in the Schedule above.

**5.** If a **Combined** Limit of Insurance is shown for Coverages **B** and **C** in the Schedule above, Paragraphs **E.3.** and **E.4.** of this endorsement do not apply with respect to the building that is subject to the Combined Limit, and the following loss payment provisions apply instead:

The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit of Insurance shown for Coverages **B** and **C** in the Schedule above. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

   **a.** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

   **b.** With respect to the Increased Cost of Construction:

     **(1)** We will not pay for the increased cost of construction:

       **(a)** Until the property is actually repaired or replaced, at the same or another premises; and

       **(b)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

     **(2)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

(3) If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**F.** The terms of this endorsement apply separately to each building to which this endorsement applies.

**G.** Under this endorsement we will not pay for loss due to any ordinance or law that:

**1.** You were required to comply with before the loss, even if the building was undamaged; and

**2.** You failed to comply with.

**H.** Example of Proportionate Loss Payment for Ordinance Or Law Coverage Losses (procedure as set forth in Section **B.3.** of this endorsement.)

Assume:

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss
- The building has a value of $200,000
- Total direct physical damage to building: $100,000
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value
- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000
- Loss under Ordinance Or Law Coverage **C** of this endorsement: $60,000

Step **1:**

Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 ÷ $100,000 = .30

Step **2:**

Apply that proportion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage **C** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

**Note:** The same procedure applies to losses under Coverages **A** and **B** of this endorsement.

**I.** The following definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PROPERTY BROADENING FORM – COVERAGE FORM A

This form modifies coverage provided under:

Building and Personal Property Form CP 0010 1012
Condominium Association Coverage Form CP 0017 1012

Various provisions in this form restrict coverage.  Read the entire form carefully to determine rights, duties and what is and is not covered.  Throughout this form, the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.  Other words and phrases that appear in quotation marks have special meaning.  Refer to SECTION V- DEFINITIONS.

**I.      COVERAGE**

We will pay for direct physical loss of or damage to Covered Property described in this Form caused by or resulting from any Covered Cause of Loss.

| SCHEDULE | LIMIT OF INSURANCE | AMENDED LIMIT OF INSURANCE |
|---|---|---|
| A.   Accounts Receivable | $ 25,000 | $ |
| B.   Valuable Papers and Records | $ 25,000 | $ |
| C.   Business Income and Extra Expense | $ 25,000 | $ |
| D.   Property of Others | $ 25,000 | $ |
| E.   Fine Arts | $ 15,000 | $ |
| F.   Outdoor Signs | $  5,000 | $ |
| G.   Money and Securities | $10,000 (on premises) | $ |
|  | $10,000 (off premises) | $ |
| H.   Employee Dishonesty | $ 25,000 | $ |
| I.   Food Spoilage | $ 25,000 | $ |
| J.   Ordinance or Law Coverage A, B C |  |  |
|          Coverage A | Included within the Limit of Insurance in the Declarations |  |
|          Coverage B | $100,000 | $ |
|          Coverage C | $100,000 | $ |
| K.   Electronic  Data | $ 10,000 | $ |
| L.   Fire Department Service Charge | $  5,000 | $ |

| | | |
|---|---|---|
| M. | Debris Removal | $ 10,000 | $ |
| N. | Pollutant Clean Up and Removal | $ 25,000 | $ |
| O. | Backup of Sewers and Drains/Water Damage | $ 25,000 | $ |
| P. | Underground Irrigation System | $ 25,000 | $ |
| Q. | Newly Acquired or Constructed Property | | |
| |    Building | $500,000 | $ |
| |    Business Personal Property | $100,000 | $ |
| R. | Fire Extinguisher/ Fire Suppression System Recharge | $2,500 | $ |
| S. | Peak Season Increase | $25,000 | $ |
| T. | Outdoor Property | $100,000 | $ |

## II.   DEDUCTIBLE

Each loss shall be adjusted separately, and from the amount of such adjusted loss, the sum of $10,000.00 (unless otherwise indicated) shall be deducted for all coverage listed under **Section I COVERAGE**.

Optional Deductible: $_____

## III.   CONDITIONS

**A.** The provisions of the Building and Personal Property Coverage Form CP 0010 1012 and/or Condominium Association Coverage Form CP 0017 1012 and Causes of Loss - Special Form CP 1030 1012 apply. Commercial Property Conditions CP 0090 0788 and all other conditions, exclusions and limitations contained in the policy to which this Form is attached also apply except as otherwise provided in this endorsement

**B.** If any of the property covered by this Form is also covered under any other provisions of the policy of which this Form is made a part or elsewhere in this Form, you, in the event of loss or damage, may elect to make claim under such other provisions, in which case none of the provisions of this Form are applicable, or under provisions of this Form, in which case coverage as provided by this Form becomes sole coverage on such property.  If more than one coverage under this form applies to property that has been damaged from one occurrence, you may choose only one of these coverages to apply to that loss.  The most we will pay is the limit applicable to the coverage chosen.

**C.** Valuation.  Unless otherwise indicated on this Form, we shall not pay more than the actual cash value of the property, with proper deduction for the depreciation, at the time of loss or damage or the limit shown in Section I.  Payment shall never exceed the cost to repair or replace with similar property of like kind and quality.

**D.** The total amount payable in any one occurrence shall not exceed the Limit of Insurance specified on the Schedule of this Form, regardless of the number of locations insured.

## IV.   COVERED PROPERTY

**CORPRP 008 1014**

**A.  Accounts Receivable**

a.  We will pay:

(1)  All amounts due from your customers that you are unable to collect;
(2)  Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;
(3)  Collection expenses in excess of your normal collection expenses that are made necessary by loss or damage; and
(4)  Other reasonable expenses that you incur to re-establish your records of accounts receivable;

That result from direct physical loss or damage by any Covered Cause of Loss to your records of accounts receivable.

b.  In Addition to the paragraph B. Exclusion, we will not pay for:

(1)  Loss or damage caused by or resulting from alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.
This exclusion applies only to the extent of the wrongful giving, taking or withholding.
(2)  Loss or damage caused by or resulting from bookkeeping, accounting or billing errors or omissions.
(3)  Any loss or damage that requires any audit of records or any inventory computation to prove its factual existence.

c.  The most we will pay under this coverage for loss or damage in any one occurrence is the amount shown in Section I.

**B.   Valuable Papers and Records (other than Electronic Data)**

a.  Covers direct physical loss or damage to valuable papers and records that you own, or that are in your care, custody or control, caused by or resulting from a Covered Cause of Loss.  This Extension includes the cost to research lost information or valuable papers and records for which duplicates do not exist.

b.  This Extension does not apply to:

(1)  Property held as samples or for delivery after sale;
(2)  Property in storage away from the premises shown in the Declarations.

c.  The most we will pay under this coverage is the amount shown in Section I.

**C.  Business Income and Extra Expense**

a.  We will pay for the actual loss of Business Income and Extra Expense you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by direct physical loss of or damage to Covered Property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss.  With respect to loss or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

CORPRP 008 1014

(1) The portion of the building which you rent, lease or occupy; and
(2) Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

We will pay only for loss or Business Income and Extra Expense that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage.  We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage.

b.  Business Income means the:

(1) Net Income (Net Profit of Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses: and
(2) Continuing normal operating expenses incurred, including payroll.

c.  Ordinary payroll expenses mean payroll expenses for all your employees except:

(1) Officers;
(2) Executives;
(3) Department managers;
(4) Employees under contract; and
(5) Additional exemptions shown in the Declarations as:

(i)  Job Classifications; or
(ii)  Employees.

d.  Ordinary payroll expenses include:

(1) Payroll;
(2) Employee benefits, if directly related to payroll;
(3) FICA Payments you pay;
(4) Union dues you pay; and
(5) Workers' compensation premiums

e.  Extra Expense means expense incurred:

(1) To avoid or minimize the "suspension: of business and to continue "operations":

(a.) At the described premises; or
(b.) At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

(2) To minimize the "suspension" of business if you cannot continue "operations'.
(3) To:

(a.) Repair or replace any property; or
(b.) Research, replace or restore the lost information on damaged valuable papers and records
To the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or the Business Income Additional Coverage.

CORPRP 008 1014

f.   We will not pay for:

(1)   Any Extra Expense, or increase of Business Income Loss, caused by or resulting from:

(a.) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

(b.) "Suspension", lapse or cancellation of any license, lease or contract.  But if the "suspension", lapse or cancellation is directly caused by the "suspension" of "operations', we will cover such loss that affects your Business Income during the "period of restoration".

(2)  Any other consequential loss.

**D.  Property of Others**
You may extend the insurance that applies to Your Business Personal Property to apply to:

a.   Personal effects owned by you, your officers, your partners or members, your managers or your employees.  This Extension does not apply to loss or damage by theft.
b.   Personal property of others in your care, custody or control.

The most we will pay under this Extension for loss or damage in any one occurrence is the amounts shown in Section I.

Our payment for loss of or damage to personal property of others will only be for the account of the owner property.  We will only pay the amount of covered loss or damage in excess of other collectible insurance.

**E.  Fine Arts**
a.   We will pay for the direct loss of or damage to fine arts while on the premises described in the Declarations, whether owned by:

(1)  You; or
(2)  Others, and in your care, custody or control.

b.   Fine arts includes, but is not limited to, antiques, paintings, etchings, drawings, tapestries, sculptures and fragile property such as porcelains, china and marble.

c.   The most we will pay for loss in any one occurrence is the amount shown in Section I. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

d.   The value of fine arts will be the least of the following amounts:

(1)  The actual cash value of that property;
(2)  The cost of reasonably restoring that property to its condition immediately before loss; or
(3)  The cost of replacing that property with substantially identical property.

e.   In the event of loss, the value of property will be determined as of the time of loss.

f.   In case of loss to any part of a pair or set, we may:
(1)  Repair or replace any part to restore the pair or set to its value before the loss; or

CORPRP 008 1014

(2) Pay the difference between the value of the pair of set before and after the loss

g.  We will not pay for loss or damage caused by or resulting from or at any:
(1) Repairing, restoration or retouching process.
(2) Any art exhibition or auction.

### F.  Outdoor Signs

a.  We will pay for direct physical loss of or damage to all outdoor signs at the described premises:
(1) Owned by you; or
(2) Owned by others but in your care, custody or control.

b.  We will not pay for loss or damage caused by or resulting from:
(1) Wear and Tear;
(2) Hidden or latent defect;
(3) Rust;
(4) Corrosion; or
(5) Mechanical breakdown

c.  The most we will pay under this Coverage is the amounts shown in Section I.

### G.  Money and Securities

**a.**  We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any "employee" having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

(1) Theft, meaning any act of stealing;
(2) Disappearance; or
(3) Destruction.

**b.**  We will not pay for loss;
(1) Resulting from accounting or arithmetical errors or omissions;
(2) Due to the giving or surrendering of property in any exchange or purchase; or
(3) Of property contained in any money-operated device unless the amount of "money" deposited in it is recorded by a continuous reading instrument in the device.

**c.**  The most we will pay for all loss in any one "occurrence" i9s the amount shown in Section I.

**d.**  All loss:
(1) Caused by one or more persons; and
(2) Involving a single act or series of related acts;
Is considered one occurrence.

**e.**  You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

### H.  Employee Dishonesty

a.  We will pay for direct loss of or damage to Your Business Personal Property and your "money" and "securities" resulting from dishonest acts committed by any of your "employees" acting alone or in collusion with other persons (except you or your partners, "members" or "Managers") with the manifest intent to:

CORPRP 008 1014

    (1)  Cause you to sustain loss or damage; and also

    (2)  Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

        (i.)  Any "employee' ; or
        (ii.) Any other person or organization.

b.  We will not pay for loss or damage:

    (1)  Resulting from any dishonest or criminal act that you or any of your partners, members, officers, managers, directors, trustees, authorized representatives or in anyone to whom you entrust the property for any purpose commit, whether acting alone or in collusion with other persons.

    (2)  The only proof of which as to its existence or amount is one or both of the following:

        (i.)  An inventory computation; or
        (ii.) A profit and loss computation.

c.  The most we will pay under this Coverage for loss or damage in any one occurrence is the limit shown in section I.

d.  All loss or damage:

    (1)  Caused by one or more "employees" ; and
    (2)  Involving a single act or series of related acts;

    is considered one occurrence.

e.  We will pay only for loss or damage you sustain through acts committed or events occurring during the policy period.  Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

f.  This Additional Coverage does not apply to loss caused by any "employee" after discovery by:

    (1)  You: or
    (2)  Any of your partners officers or directors, members or managers not in collusions with the "employee";
    of any dishonest act committed by that "employee" before or after being hired by you.

g.  We will pay only for covered loss or damage discovered no later than one year from the end of the policy period.

h.  If you discover a loss or damage during the policy period that you (or any predecessor in interest) sustained during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Additional Coverage, provided:

    (1)  This Additional Coverage became effective at the time of cancellation or termination of the prior insurance and
    (2)  The loss or damage would have been covered by this Additional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

i.   The insurance under Paragraph (h.) above is provided within, and not in addition to, the Limit of Insurance applying to this Additional Coverage and is limited to the lesser of the amount recoverable under:

(1)  This Additional Coverage as of its effective date; or
(2)  The prior insurance, had it remained in effect.

**I.  Food Spoilage**

a.   We will pay for the loss of "perishable stock" as described below caused by:

(1)  A change in temperature or humidity resulting from mechanical breakdown or failure of refrigeration, cooling or humidity control apparatus or equipment, only while such apparatus or equipment is at the described premises;
(2)  Contamination by a refrigerant; and
(3)  Power outage, meaning change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

b.   The most we will pay for loss under this Coverage is the amount shown in Section I.

c.   The value of the "perishable stock" will be the selling price, as if no loss or damage had occurred, less discounts and expenses you otherwise would have had.

d.   This Additional Coverage does not apply if the spoilage results from:
(1)  Earth movement;
(2)  Governmental action;
(3)  Nuclear hazard;
(4)  War and military action;
(5)  Water;
(6)  The disconnection of any refrigerating, cooling or humidity control system from the source of power;
(7)  The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.
(8)  The inability of an electrical utility company or other power source to provide sufficient power due to:
             (a.) Lack of fuel; or
             (b.) Governmental order;
(9)  The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand; and
(10) Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

e.   We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the deductible shown in the Declarations.  We will then pay the amount of loss or damage in excess of that deductible, up to the applicable Limit of Insurance.  No other deductible in this policy applies to the coverage provided by this Additional Coverage.

f.   You must maintain a refrigeration maintenance or service agreement.  If you voluntarily terminate this agreement and do not notify us within 10 days, the spoilage coverage provided by this Additional Coverage will be automatically suspended at the involved location.
    However, coverage provided by this Additional Coverage is restored upon:

(1)  Reinstatement of the applicable refrigeration maintenance or service agreement; or

CORPRP 008 1014

(2)  Procurement of replacement refrigeration maintenance or service agreement.

**J.  Ordinance or Law Coverage A, B, C**

a.  Application of Coverage:  The Coverage(s) provided by this extension applies only if both (1) and (2) are satisfied and are then subject to the qualifications set forth in (3)**.**

  (1)  The ordinance or law:

   (i)  Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

   (ii)  Is in force at the time of loss.

  Coverage applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this Coverage Extension.

  (2)  The building sustains direct physical damage that is covered under this policy and as a result of such damage, you are required to comply with the ordinance or law; or

  The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

  But if the building sustains direct physical damage that is not covered under this policy,     and such damage is the subject of the ordinance or law, then there is no coverage even if the building has also sustained covered direct physical damage.

  (3)  In the situation described in (2) above, we will not pay the full amount of loss otherwise payable under the terms of Coverages A, B, and/or C of this extension of coverage. Instead, we will pay a proportion of such loss, meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

  Section d.(iv). of this Ordinance or Law Coverage Section provides an example of this procedure.

  However, if the covered direct physical damage, alone, would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages A, B and/or C of this Extension of Coverage.

b.  We will not pay under Coverage A, B or C for:

  (1)  Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or

  (2)  The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

a.  Coverage

  (1)  Coverage A – Coverage For Loss To The Undamaged Portion Of The Building

  With respect to the building that has sustained covered direct physical damage, we will pay under Coverage A for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires demolition of undamaged parts of the same building.

  Coverage A is included within the Limit of Insurance shown in the Declarations as applicable to the covered building.  Coverage A does not increase the Limit of Insurance. This is not additional insurance.

  (2)  Coverage B – Demolition Cost Coverage

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

(3) Coverage C – Increased Cost Of Construction Coverage

With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:

(i) Repair or reconstruct damaged portions of that building; and/or

(ii) Reconstruct or remodel undamaged portions of that building, whether or not demolition is required; when the increased cost is a consequence of a requirement to comply with the minimum standards of the ordinance or law.

However:

(i) This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

(ii) We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

d. Loss Payment

(i) The following loss payment provision is subject to the apportionment procedures set forth in SECTION I.a.(3). of this coverage form.

(ii) When there is a loss in value of an undamaged portion of a building to which Coverage A applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

- If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of the amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or The Limit Of Insurance shown in the Declarations as applicable to the covered building.

- If the Replacement Cost Coverage Option applies and the property is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of the actual cash value of the building at the time of loss; or The Limit Of Insurance shown in the Declarations as applicable to the covered building.

(iii) Combined Limit of Insurance for Coverages B and C

The most we will pay for the total of all covered losses for Coverage B - Demolition Cost Coverage and Coverage C - Increased Cost of Construction is the Combined Limit of Insurance shown for Coverages B and C in the Schedule.  Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

- For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

- With respect to the Increased Cost of Construction, we will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same or another premises; and unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years.  We may extend this period in writing during the two years.

- If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

- If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

The terms of this Coverage Extension apply separately to each described building.

Under this Coverage Extension, we will not pay for loss due to any ordinance or law that you were required to comply with before the loss, even if the building was undamaged; and you failed to comply with.

(iv)  Example of proportionate loss payment for Ordinance Or Law Coverage Losses (procedure as set forth in Section I.a.(3) of this additional coverage).

Assume

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss
- The building has a value of $200,000
- Total direct physical damage to building: $100,000
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value
- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000

Step 1: Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 / $100,000 = .30

Step 2: Apply that proportion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

## K.  Electronic Data

a.  The Building and Personal Property Coverage form is changed as follows:

The Electronic Data limit of $2,500 is increased to the amount shown in Section I.

## L.  Fire Department Service Charge

a.  The Building and Personal Property Coverage form is changed as follows:

The Fire Department Service Charge limit of $1,000 is increased to the amount shown in Section I.

## M.  Debris Removal

a.  The Building and Personal Property Coverage form is changed as follows:
The Debris Removal limit of $10,000 is increased to the amount shown in Section I.

## N.  Pollutant Cleanup and Removal

a.  The Building and Personal Property Coverage form is changed as follows

The Pollutant Clean UP and Removal limit of $10,000 is increased to the amount shown in Section I.

## O.  Back-up of Sewers and Drains Water Damage

    a.  We will pay for direct physical loss or damage to covered property caused by or resulting from water that backs up or overflows from a sewer or drain.

    b.  The most we will pay under the coverage is the amount shown in Section I.

**P.  Underground Irrigation System**

    a.  We will pay for underground irrigation sprinkler systems which are used to irrigate grass, shrubs or trees caused by or resulting from any one of the following causes of loss:

      (1)  Fire
      (2)  Lighting
      (3)  Explosion
      (4)  Vandalism and Malicious Mischief
      (5)  Vehicles (except golf cars or maintenance equipment owned or operated by you or your employees
      (6)  Aircraft
      (7)  Theft
      (8)  Windstorm or Hail
      (9)  Riot or Civil Commotion

      The Irrigation System includes pipes, conduits, electrical wiring, electric or computerized control panels, satellite dishes and sprinkler heads utilized in systems operation.

    b.  Damage to grass, shrubs, trees or any other items and any consequential loss of income as a result of any loss or damage to the irrigation system, whether or not covered by a Covered Cause of Loss, is excluded.

**Q.  Newly Acquired or Constructed Property**

    a.  The Building and Personal Property Coverage form is changed as follows:

      The limit of $250,000 for Newly Acquired or Constructed Property Buildings paragraph 5.a. (1). of Section A.  Coverage is increased to the amount shown in Section I.

**R.  Fire Extinguisher Systems Expense**
    a.  We will pay:

      (1)  The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and
      (2)  For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or fire extinguishing system.

    b.  No coverage will apply if the fire extinguishing system is discharged during installation or testing.

    c.  The most we will pay under this Coverage for any one occurrence is the amount shown in Section I.

    d.  No deductible applies to this Additional Coverage.

**S.  Peak Season**

    a.   The Limit of Insurance for Business Personal Property will automatically increase by the Limit of Insurance, if shown in Section I.

    b.   Coverage to provide for season variations.  This increase will apply only if the limit of Insurance shown for Your Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

        (1)   The twelve months immediately preceding the date the loss or damage occurs, or
        (2)   The period of time you have been in business as of the date the loss or damage occurs.

**T.  Outdoor Property**

    a.   You may extend the insurance provided by this Coverage Form to apply to the following outdoor property located on the described premises:

        (1)   Fences, outdoor radio, television, satellite or other antennas, including their masts, towers and lead-in and support wiring, Bridges, roadways, walks or patios, awnings, exterior lighting, fixtures or poles, food bridges, cart bridges, tennis courts, swimming pools, golf greens, tee boxes, tee markers, flags, benches, ball washers, practice ranges, fairways, rough and sand traps maintained by the insured and which are a part of the playing surface of a hole and within the boundary area of the fairway.
        (2)   Trees, shrubs and plants (other than "stock" of trees, shrubs or plants).  The most we will pay for loss or damage, including debris removal expense, under this Extension is $25,000, but not more than $500 for any one tree, shrub or plant; and

    b.   But only for loss caused by or resulting from the following causes of loss and only if they are Covered Causes of Loss:

        (1)   Fire;
        (2)   Lightning;
        (3)   Explosion;
        (4)   Riot or civil commotion;
        (5)   Aircraft,
        (6)   Vandalism and Malicious Mischief
        (7)   Vehicles (except Vehicles or golf carts owned or operated by you or your employees)
        (8)   Theft
        (9)   Windstorm and Hail

    c.   To the extent the coverage for outdoor property is provided under this Extension, the provisions of Property Not Covered in the Coverage Section do not apply.

    d.   In the event the policy to which this form is attached has a windstorm and/or hail exclusion, there will be no coverage for the perils of windstorm and/or hail under this endorsement or section.

**V.  DEFINITIONS**

    A.   "Employee" :

        1.   As respects the coverage provided under Section I of this endorsement for Money And Securities and Employee Dishonesty only, "employee" means:

           a.   Any natural person:

CORPRP 008 1014

    1.  While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

    2.  Who you compensate directly by salary, wages or commissions; and

    3.  Who you have the right to direct and control while performing services for you:

b.  Any natural person who is furnished temporarily to you:

    1.  To substitute for a permanent "employee" , as defined in Paragraph **1.a.(1)** above, who is on leave; or

    2.  To meet seasonal or short-term workload conditions;

while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

c.  Any natural person who is leased to you under a written agreement between you and a labor leasing firm to perform duties related to the conduct of your business, but does not mean a temporary employee defined in Paragraph **1.b.**;

d.  Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

e.  Any natural person who is a guest student or intern pursuing studies or duties, excluding, however any such person while having care and custody of property outside the "premises";

f.  Any "employee' of an entity merged or consolidated with you prior to the effective date of this insurance; or

g.  Any of your "managers", directors or trustees while:

    1.  Performing acts within the scope of the usual duties of an "employee"; or

    2.  Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

h.  As respects the coverage provided under Section I of this endorsement for Money and Securities and Employee Dishonesty only, "employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or not specified in Paragraph **D.1.**

B.  "Manager", as respects the coverage provided under Section I of this endorsement for Employee Dishonesty only, means a person serving in a directorial capacity for a limited liability company.

C.  "Member", as respects the coverage provided under Section I of this endorsement form Employee Dishonesty only, means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

D.  "Money" means:

  1. Currency, coins and bank notes in current use and having a face value; and

  2. Travelers' checks, register checks and money orders held for sale to the public.

E.  "Occurrence":

  1.  As respects the coverage provided under Section I of this endorsement for Money And Securities only, "occurrence" means:

    a.  An individual act;

b. The combined total of all separate acts whether or not related; or

c. A series of acts whether or not related;
Committed by a person acting alone or in collusion with other persons, or not committed by any person, during the policy period shown in the Declarations, before such policy period or both.

2. As respects the coverage provided under Section I of this endorsement for Employee Dishonesty only, "occurrence" means:

a. An individual act;

b. The combined total of all separate acts whether or not related; or

c. A series of acts whether or not related;
Committed by an "employee" acting alone or in collusion with other persons, during the policy period shown in the Declarations, before such policy period or both.

F. "Operations" means your business activities occurring at the described premises.

G. "Period of restoration", as respects premises other than a "dependent property" :

1. Means the period of time that:

a. Begins:

(1) 72  hours after the time of direct physical loss or damage for Business Income Coverage; or

(2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

2. It does not include any increased period required due to the enforcement of any ordinance or law that:

a. Regulates the construction, use or repair, or requires the tearing down of any property; or

b. Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".
The expiration date of this policy will not cut short the "period of restoration".

H. "Perishable stock" means property:

1. Maintained under controlled conditions for its preservation; and

2. Susceptible to loss or damage if the controlled conditions change.

I. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

CORPRP 008 1014

1. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

2. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;
   but does not include "money".

J.  "Suspension" means:

1. The slowdown or cessation of your business activities; or
2. That a part of all of the described premises is rendered untenantable, if coverage for "Business Income" applies.

COMMERCIAL PROPERTY
CP 10 30 10 12

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a), (5)(b)** and **(5)(c),** all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused.

© Insurance Services Office, Inc., 2011

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

**(a)** Foundations, walls, floors or paved surfaces;

**(b)** Basements, whether paved or not; or

**(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5),** results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

    © Insurance Services Office, Inc., 2011    CP 10 30 10 12

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

© Insurance Services Office, Inc., 2011

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

**(1)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(2)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(3)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(5)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.** Ordinance Or Law;

**(b)** Paragraph **B.1.c.** Governmental Action;

**(c)** Paragraph **B.1.d.** Nuclear Hazard;

**(d)** Paragraph **B.1.e.** Utility Services; and

**(e)** Paragraph **B.1.f.** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

 © Insurance Services Office, Inc., 2011

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

**d.** Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**(1)** Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

**(2)** Business Income Coverage or Extra Expense Coverage.

**e.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**f.** Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

**g.** Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**(1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**(2)** Changes in or extremes of temperature;

**(3)** Disease;

**(4)** Frost or hail; or

**(5)** Rain, snow, ice or sleet.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**a.** Animals, and then only if they are killed or their destruction is made necessary.

**b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

**(1)** Glass; or

**(2)** Containers of property held for sale.

**c.** Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**(1)** If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

**(2)** To Business Income Coverage or to Extra Expense Coverage.

3. The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

   However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

## D. Additional Coverage – Collapse

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

   **(1)** A cause of loss listed in **2.a.** or **2.b.;**

   **(2)** One or more of the "specified causes of loss";

   **(3)** Breakage of building glass;

   **(4)** Weight of people or personal property; or

   **(5)** Weight of rain that collects on a roof.

3. This **Additional Coverage – Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

**h.** Retaining walls; and

**i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.,** we will pay for loss or damage to that property only if:

    **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

    **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

    **a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

    **b.** The personal property which collapses is inside a building; and

    **c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

    **a.** A "specified cause of loss" other than fire or lightning; or

    **b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

    **a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

    **b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

    **c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

© Insurance Services Office, Inc., 2011

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

**a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

**1. Property In Transit**

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

**a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

   **(1)** The cost of filling sinkholes; or

   **(2)** Sinking or collapse of land into man-made underground cavities.

   **b.** Falling objects does not include loss or damage to:

   **(1)** Personal property in the open; or

   **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   **c.** Water damage means:

   **(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

   **(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

© Insurance Services Office, Inc., 2011

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN COVERAGE

This Endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CAUSES OF LOSS – BASIC
CAUSES OF LOSS – BROAD
CAUSES OF LOSS – SPECIAL FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM

| Equipment Breakdown Schedule | |
|---|---|
| **Equipment Breakdown Coverages** | **Equipment Breakdown Limits** |
| Total Limit per "Breakdown" | 6,215,400 |
|    Direct Damage | 5,460,000 |
|    Business Income and Extra Expense | 755,400 |
|    Spoilage | $25,000 |
|    Expediting Expenses | $25,000 |
|    Pollutant Clean Up and Removal | $25,000 |
|    Data and Media | $25,000 |
|    Demolition and Increased Cost of Construction | $25,000 |
|    Utility Interruption | Included with Business Income, Extra Expense and Spoilage |
|    Water Damage | 5,460,000 |
| | |
| **Deductibles:** | |
|    Direct Damage | 10,000 |
|    Business Income and Extra Expense | 10,000 |
|    Spoilage | 10,000 |
|    Utility Interruption – Waiting Period | 24 hours |
|    Other: | |

The following is added to paragraph A. 4. Additional Coverages in the Business and Personal Property Coverage Form:

A.  **Equipment Breakdown Coverage**

1.  We will pay for direct physical loss to Covered Property caused by or resulting from a "breakdown" to "covered equipment".

With respect to otherwise covered Business Income and Extra Expense, "breakdown" to "covered equipment" will be considered a Covered Cause of Loss.

2.  **"Breakdown"**

a.  "Breakdown" means:

(1)  Failure of pressure or vacuum equipment;

(2) Mechanical failure including rupture or bursting caused by centrifugal force; or

(3) Electrical failure caused by artificially generated electric current, including arcing;

that causes direct physical loss or damage to "covered equipment" and necessitates its repair or replacement.

b. "Breakdown" does not mean:

(1) Cracking of any part on an internal combustion gas turbine exposed to the products of combustion;

(2) Damage to any structure or foundation supporting the "covered equipment" or any of its parts;

(3) Damage to any vacuum tube, gas tube, or brush;

(4) Defects, erasures, errors, limitations or viruses in "computer equipment", data, "media" and/or programs including the inability to recognize and process any date or time or provide instructions to "covered equipment".  However, if a "breakdown" ensues, we will pay the ensuing loss or damage not otherwise excluded;

(5) Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

(6) Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification; or

(7) The functioning of any safety or protective device.

c. If an initial "breakdown" causes other "breakdowns", all will be considered one "breakdown". All "breakdowns that manifest themselves at the same time and are the result of the same cause will also be considered one "breakdown".

3. **"Covered Equipment"**

a. "Covered equipment" means any Covered Property that is:

(1) Equipment designed and built to operate under internal pressure or vacuum other than weight of contents.  For any boiler or fired vessel, the furnace of the "covered equipment" and the gas passages from there to the atmosphere will be considered as outside the "covered equipment";

(2) Communication equipment and "computer equipment";

(3) Fiber optic cable; or

(4) Any other electrical or mechanical equipment that is used in the generation, transmission or utilization of energy.

b. "Covered equipment" does not mean any:

(1) Astronomical telescope, cyclotron, nuclear reactor, particle accelerator, satellites and/or spacecraft (including satellite or spacecraft contents and/or their launch sites);

(2) Catalyst;

(3) Dragline, power shovel, excavation or construction equipment including any "covered equipment" mounted on or used solely with any dragline, power shovel, excavation or construction equipment;

(4) Elevator or escalator, but not excluding any electrical machine or apparatus mounted on or used with this equipment;

(5) Equipment or any part of equipment manufactured by you for sale;

(6) Felt, wire, screen, mold, form, pattern, die, extrusion plate, swing hammer, grinding disc, cutting blade, non-electrical cable, chain, belt, rope, clutch plate, brake pad, non-metal part or any part or tool subject to periodic replacement;

(7) Insulating or refractory material;

(8) Non-metallic pressure or vacuum equipment, unless it is constructed and used in accordance with the American Society of Mechanical Engineers (A.S.M.E.) code or a Code that has been accepted by the National Board of Boiler and Pressure Vessel Inspectors;

(9) Part of pressure or vacuum equipment that is not under internal pressure of its contents or internal vacuum;

(10) Pressure vessels and piping that are buried below ground and require the excavation of materials to inspect, remove, repair or replace;

(11) Structure, foundation, cabinet or compartment supporting or containing the "covered equipment" or part of the "covered equipment" including penstock, draft tube or well casing;

(12) Vehicle, aircraft, self-propelled equipment or floating vessel, including any "covered equipment" mounted on or used solely with any vehicle, aircraft, self-propelled equipment or floating vessel; or

(13) "Media".

4. **Property Not Covered.** With regard to the coverage provided by this Endorsement only, A.2.b. in the Business and Personal Property Coverage Form is deleted and replaced by the following:

b. Animals.

5. **Equipment Breakdown Coverage Extensions.** The following coverages also apply to loss or damage caused by or resulting from a "breakdown" to "covered equipment". These Equipment Breakdown Coverage Extensions do not provide additional amounts of insurance. The limits provided are part of, not in addition to, the Limit of Insurance that applies to the damaged Covered Property.

a. **Business Income and Extra Expense**

If Business Income and/ or Extra Expense coverage is provided in the Coverage Form, it is extended to cover loss or expense resulting from a "breakdown" to "covered equipment".

b. **Spoilage**

(1) We will pay for:

(a) Your loss of "perishable goods" due to spoilage;

(b) Your loss of "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.

We will also pay any necessary expense you incur to reduce the amount of loss under this coverage. We will pay such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

(2) If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "breakdown", less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment Condition.

(3) The most we will pay for any loss or expense under this Equipment Breakdown Coverage Extension is $25,000 or the Limit of Insurance for Perishable Goods shown on the Equipment Breakdown Schedule, whichever is greater.

c.  **Expediting Expenses**

(1)  With respect to your damaged Covered Property, we will pay the reasonable extra cost to make temporary repairs and expedite permanent repairs or permanent replacement.

(2)  Expediting expenses include overtime wages and the extra cost of express or other rapid means of transportation.

(3)  The most we will pay for Expediting Expenses is $25,000 or the Limit of Insurance  for Expediting Expenses shown on the  Equipment Breakdown Schedule, whichever is greater.

d.  **Pollutant Clean Up and Removal**

With regard to coverage provided under this Endorsement only, Additional Coverage A.4.d. in the Business and Personal Property Coverage Form is deleted and replaced by the following:

d.  We will pay your expense to extract "pollutants" from land or water at the described premises and the cost for clean-up, repair, replacement or disposal of Covered Property at the described premises if the discharge, dispersal, seepage, migration, release or escape of such "pollutants" is caused by or results from a "breakdown" to "covered equipment" that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which such "breakdown" occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land, water or the clean-up, repair, replacement, or disposal of Covered Property.

The most we will pay under this Additional Coverage, including any loss covered under any applicable Business Income or Extra Expense coverage, for the sum of all covered expenses is $25,000 or the Limit of Insurance for Pollutant Clean Up and Removal shown on the Equipment Breakdown Schedule, whichever is greater.

The coverage provided by this Additional Coverage does not include loss to "perishable goods" due to contamination from the release of a refrigerant.

e.  **Data and Media**

We will pay your cost to research, replace and restore data, including programs and operating systems that are lost or corrupted due to a "breakdown". We will also pay for loss or damage to "media" caused by a "breakdown".  The most we will pay under this Coverage Extension for the sum of all covered expenses, including any loss covered under any applicable Business Income and Extra Expense coverage is $25,000 or the Limit of Insurance for Data and Media shown on the Equipment Breakdown Schedule, whichever is greater.

f.  **Demolition and Increased Cost of Construction**

The following applies despite the Ordinance or Law Exclusion. If a "breakdown" to "covered equipment" damages a building that is Covered Property that is insured at replacement cost, and the loss is increased by the enforcement of any laws or ordinances that are in force at the time of the "breakdown" and which regulate the demolition, construction, repair or use of the building or structure the following apply:

(1)  We will pay for:

(a)  Your actual cost to demolish and clear the site of the undamaged parts of the same building or structure as a consequence of enforcement of an ordinance or law that requires the demolition of such undamaged property; and

(b)  Your actual expenditures for increased costs to repair, rebuild, or construct the building. If the building is repaired, rebuilt or constructed, it must be intended for a similar use or

occupancy as the current building, unless otherwise required by zoning or land use ordinance or law;

(2) With regard to otherwise covered Business Income and Extra Expense coverage, the "period of restoration" is extended to include the additional period of time required for demolition and to meet the minimum requirement of any ordinance or law enforcement at the time of the "breakdown".

(3) We will not pay for any:

(a) Fine;

(b) Liability to a third party;

(c) Increase in loss due to a "pollutant"; or

(d) Demolition cost until the undamaged portions of the building are actually demolished;

(e) Increased construction costs until the building is actually rebuilt and replaced;

(f) Increases in loss, excess of the amount required to meet the minimum requirement of any ordinance or law enforcement at the time of the "breakdown"; or

(g) Loss due to any ordinance or law that you were required to comply with before the "breakdown", even if the building was undamaged, and with which you failed to comply.

The most we will pay under this Coverage Extension for the sum of all covered expenses, including any loss covered under any applicable Business Income and Extra Expense coverage, is $25,000 or the Limit of Insurance for Demolition and Increased Cost of Construction shown on the Equipment Breakdown Schedule, whichever is greater.

g. **Utility Interruption**
The insurance provided for Business Income, Extra Expense and Spoilage, if covered elsewhere in the policy, is extended to apply to loss caused by or resulting from an interruption in utility services that is a direct result of a "breakdown" to "covered equipment" that is owned by a utility, landlord, or other supplier with whom you have a contract to provide you with any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam.

Coverage for Utility Interruption will begin 24 hours, or the time shown for Utility Interruption-Waiting Period in the Equipment Breakdown Schedule, after the time the "breakdown" causes the interruption of the utility service.

6. **Equipment Breakdown Exclusions**.  With regard to coverage provided under this Endorsement only, the following changes are made:

a. The following Exclusions are deleted:
(1) In the Causes of Loss – Special Form:  B.2.a.; B.2.d.(6); and B.2.e.
(2) In the Causes of Loss – Broad Form: B.2.a.; B.2.b.; B.2.c.
(3) In the Causes of Loss – Basic Form: B.2.a.; B.2.d.; and B.2.e.

b. Exclusion B.2.l. from the Causes of Loss – Special form, is deleted and replaced by the following:

l. Discharge, dispersal, seepage, migration, release or escape of "pollutants". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "breakdown" to "covered equipment", we will pay for the loss or damage caused by that "breakdown".

c. The last paragraph of Exclusion B.2.d. from the Causes of Loss – Special form is deleted and replaced by the following:

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "breakdown", we will pay the resulting loss or damage not otherwise excluded.

d.  The following exclusions apply to the coverage provided under this Endorsement in addition to the other exclusions, except as deleted in A.6.a. above, in the Coverage Form to which this Endorsement applies.

We will not pay under this Endorsement for loss or damage caused directly or indirectly by any of the following:

 (1) Any of the following tests:

    (a)  A hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

    (b)  An insulation breakdown test of any type of electrical equipment;

(2)  Fire including fire resulting from a "breakdown";

(3)  Combustion explosion;

(4)  Explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass;

(5)  An explosion. However, we will pay for direct loss or damage caused by an explosion of "covered equipment" of a kind specified in a. through f. below, if not otherwise excluded**:**

    a.  Steam boiler;

    b.  Electric steam generator;

    c.  Steam piping;

    d.  Steam turbine;

    e.  Steam engine; or

    f.  Gas turbine or any other moving or rotating machinery when such explosion is caused by centrifugal force or mechanical breakdown.

(6)  With regard to the Causes of Loss – Basic Form and Causes of Loss – Broad Form: Depletion, deterioration, corrosion, erosion, wear and tear, rust, fungus, decay, wet or dry rot, or mold. However, if a "breakdown" to "covered equipment" results, we will pay the resulting loss or damage not otherwise excluded.

(7)  With respect to Utility Interruption and paragraph (1)(b) of Spoilage coverage, we will not pay for loss caused by or resulting from: Lightning; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; falling objects; water damage caused by the discharge or leakage of sprinkler system, sewer piping or domestic water piping; water or other means used to extinguish a fire, even when the attempt is unsuccessful; weight of snow, ice or sleet; freezing due to cold weather; molten material; or collapse.

7.  **Equipment Breakdown Limitations.**

With regard to this Endorsement only, the following Limitations are deleted from the Causes of Loss – Special Form:  C.1.a. and C.1.b.

8.  **Limits of Insurance**

a.  The most we will pay for loss or damage in any one "breakdown" is the applicable Limit of Insurance shown in the Declarations.   The limits provided for the Equipment Breakdown Coverage Extensions are part of, not in addition to, the Limit of Insurance shown in the Declarations that applies to the damaged Covered Property.

The coverage provided by this Endorsement is part of, not in addition to, the Limits of Insurance shown in the Declarations.

b.  The most we will pay for water damage that results from a "breakdown" to "covered equipment" is the Limit of Insurance for Water Damage shown on the Equipment Breakdown Schedule. However, if a Limit of Insurance is not shown on the Equipment Breakdown Schedule, the applicable Limit of Insurance for Building and Business Personal Property will apply.

9.  **Deductible**

If an amount is shown in the Deductible section of the Equipment Breakdown Schedule, the following will apply; otherwise the deductible shown in the Declaration for the applicable coverage will apply.

Paragraph D. - Deductibles of the Business and Personal Property Coverage Form is deleted and replaced by:

a.  In any one "breakdown, we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

The deductibles listed in the Equipment Breakdown Schedule shall be applied separately to the applicable coverage as follows:

(1)  **Dollar Deductible**

If a dollar deductible is shown in the above schedule, we will first subtract the deductible amount from any loss we would otherwise pay.

(2)  **Multiple per Unit Deductible**

If a multiple of units is shown in the above schedule, the deductible will be calculated as the sum of the multiplier times the number of units specified. (For example: if the deductible is specified as $25/hp for air conditioning units, and a covered 500 hp air conditioning unit suffered a "Breakdown", the deductible will be $25 times 500 hp which equals $12,500.)

(3)  **Time Deductible**

If a time deductible is shown in the above schedule, we will not be liable for any loss under that coverage that occurs during that specified time period immediately following a "Breakdown". If a time deductible is shown in days, each day shall mean twenty-four consecutive hours.

(4)  **Multiple of Daily Value Deductible**

If a multiple of daily value is shown in the above schedule, this deductible will be calculated as follows:

(a)  For the entire premise described in the Declarations where the loss occurred, determine the total amount of Business Income that would have been earned during the "Period of Restoration" had no "Breakdown" taken place.

(b)  Divide the result in Paragraph (1) by the number of days the business would have been open during the "Period of Restoration". The result is the daily value.

(c)  Multiply the daily value in Paragraph (2) by the number of daily value multiples shown in the above schedule. We will first subtract this deductible amount from any loss we would otherwise pay. We will then pay the amount of loss or damage in excess of the deductible, up to the applicable Limit of Insurance.

(5)  **Percentage of Loss Deductible**

If a deductible is expressed as a percentage of loss in the above schedule, we will not be liable for the indicated percentage of the gross amount of loss or damage insured under the applicable coverage.

(6) **Minimum Or Maximum Deductible**

(a) If:

(i) A minimum dollar amount deductible is shown in the above schedule; and

(ii) The dollar amount of the Multiple per Unit, Multiple of Daily Value or the Percentage of Loss Deductible is less than the Minimum Deductible:

then the Minimum Deductible amount shown in the above schedule will be the applicable deductible.

(b) If:

(i) A maximum dollar amount deductible is shown in the above schedule; and

(ii) The dollar amount of the Multiple per Unit, Multiple of Daily Value or the Percentage of Loss Deductible is greater than the Maximum Deductible;

then the Maximum Deductible amount shown in the above schedule will be the applicable deductible.

b. If more than one deductible applies to a single coverage, then only one deductible, the highest, will apply to that coverage.

10 The following provision applies to the coverage provided by this Endorsement only and in addition to the provisions in the Loss Payment section of the Business and Personal Property Coverage Form:

**New Generation**. You may replace damaged "Covered Equipment" with a newer generation "Covered Equipment" of the same capacity which improves the environment, increases efficiency or enhances safety. We will pay up to an additional 25% of the covered property damage amount for the "Covered Equipment". This additional amount is included in, not in addition to, the applicable Limit of Insurance for Covered Property.

11. With respect to the coverage provided under this Endorsement, the following are added to the Additional Conditions section of the Business and Personal Property Coverage Form:

a. **Jurisdictional Inspections**

(1) We agree to provide pressure vessel certificate-of-operation engineering services where:

(a) The certificate-of-operation is required by state, city or provincial law; and

(b) The state, city or provincial law permits inspections by insurance company employees.

(2) If we receive notification of a pressure vessel certificate-of-operation inspection due date less than 30 (thirty) days prior to the expiration of the certificate-of-operation, we will not be responsible for:

(a) Any fine or other penalty that may be assessed; or

(b) Any liability that may arise due to the fact that the inspection was not performed prior to the certificate-of-operation due date.

(3) Certificate-of-operation engineering services will not be provided for any location, other than in the United States of America, Puerto Rico or Canada.

b. **Suspension**

(1) Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the coverage provided by this Endorsement.  We will deliver or mail a written notice of suspension to your last known address or the address where the "covered equipment" is located.

(2) Once suspended in this way, your coverage can be reinstated only by an Endorsement for that "covered equipment".

(3) If we suspend your coverage, you will get a pro rata refund of premium for that "covered equipment".  But the suspension will be effective even if we have not yet made or offered a refund.

12. With regard to the coverage provided by this Endorsement, the following definitions apply in addition to the definitions provided in the Coverage Form to which this Endorsement applies:

a. **"Computer equipment"** means your programmable electronic equipment that is used to store, retrieve and process data; and associated peripheral equipment that provides communication including input and output functions such as printing or auxiliary functions such as data transmission. It does not include data or "media".

b. **"Media"** means electronic data processing or storage material such as films, tapes, discs, drums or cells.

c. **"Perishable goods"** means personal property maintained under controlled conditions for its preservation and susceptible to loss or damage if the controlled conditions change.

**COMMERCIAL PROPERTY**
**CP 01 40 07 06**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

  **1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

  **2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

POLICY NUMBER:    QJT-SN005296-00                          COMMERCIAL GENERAL LIABILITY
                                                                          CG DS 01 1001

## COMMERCIAL GENERAL LIABILITY DECLARATIONS

| State National Insurance Co., Inc.<br>P.O Box 24622<br>Fort Worth, TX 76124 | Verifiable Holdings DBA Unified Risk & Insurance Brokers, LLC<br>901 Via Piemonte<br>Suite 205<br>Ontario, CA 91764 |
|---|---|

NAMED INSURED:       6317 Flora Ave, LLC
MAILING ADDRESS:    610 N Santa Anita Avenue
                                   Arcadia , CA 91006
POLICY PERIOD:    FROM    02/21/2020    TO    02/21/2021    AT 12:01 A.M. TIME AT
YOUR MAILING ADDRESS SHOWN ABOVE

**IN RETURN FOR THE PAYMENT OF PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| LIMITS OF INSURANCE | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ 1,000,000 | |
| DAMAGE TO PREMISES | | |
| RENTED TO YOU LIMIT | $ 50,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $ 5,000 | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | $ 2,000,000 | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 | |

| RETROACTIVE DATE(CG 00 02 ONLY) |
|---|
| THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW.<br>RETROACTIVE DATE:    None<br>                    (ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES) |

| DESCRIPTION OF BUSINESS |
|---|
| FORM OF BUSINESS: |

☐ INDIVIDUAL          ☐ PARTNERSHIP          ☐ JOINT VENTURE          ☐ TRUST

☑ LIMITED LIABILITY COMPANY          ☐ ORGANIZATION, INCLUDING A CORPORATION (BUT NOT IN-
                                                        CLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY
                                                        COMPANY)

BUSINESS DESCRIPTION:      Apartment Buildings

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| 1 | 6317-6333 Flora Avenue, Bell Gardens, CA 90201 |

| CLASSIFICATION AND PREMIUM | | | | | | | |
|---|---|---|---|---|---|---|---|
| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
| | | | | Prem/ Ops | Prod/Comp Ops | Prem/ Ops | Prod/Comp Ops |
| 1 | Apartment Buildings | 60010 | 40 | 103.887 | Included | 4,155 | Included |

PREMIUM FOR ENDORSEMENTS  $  223.00

TOTAL PREMIUM (SUBJECT TO AUDIT)  $  4,378.00

PREMIUM SHOWN IS PAYABLE:  $  4,378.00    AT INCEPTION    $  4,378.00
                                              AT EACH ANNIVERSARY    $
                                              (IF POLICY PERIOD IS MORE THAN ONE YEAR AND PRE-
                                              MIUM IS PAID IN ANNUAL INSTALLMENTS)

| AUDIT PERIOD (IF APPLICABLE) | ☑ ANNUALLY | ☐ SEMI-ANNUALLY | ☐ QUARTERLY | ☐ MONTHLY |
|---|---|---|---|---|

| ENDORSEMENTS |
|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY: <br><br> See Attached Form Schedule |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDOREMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © Insurance Services Office, Inc., 2012 CG 00 01 04 13

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    © Insurance Services Office, Inc., 2012

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by;

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage **C;**

b. Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A; and**

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

     © Insurance Services Office, Inc., 2012     **CG 00 01 04 13**

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  **(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

CORCGL 004 1014

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SCHEDULE**

| Insurance is provided only to the coverage(s) indicated by an "x" in the block opposite the coverages |
|---|
| **Coverages** |
| [x] Non-Ownership Liability |
| [x] Hired Auto Liability |

Additional Premium: $ 140.00

## A. HIRED AUTO LIABILITY

The insurance provided under COVERAGE A (Section I) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a 'hired auto" by you or your "employees" in the course of your business.

With respect to the insurance provided by this endorsement:

1. The exclusions in paragraph **2. Exclusions** of **Section I – Coverages - Coverage A**, other than exclusions **a, b, d, f** and **I** and the Nuclear Energy Liability Exclusion (Broad Form) are deleted and replaced by the following:

   **a.** "Bodily injury":

   **(1)** To an "employee" of the insured arising out of and in the course of employment by the insured; or

   **(2)** To the spouse, child, parent, brother or sister of that "employee" as a consequence of (1) above.

   This exclusion applies:

   **(1)** Whether the insured may be liable as an employer or in any other capacity; and

   **(2)** To any obligation to share damages with or repay someone else who must pay damages because of injury.

   This exclusion does not apply to:

   **(1)** Liability assumed by the insured under an "insured contract"; or

   **(2)** "Bodily injury" arising out of and in the course of domestic employment by the insured unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law.

   **b.** "Property damage" to:

   **(1)** Property owned or being transported by, or rented or loaned to the insured; or

   **(2)** Property in the care, custody or control of the insured.

2. **Section II - WHO IS AN INSURED** is replaced by the following:

   Each of the following is an insured under this insurance to the extent set forth below:

   **a.** You;

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

**b.** Any other person using a "hired auto" with your permission;

**c.** With respect to a "non-owned auto", any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business;

**d.** Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under **a.**, **b.**, or **c.** above.

None of the following is an insured:

**a.** Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-"employee" of such person injured in the course of employment;

**b.** Any partner or "executive officer" with respect to any "auto" owned by such partner or officer or a member of his or her household;

**c.** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

**d.** The owner or lessee (of whom you are a sub-lessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee;

**e.** Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**B. NON-OWNED AUTO LIABILITY**

The insurance provided under **Section I - COVERAGE A** applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you.

**C. CLAIMS-MADE COVERAGE PART**

If this endorsement is attached to a claims-made coverage form, this insurance applies to "bodily injury" or "property damage" which occurs during the policy period.

**D. AGGREGATE LIMIT NOT APPLICABLE TO HIRED AND NON-OWNED AUTO**

**Section III, Limits of Insurance**, item **2**, is changed to read as follows:

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under **Coverage C**; and

**b.** Damages under **Coverage A** and **Coverage B**, except damages because of injury and damage included in the "products-completed operations hazard" or the "hired auto" or "non-owned auto" coverage.

**E. SECTION V—DEFINITIONS (SECTION VI CLAIMS-MADE)**

The following additional definitions apply:

"Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos."

"Hired auto" means any "auto" you lease, hire, or borrow. This does not include any "auto" you lease, hire, or borrow from any of your employees or members of their households, or from any partner or "executive officer" of yours. "Non-owned auto" means any "auto" you do not own, lease, hire, or borrow which is used in connection with your business. However, if you are a partnership, a "non-owned auto" does not include any auto owned by any partner.

**F. FINANCIAL RESPONSIBILITY LAWS**

When this endorsement is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by this endorsement for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

All other terms and conditions remain unchanged.

POLICY NUMBER:QJT-SN005296-00

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| |
|---|
| **Premises:** Applicable to locations and operations specifically listed within this policy. |
| **Project:** |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

**CG 21 44 07 98**

© **Insurance Services Office, Inc., 1997**

CORCGL 003 1014

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONFORMITY WITH STATUTE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**
**RAILROAD PROTECTIVE LIABILITY COVERAGE FORM**

Any terms of this policy that are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes if those statutes were in effect prior to the effective date of this policy.

All other terms and conditions remain the same.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc.,  2003

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

COMMERCIAL GENERAL LIABILITY
CG 21 06 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

CORCGL 001 1014

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**
**RAILROAD PROTECTIVE LIABILITY COVERAGE FORM**

The following exclusion is added to paragraph **2. Exclusions** of **Section I – Coverages, Coverage A Bodily Injury and Property Damage Liability** and paragraph **2., Exclusions** of **Coverage B Personal and Advertising Injury Liability** of the **Commercial General Liability Coverage Form** or to paragraph **2. Exclusions** of **Section I – Coverages, Products/ Completed Operations Coverage Form** or to paragraph **2. Exclusions** of **Section I – Coverages, Bodily Injury and Property Damage** of the **Owners and Contractors Protective Liabilty Coverage Form** or to paragraph **2. Exclusions of Section I - Coverages, Coverage A Bodily Injury and Property Damage Liability** of the **Railroad Protective Liability Coverage Form:**

This insurance does not apply to:

**Asbestos Exclusion:**

**(1)** Any "bodily injury", "property damage" or "personal and advertising injury" arising out of or caused by the actual, alleged or threatened exposure at any time to an "asbestos" hazard; or

**(2)** Any loss, cost or expense arising out of:

    **(a)** Any claim or "suit";

    **(b)** Any request, demand or order to test for, monitor, clean up, remove, dispose of, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an "asbestos" hazard; or

    **(c)** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, disposing of, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an "asbestos" hazard.

The following definition is added to **Section V – Definitions**:

"Asbestos" means the mineral in any form whether or not the asbestos was at any time:

**(1)** Airborne as a fiber, particle or dust;

**(2)** Contained in or, formed a part of a product, structure or other real or personal property:

**(3)** Carried on clothing, materials, goods, products, or structures;

**(4)** Inhaled or ingested; or

**(5)** Transmitted by any other means.

All other terms and conditions remain the same

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

CORCGL 002 1014

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ABSOLUTE LEAD EXCLUSION

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**
**RAILROAD PROTECTIVE LIABILITY COVERAGE FORM**

The following exclusion is added to paragraph **2. Exclusions** of **Section I – Coverages, Coverage A Bodily Injury and Property Damage Liability** and paragraph **2., Exclusions** of **Coverage B Personal and Advertising Injury Liability** of the **Commercial General Liability Coverage Form** or to paragraph **2. Exclusions** of **Section I – Coverages, Products/ Completed Operations Coverage Form** or to paragraph **2. Exclusions of Section I – Coverages, Bodily Injury and Property Damage** of the **Owners and Contractors Protective Liabiity Coverage Form** or to paragraph **2. Exclusions of Section I - Coverages, Coverage A Bodily Injury and Property Damage Liability** of the **Railroad Protective Liability Coverage Form** or to paragraph **2. Exclusions of Section I – Liquor Liability Coverage** of the **Liquor Liability Coverage Form:**

> This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" for past, present or future claims arising in whole or in part, either directly or indirectly, out of the suspected, actual or alleged:

**a.** Manufacture of;
**b.** Distribution of;
**c.** Transportation of;
**d.** Sale of;
**e.** Resale of;
**f.** Re-branding of;
**g.** Installation of;
**h.** Repair of;
**i.** Removal of;
**j.** Encapsulation of;
**k.** Abatement of;
**l.** Replacement of;
**m.** Carried on clothing;

**n.** Handling of;
**o.** Storage of;
**p.** Ingestion of;
**q.** Absorption of;
**r.** Physical exposure to; or
**s.** Testing for

lead paint or other products containing lead whether or not the lead is or was at any time airborne as a particle, contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever.

In addition this exclusion applies to:

(1) The costs of clean up or removal of lead or products and materials containing lead;

(2) The cost of such actions as may be necessary to monitor, assess and evaluate the release or threat of release of lead or products and material containing lead:

(3) The cost of disposal of lead substances or the taking of such other action that may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

(4) The cost of compliance with any law or regulation regarding lead.

The company does not have any obligation to defend, adjust, investigate or pay any cost for investigation, defense, adjustment, or attorney fees which are excluded under the terms of this endorsement.

All other terms and conditions remain the same.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE POLICY IS WRITTEN.**

CORCGL 002 1014

**POLICY NUMBER: QJT-SN005296-00**

**COMMERCIAL GENERAL LIABILITY**

**CG 20 11 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| | |
|---|---|
| **Designation Of Premises (Part Leased To You):** | |
| 6317-6333 Flora Avenue Bell Gardens CA 90201 | |
| **Name Of Person(s) Or Organization(s) (Additional Insured):** | |
| Positive Investments, Inc | |
| 610 N Santa Anita Avenue, Arcadia, CA  91006 | |
| **Additional Premium:** | $ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

A. Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B. With respect to the insurance afforded to these additional insureds, the following is added to Section III - Limits Of Insurance:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc.

**POLICY NUMBER: QJT-SN005296-00**

**COMMERCIAL GENERAL LIABILITY**

**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Federal Home Loan Mortgage Corporation on behalf of Citibank, N.A. for the Multifamily Mortgage Pass-Through Certificates, Series 2018-SB48 c/o CBRE Loan Services, Inc<br><br>929 Gessner, Suite 1700 Houston, TX 77024 | 6317-6333 Flora Avenue Bell Gardens CA 90201 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

A. Section II - Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

**CG 20 18 04 13**

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

B. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

C. With respect to the insurance afforded to these additional insureds, the following is added to Section III - Limits Of Insurance:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc.

**CG 20 18 04 13**

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      LIQUOR LIABILITY COVERAGE PART
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
      RAILROAD PROTECTIVE LIABILITY COVERAGE PART
      UNDERGROUND STORAGE TANK POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

**COMMERCIAL GENERAL LIABILITY**
**CG 32 34 01 05**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES

This endorsement modifies insurance provided under the following:

      COMMERCIAL GENERAL LIABILITY COVERAGE PART
      ELECTRONIC DATA LIABILITY COVERAGE PART
      LIQUOR LIABILITY COVERAGE PART
      OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
      POLLUTION LIABILITY COVERAGE PART
      PRODUCT WITHDRAWAL COVERAGE PART
      PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
      UNDERGROUND STORAGE TANK POLICY

The term "spouse" is replaced by the following:

Spouse or registered domestic partner under California law.

      © ISO Properties, Inc., 2004